MACDONALD & ASSOCIATES
Iain A. Macdonald (SBN 051073)
Reno F.R. Fernandez III (SBN 251934)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Debtor-in-Possession,
CMR MORTGAGE FUND III, LLC

BINDER & MALTER, LLP
Heinz Binder (SBN 087908)
Robert G. Harris (SBN 124678)
Roya Shakoori (SBN 236383)
2775 Park Avenue
Santa Clara, CA 95050
Telephone: (408)295-1700
Facsimile: (408) 295-1531

Attorneys for Debtor-in-Possession,
CMR MORTGAGE FUND II, LLC

WENDEL, ROSEN, BLACK & DEAN LLP
Penn Ayers Butler (SBN 056663)
Daniel Rapaport (SBN 067217)
Elizabeth Berke-Dreyfuss (SBN 114651)
1111 Broadway, 24th Floor
Oakland, CA 94607
Telephone: (510) 834-6600
Facsimile: (510) 834-1928

Attorneys for Debtor-in-Possession,
CMR MORTGAGE FUND, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>CMR MORTGAGE FUND, LLC,<br>CMR MORTGAGE FUND II, LLC and<br>CMR MORTGAGE FUND III, LLC,<br><br>　　　　　Debtors.<br><br>[X] Affects **Fund I**<br>[X] Affects **Fund II**<br>[X] Affects **Fund III**<br>[X] Affects **All Debtors** | Case No. 08-32220<br>Case No. 09-30788<br>Case No. 09-30802<br><br>Chapter 11<br><br>DISCLOSURE OF COMPENSATION OF JEFFERY D. TROWBRIDGE AS SPECIAL LITIGATION COUNSEL FOR DEBTOR (Rule 2016(b)) |

The undersigned hereby certifies that:

1. Jeffery D. Trowbridge is counsel for CMR Mortgage Fund, LLC ("Fund I"), CMR Mortgage Fund II, LLC ("Fund II") and CMR Mortgage Fund III, LLC ("Fund III"), Debtors-in-Possession herein.

2. The within cases were commenced by filing voluntary chapter 11 petitions on

November 18, 2008 (Fund I) and March 31, 2009 (Fund II and Fund III). A trustee has not been appointed and the Debtors are in possession of the estates.

3. A true and correct copy of the Attorney-Client Fee Contract between Trowbridge and California Mortgage and Realty, Inc., Manager of the Debtors, dated September 26, 2001, is attached hereto as Exhibit "A" and incorporated by reference.

4. A Disclosure of Compensation pursuant to Rule 2016(b) of the Federal Rules of Bankruptcy Procedure was not filed for Trowbridge because the Attorney-Client Fee Contract was entered into more than one year prior to the applicable petition dated. 11 U.S.C. § 329(a).

5. Pursuant to the Attorney-Client Fee Contract, the Manager paid Trowbridge a $1,000 deposit and agreed to pay Trowbridge $225 per hours, subject to change upon written notice. The Contract further provides for a lien against any recovery upon any claim or cause of action that is the subject of Trowbridge's representation.

6. Trowbridge's current hourly rate is $350 per hour. The Debtors have not paid Trowbridge any post-petition retainers.

7. Trowbridge renders legal services on behalf of the Debtors directly and by defending and prosecuting certain actions in which the Manager or certain of its officers is a party and the Debtors have a duty to indemnify the Manager and such officers pursuant to the Operating Agreements applicable to each Debtor. A true and correct excerpt of the applicable provisions of said Operating Agreements are attached hereto, collectively, as Exhibit "B" and incorporated by reference. Trowbridge is informed and believes that the Manager follows a procedure of compensating Trowbridge for work done for the Debtors by making advances on behalf of the Debtors, and the Manager is reimbursed by the Debtors accordingly.

8. The Debtors have not reimbursed the Manager for any compensation paid to Trowbridge after the applicable petition dates.

9. Although the Debtors do not directly compensate Trowbridge, the Debtors and Trowbridge determined that, in an abundance of caution, it would be prudent to obtain approval of Trowbridge's employment for work performed on behalf of the Debtors in order to provide for a procedure for disclosure and approval of Trowbridge's fees. The Debtors filed applications to

employ Trowbridge (Fund I Docket No. 308; Fund II Docket No. 177; and Fund III Docket No. 116), which applications set forth the scope of Trowbridge's proposed employment, including the following:

<u>Fund I Application</u>

- *Dennis McCarty, et al. v. David Choo, et al.* (San Francisco County Superior Court Case No. CGC-09-492051);
- *Spyridon John Strouzas, et al. v. David Choo, et al.* (San Francisco County Superior Court Case No. CGC-09-491988);
- Foreclosure proceedings involving the Saigon Plaza (Loan No. 05-058); and
- Foreclosure proceedings involving AF Evans (Loan No. 07-017).

<u>Fund II Application</u>

- Foreclosure proceedings and motion for relief from stay against borrower AF Evans (Loan Nos. 05-064 & 07-017);
- Foreclosure proceedings and motion for relief from stay against borrower Tres Tigres (Loan No. 05-062);
- Foreclosure proceedings and motion for relief from stay against borrower Pfau, Pfau & Pfau, LLC (Loan Nos. 06-057 & 06-058);
- Foreclosure proceedings and motion for relief from stay against borrower Patrick D. Fitzgerald (Loan No. 05-024); and
- Defense of investor claims, including *Joseph Zadik v. CMR Mortgage Fund II, LLC* (Alameda County Superior Court Case No. CGC-09-486094).

<u>Fund III Application</u>

- Foreclosure proceedings and motion for relief from stay against borrower AF Evans (Loan Nos. 05-064 & 07-017);
- Foreclosure proceedings and motion for relief from stay against borrower Tres Tigres (Loan No. 05-062);
- Foreclosure proceedings and motion for relief from stay against borrower Pfau, Pfau & Pfau, LLC (Loan Nos. 06-057 & 06-058); and
- Foreclosure proceedings and motion for relief from stay against borrower Patrick D. Fitzgerald (Loan No. 05-024).

10. The foregoing list set forth representative examples of matters upon which Trowbridge worked. The aforesaid applications provided for a broad scope of employment to enable the Debtors to quickly initiate foreclosure proceedings and defend new claims, as follows:

In addition, defaults upon the debtor's loans to borrowers are anticipated; it is necessary to initiate foreclosure proceedings against defaulting borrowers and move for relief from the automatic stay against borrowers who file bankruptcy petitions. It is also necessary from time to time, to represent the debtor as both a plaintiff and as a defendant (where relief from stay has been granted) in state court proceedings. These proceedings require speedy action, and it is necessary to render litigation services on behalf of the debtor in new matters as they arise.[1]

11. Thereafter, the Court entered orders approving Trowbridge's employment (Fund I Docket No. 314; Fund II Docket No. 189; Fund III Docket No. 142).

12. Trowbridge has rendered critical services on behalf of the Debtors and served to protect the estates' interests in valuable assets. As disclosed in the aforesaid applications, it has been necessary for Trowbridge to take on representation and react quickly to protect the estates' assets.

13. Trowbridge is informed and believes that the Debtors have followed a procedure of providing the Official Committee of Equity Security Holders with reports of the status of matters upon which Trowbridge works and his fees. The following are summaries of the matters upon which Trowbridge is or has been employed following the applicable petition dates:

- *Foreman v. Choo, Raymond and California Mortgage and Realty, Inc.* (San Francisco Superior Court No. CGC-09-486152). Plaintiff Lillian Foreman's claim in excess of $202,000 arises out of her investment in Fund III, and her amended complaint alleges elder abuse and director liability. Although the Funds are not named defendants, they have an interest in the proceeds of certain insurance policies due to certain indemnity obligations to the Manager and certain of its officers. This action was dismissed without prejudice during the pendency of a petition to compel arbitration.

- *Joseph Zadik v. CMR Mortgage Fund II, LLC, et al.* (Alameda County Superior Court Case No. CGC-09-486094). Plaintiff Joseph Zadik's claim in excess of $1.5 million arises out of his investment in Fund II, and his complaint alleges breach of contract, fraud and breach of fiduciary duty, among other allegations. Defendants' petition to compel arbitration was granted. Zadik has filed a petition for writ of mandate.

- Patrick D. Fitzgerald (Loan No. 05-024). Foreclosure proceedings and motion for relief from stay against borrower Patrick D. Fitzgerald.

- *Dennis McCarty, et al. v. David Choo, et al.* (San Francisco County Superior Court Case No. CGC-09-492051). Plaintiffs' claim in excess of $918,000 arises out of their investments in Fund I, II and III, and their complaint alleges breach of contract, fraud and

---

[1] This language is quoted from Fund II's application (2:13-19). The applications filed by Funds I and III contain substantially similar disclosures, as follows: "In addition, defaults upon the debtor's loans to borrowers are anticipated; it is necessary to initiate foreclosure proceedings against defaulting borrowers and move for relief from the automatic stay against borrowers who file bankruptcy petitions. These proceedings require speedy action, and it is necessary to render litigation services on behalf of the debtor in new matters as they arise." (2:8-13).

breach of fiduciary duty, among other allegations. Defendants successfully moved for relief from default and are prepared to file a petition to compel arbitration if this action cannot be stayed in connection with the within bankruptcy cases.

- *California Mortgage and Realty, Inc., et al. v. Ronald W. Hertel and Robert J.S. Fowler* (San Francisco Superior Court Case No. CGC-08-478042); *The Bixby Company v. PIH-Antioch, LLC, et al.* (Contra Costa County Superior Court No. MSC08-01773). The former is a collection action against the guarantors of loans made to RWH-RJSF, LLC in the principal amount of $3.5 million (Loan No. 06-061) and to PIH-Antioch, LLC in the aggregate principal amount of $11 million (Loan Nos. 06-071A and 06-071B). The second amended complaint seeks damages in the amount of $12.5 million, plus interest, attorney's fees and costs. The Funds are co-plaintiffs in this action. The latter is a related mechanic's lien action in which Fund II and Fund III are named defendants.

- *Spyridon John Strouzas, et al. v. David Choo, et al.* (San Francisco County Superior Court Case No. CGC-09-491988). Plaintiffs' claim in excess of $6 million arises out of their investments in Fund I, II and III, and their complaint alleges breach of contract, fraud and breach of fiduciary duty, among other allegations. Defendants successfully moved for relief from default and are prepared to file a petition to compel arbitration if this action cannot be stayed in connection with the within bankruptcy cases.

- AF Evans (Loan Nos. 05-064 & 07-017). Foreclosure proceedings and motion for relief from stay against borrower.

- *In re Montgomery Realty Group, Inc.* (United States Bankruptcy Court for the Northern District of California, Case No. 09-31879). This case involves a loan originally made to the debtor by Fund I in the amount of $1 million secured by real property located at 710 Sansome Street, San Francisco, California. Fund I assigned its interests to a third party. Trowbridge has monitored this case, participated in proceedings concerning cash collateral and plan confirmation, and filed a proof of claim.

- *In re Pfau, Pfau & Pfau, LLC* (United States Bankruptcy Court for the Central District of California, Case No. 08-01240). Foreclosure proceedings and motion for relief from stay against borrower.

- *California Mortgage and Realty, Inc. v. Ronald C. Smith* (San Francisco County Superior Court No. CGC-07-470000). This collection actions resulted in entry of a judgment against Ronald C. Smith on December 12, 2008, in the amount of $4,777,838.95. Trowbridge is informed and believes that Fund II holds an interest in the judgment pursuant to a loan made to Smith or a related entity.

- *Saigon Plaza Association, LLC v. California Mortgage and Realty, Inc.* (United States Bankruptcy Court for the Northern District of California, Adv. Proc. No. 07-40169 & related adversary proceedings and state court cases). Saigon Plaza Association, LLC sought to avoid a deed of trust and recover against the lenders; CMRI sought to enforce the deed of trust and recover against the debtor and guarantors. A partial compromise was reached and has been approved in the within bankruptcy cases. Proceedings are still pending against John Le Tung, one of the guarantors, who has filed an action against CMRU (Alameda County Superior Court Case No. RG10501900).

- *California Mortgage and Realty, Inc. v. Victor Pshevlosky, et al.* This is an action against guarantors of Loan No. 04-058 following foreclosure of the underlying security. Trowbridge served the defendants' attorney with a demand letter seeking a balance of approximately $392,720.55. It appears that litigation may be necessary, but no action has been filed. The underlying loan was made by Fund I.

- *Singh, et al. v. California Mortgage and Realty, Inc., et al.* (Santa Clara County Superior Court Case No. 1-08-CV-116748). This action arose from a loan made by Fund II (Loan No. 05-055). The loan was transferred to 2720 Uridias Ranch, LLC. CMRI acted as trustee. Plaintiffs claim that CMRI improperly distributed proceeds from an overbid at a foreclosure sale in the amount of $3.5 million. Defendants prevailed on summary judgment, and the Plaintiffs appealed.

- *Stevens, et al. v. California Mortgage and Realty, Inc., et al.* (San Francisco Superior Court Case No. CGC10497123). Plaintiffs brought this action against CMRI, David Choo and Fund I, in which Stevens alleges, among other theories, breach of contract, fraud and breach of fiduciary duties, all to plaintiff's damage in an unspecified amount. Trowbridge is representing the Funds in defending this action.

- *Tres Tigres Storage, LLC v. CMR Mortgage Fund II, LLC, et al.* (Monterey County Superior Court Case No. M97 832). This matter involved foreclosure proceedings and a motion for relief from stay against Tres Tigres Storage, LLC (Loan No. 05-062), followed by defense of a lawsuit filed by Tres Tigres seeking to enjoin the foreclosure sale and recover damages.

14. Trowbridge is informed and believes that each of the aforesaid matters was disclosed to the Committee. In addition, Trowbridge renders services to the Manager in certain matters unrelated to the Debtors.

15. As of the petition date for Fund II and Fund III, Trowbridge held a claim jointly against said Debtors in the amount of $44,300.40 for legal services rendered pre-petition (Fund II Claim No. 171; Fund III Claim No. 52). Trowbridge's proofs of claim assert a lien in the amount of $44,300.40. Fund I owed no amount to Trowbridge as of its petition date.

16. Trowbridge maintains attorney liens against most or all of the proceeds of actions in which he represents the Debtors or REO entities.

17. Trowbridge has not agreed to share such compensation with any other entity.

Dated: June 7, 2010

/s/ Jeffery D. Trowbridge
JEFFERY D. TROWBRIDGE

6
DISCLOSURE OF COMPENSATION OF JEFFERY D. TROWBRIDGE
AS SPECIAL LITIGATION COUNSEL FOR DEBTOR (Rule 2016(b))
Case: 09-30802   Doc# 416   Filed: 06/10/10   Entered: 06/10/10 12:40:06   Page 6 of 18

# EXHIBIT A

LAW OFFICES
# JEFFERY D. TROWBRIDGE

1300 GRAND AVENUE
SUITE 1550
OAKLAND, CALIFORNIA 94612
TELEPHONE (510) 893-7500
FACSIMILE (510) 802-7275

September 26, 2001

## ATTORNEY-CLIENT FEE CONTRACT

This document (the "agreement") is the written fee contract that California law requires attorneys to have with their clients. I, **JEFFERY D. TROWBRIDGE**, will provide legal services to you, **CALIFORNIA MORTGAGE AND REALTY, INC.**, on the terms set forth below.

**1. CONDITIONS.** This agreement will not take effect, and I will have no obligation to provide legal services, until you return a signed copy of this agreement to me and pay the initial deposit called for under Paragraph 4.

**2. SCOPE OF SERVICES.** You are hiring me as your attorney, to represent you in various legal matters to be determined from time to time. I will provide those services reasonably required to represent you. I will take reasonable steps to keep you informed of progress and to respond to your inquiries.

**3. CLIENT'S DUTIES.** You agree to be truthful with me, to cooperate with me, to keep me informed of developments, to abide by this agreement, to pay my bills on time and to keep me advised of your address, telephone number and whereabouts.

**4. MINIMUM FEE/DEPOSIT.** You agree to pay me an initial deposit of $1,000.00. Such deposit will be held in a trust account. You authorize me to use that fund to pay the fees and other charges you incur.

Whenever the initial deposit is exhausted, I reserve the right to demand further deposits, each in an amount to be determined based upon anticipated upcoming expenditures of attorney time and costs. You agree to pay all deposits after the initial deposit within ten (10) days after the date of such demands. Your failure to do so will constitute good cause for my withdrawal from your representation, as further discussed in Paragraph 9 below.

Any unused deposit at the conclusion of my services will be refunded to you.

1

**5. LEGAL FEES AND BILLING PRACTICES.** You agree to pay for my legal services by the hour at the rate of $225.00 per hour. All charges will be made in minimum units of 0.10 hours. The rate set forth above is subject to change on 30 days written notice after the expiration of one year from the date of this agreement. If you decline to pay any increased rates, I will have the right to withdraw as your lawyer.

I will charge you for the time I spend on telephone calls and meetings relating to your matter, including calls and/or meetings with you, opposing counsel, witnesses or court personnel. I will charge for waiting time in court and elsewhere and for travel time, both local and out-of-town.

**6. COSTS AND OTHER CHARGES.** I may incur various costs and expenses in performing legal services under this agreement. You agree to pay for those costs and expenses in addition to the hourly fees. The costs and expenses commonly include process server's fees, fees fixed by law or assessed by courts and other agencies, court reporter's fees, long distance telephone calls, messenger and other delivery fees, postage, parking and other travel expenses, including mileage at $.325 per mile, in office photocopying at $.15 per page and other reproduction or printing costs, facsimile charges of $1.00 per page, transportation, meals, lodging and all other costs of any necessary out-of-town travel, and any necessary fees and charges of expert witnesses, consultants or investigators.

**7. BILLING STATEMENTS.** I will send you periodic billing statements for fees and costs incurred. Each statement will be due within 10 days of its date. You may request a statement at intervals of no less than 30 days. If you do, I will provide one within 10 days.

**8. LIEN.** You hereby grant me a lien on any and all claims or causes of action that are the subject of my representation under this agreement. My lien will be for any sums owing to me at the conclusion of my services. The lien will attach to any recovery you may obtain, whether by arbitration award, judgment, settlement or otherwise.

**9. DISCHARGE AND WITHDRAWAL.** You may discharge me at any time. I may withdraw with your consent or for good cause (subject to Court approval in a pending action). Good cause includes your breach of this agreement, including your failure to pay fees and costs as provided, your refusal or failure to cooperate with me or to follow my advice on a material matter or any fact or circumstance that would render my continuing representation unlawful or unethical. When my services conclude, all unpaid charges will immediately become due and payable. After my services conclude, I will, upon your request, deliver your file to you, along with any funds or property of yours in my possession.

**10. DISCLAIMER OF GUARANTEE.** Nothing in this agreement and nothing in my statements to you will be construed as a promise or guarantee about the outcome of your matter. I make no such promises or guarantees. My comments, if any, about the outcome of your matter are expressions of opinion only.

**11. ERRORS AND OMISSIONS INSURANCE COVERAGE.** I maintain errors and omissions insurance coverage applicable to the services to be rendered under this agreement.

2

Case: 09-30802   Doc# 416   Filed: 06/10/10   Entered: 06/10/10 12:40:06   Page 9 of 18

**12. EFFECTIVE DATE.** This agreement will take effect when you have performed the conditions stated in Paragraph 1, but its effective date will be retroactive to the date I first performed services. The date at the beginning of this agreement is for reference only.

LAW OFFICES OF
JEFFERY D. TROWBRIDGE

By: _____
JEFFERY D. TROWBRIDGE

I have read and understood the foregoing terms and agree to them, as of the date JEFFERY D. TROWBRIDGE first provided services. I acknowledge receipt of a signed copy of this agreement.

CALIFORNIA MORTGAGE AND REALTY, INC.

By: _____
H. DAVID CHOO, President

3

# EXHIBIT B

# EXHIBIT A

**THE LIMITED LIABILITY COMPANY MEMBERSHIP INTEREST UNITS REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR QUALIFIED UNDER THE CALIFORNIA CORPORATE SECURITIES LAW OF 1968, AS AMENDED. SUCH UNITS MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED, PLEDGED OR HYPOTHECATED TO ANY PERSON AT ANY TIME WITHOUT SUCH REGISTRATION AND QUALIFICATION OR AN OPINION OF COUNSEL SATISFACTORY TO THE MANAGER OF THE COMPANY TO THE EFFECT THAT SUCH REGISTRATION OR QUALIFICATION IS NOT REQUIRED. THERE ARE OTHER SUBSTANTIAL RESTRICTIONS ON TRANSFER, AS SET FORTH IN THE OPERATING AGREEMENT.**

**IT IS UNLAWFUL TO CONSUMMATE A SALE OR TRANSFER OF THIS SECURITY, OR ANY INTEREST THEREIN OR TO RECEIVE ANY CONSIDERATION THEREFOR, WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA, EXCEPT AS PERMITTED BY THE COMMISSIONER'S RULES.**

## OPERATING AGREEMENT

## OF

## CMR MORTGAGE FUND, LLC

**THIS OPERATING AGREEMENT** ("Agreement") is made and entered into effective as of January 21, 2001, by and among California Mortgage and Realty, Inc., a Delaware corporation qualified to do business in California ("Manager"), Craig Raymond, an individual (the "Initial Member"), and such other persons as may be added pursuant to the terms hereof ("Members").

## ARTICLE I
## DEFINITIONS

Unless stated otherwise, the terms set forth in this Article I shall, for all purposes of this Agreement, have the meanings as defined herein:

1.01 "Affiliate" shall mean, with respect to any Person, (i) any Person directly or indirectly controlling, controlled by or under common control with such Person, (ii) any Person owning or controlling ten percent (10%) or more of the outstanding voting securities of such Person, (iii) any officer, director or general partner of such Person, or (iv) any Person who is an officer, director, general partner, trustee or holder of ten percent (10%) or more of the voting securities of any Person described in clauses (i) through (iii) of this sentence.

1.02 "Agreement" shall mean this Operating Agreement, as the same may hereafter be amended from time to time.

1.03 "Articles" shall mean the Articles of Organization for the Company originally filed with the

**/vdoc** /181572.2

A-1

(i) To open accounts in the name of the Company in one or more banks, savings and loan associations or other financial institutions or money market funds, and to deposit Company funds therein, subject to withdrawal upon the signature of the Manager or any person authorized by the Manager;

(j) To sell from time to time all or any portion of the Company's assets, or any undivided or beneficial interests therein, including without limitation the securitization, offer and sale of senior participating interests in the Company's mortgage loan portfolio, all upon such terms and conditions as the Manager shall deem appropriate in its sole business judgment; and

(k) To retain such advisors and professionals, execute all instruments and documents and do all other things necessary or appropriate in the judgment of the Manager to effectuate any of the foregoing.

3.02 <u>Fiduciary Duty</u>. The Manager shall have fiduciary responsibility for the safekeeping and use of all funds and assets of the Company, and the Manager shall not employ such funds or assets in any manner except for the exclusive benefit of the Company.

3.03 <u>Allocation of Time to Company Business</u>. The Manager shall not be required to devote full time to the affairs of the Company but shall devote whatever time, effort and skill the Manager may deem to be reasonably necessary for the conduct of the Company's business. The Manager may engage in any other businesses including businesses related to or competitive with the Company.

3.04 <u>Exculpation and Indemnification</u>. Neither the Manager, nor its shareholders, officers, directors, employees or agents, shall have any liability whatsoever to the Company or to any Member for any loss suffered by the Company or any Member which arises out of any action or inaction of the Manager or any of its shareholders, officers, directors, employees or agents, so long as the Manager or such other Person, in good faith, determined that such course of conduct was in the best interests of the Company and did not constitute fraud, bad faith or willful misconduct. The Manager and its shareholders, officers, directors, employees and agents and the employees and agents of the Company shall be entitled to be indemnified and held harmless by the Company, at the expense of the Company, against any loss, expense, claim or liability (including reasonable attorneys' fees, which shall be paid as incurred) resulting from the assertion of any claim or legal proceeding relating to the performance or nonperformance of any act concerning the activities of the Company, including claims or legal proceedings brought by a third party or by Members, on their own behalf or as a Company derivative suit, so long as the party to be indemnified determined in good faith that such course was in the best interests of the Company and did not constitute fraud, bad faith or willful misconduct; provided, that any such indemnity shall be paid solely from the assets of the Company. Nothing herein shall prohibit the Company from paying in whole or in part the premiums or other charge for any type of indemnity insurance in which the Manager or other agents or employees of the Manager or the Company are indemnified or insured against liability or loss arising out of their actual or asserted misfeasance or nonfeasance in the performance of their duties or out of any actual or asserted wrongful act against, or by, the Company including, but not limited to, judgments, fines, settlements and expenses incurred in the defense of actions, proceedings and appeals therefrom.

3.06 <u>Removal of the Manager; Election of Successor Manager</u>. The Manager may be removed upon the following terms and conditions:

(a) The Manager may be removed by the written consent of a Majority Interest of the Members. Members may exercise such right by presenting to the Manager a written notice, which shall be

**/vdoc** /181572.2

Case: 09-36321 Doc# 463-3 Filed: 06/03/10 Entered: 06/03/10 12:46:55 Page 13 of 18
Case: 08-32220 Doc# 416-3 Filed: 06/18/15 Entered: 06/18/15 12:46:02 Page 13 of 25

THE LIMITED LIABILITY COMPANY MEMBERSHIP INTEREST UNITS REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR QUALIFIED UNDER THE CALIFORNIA CORPORATE SECURITIES LAW OF 1968, AS AMENDED. SUCH UNITS MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED, PLEDGED OR HYPOTHECATED TO ANY PERSON AT ANY TIME WITHOUT SUCH REGISTRATION AND QUALIFICATION OR AN OPINION OF COUNSEL SATISFACTORY TO THE MANAGER OF THE COMPANY TO THE EFFECT THAT SUCH REGISTRATION OR QUALIFICATION IS NOT REQUIRED. THERE ARE OTHER SUBSTANTIAL RESTRICTIONS ON TRANSFER, AS SET FORTH IN THE OPERATING AGREEMENT.

IT IS UNLAWFUL TO CONSUMMATE A SALE OR TRANSFER OF THIS SECURITY, OR ANY INTEREST THEREIN OR TO RECEIVE ANY CONSIDERATION THEREFOR, WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA, EXCEPT AS PERMITTED BY THE COMMISSIONER'S RULES.

## OPERATING AGREEMENT

## OF

## CMR MORTGAGE FUND II, LLC

THIS OPERATING AGREEMENT ("Agreement") is made and entered into effective as of November 20, 2003, by and among Bellevue Capital Management, Inc., a Delaware corporation doing business as California Mortgage and Realty, Inc. ("Manager"), Craig Raymond, an individual (the "Initial Member"), and such other persons as may be added pursuant to the terms hereof ("Members").

## ARTICLE I
## DEFINITIONS

Unless stated otherwise, the terms set forth in this Article I shall, for all purposes of this Agreement, have the meanings as defined herein:

1.01 "Affiliate" shall mean, with respect to any Person, (i) any Person directly or indirectly controlling, controlled by or under common control with such Person, (ii) any Person owning or controlling ten percent (10%) or more of the outstanding voting securities of such Person, (iii) any officer, director or general partner of such Person, or (iv) any Person who is an officer, director, general partner, trustee or holder of ten percent (10%) or more of the voting securities of any Person described in clauses (i) through (iii) of this sentence.

3.04     Exculpation and Indemnification.  Neither the Manager, nor its shareholders, officers, directors, employees or agents, shall have any liability whatsoever to the Company or to any Member for any loss suffered by the Company or any Member which arises out of any action or inaction of the Manager or any of its shareholders, officers, directors, employees or agents, so long as the Manager or such other Person, in good faith, determined that such course of conduct was in the best interests of the Company and did not constitute fraud, bad faith or willful misconduct.  The Manager and its shareholders, officers, directors, employees and agents and the employees and agents of the Company shall be entitled to be indemnified and held harmless by the Company, at the expense of the Company, against any loss, expense, claim or liability (including reasonable attorneys' fees, which shall be paid as incurred) resulting from the assertion of any claim or legal proceeding relating to the performance or nonperformance of any act concerning the activities of the Company, including claims or legal proceedings brought by a third party or by Members, on their own behalf or as a Company derivative suit, so long as the party to be indemnified determined in good faith that such course was in the best interests of the Company and did not constitute fraud, bad faith or willful misconduct; provided, that any such indemnity shall be paid solely from the assets of the Company.  Nothing herein shall prohibit the Company from paying in whole or in part the premiums or other charge for any type of indemnity insurance in which the Manager or other agents or employees of the Manager or the Company are indemnified or insured against liability or loss arising out of their actual or asserted misfeasance or nonfeasance in the performance of their duties or out of any actual or asserted wrongful act against, or by, the Company including, but not limited to, judgments, fines, settlements and expenses incurred in the defense of actions, proceedings and appeals therefrom.

3.06     Removal of the Manager; Election of Successor Manager.  The Manager may be removed upon the following terms and conditions:

(a)     The Manager may be removed by the written consent of a Majority Interest of the Members.  Members may exercise such right by presenting to the Manager a written notice, which shall be executed by the Members and their signatures acknowledged, to the effect that the Manager is removed effective on the date set forth in such notice.

(b)     Concurrently with delivery of such notice or within ninety (90) days thereafter by written notice similarly given, a Majority Interest of the Members may also designate a successor Manager.

(c)     Substitution of a new Manager, if any, shall be effective upon written acceptance of the duties and responsibilities of a Manager by the new Manager.  Upon effective substitution of a new Manager, this Agreement shall remain in full force and effect except for the change in the Manager and the business of the Company shall be continued by the new Manager.

3.07     Retirement by Manager.  The Manager may withdraw ("retire") from the Company upon not less than six (6) months written notice of same to the Members.  In the event that the Manager retires, the Members shall elect a successor manager by a Majority Interest of the Members.

THE LIMITED LIABILITY COMPANY MEMBERSHIP INTEREST UNITS REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR QUALIFIED UNDER THE CALIFORNIA CORPORATE SECURITIES LAW OF 1968, AS AMENDED. SUCH UNITS MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED, PLEDGED OR HYPOTHECATED TO ANY PERSON AT ANY TIME WITHOUT SUCH REGISTRATION AND QUALIFICATION OR AN OPINION OF COUNSEL SATISFACTORY TO THE MANAGER OF THE COMPANY TO THE EFFECT THAT SUCH REGISTRATION OR QUALIFICATION IS NOT REQUIRED. THERE ARE OTHER SUBSTANTIAL RESTRICTIONS ON TRANSFER, AS SET FORTH IN THE OPERATING AGREEMENT.

IT IS UNLAWFUL TO CONSUMMATE A SALE OR TRANSFER OF THIS SECURITY, OR ANY INTEREST THEREIN OR TO RECEIVE ANY CONSIDERATION THEREFOR, WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA, EXCEPT AS PERMITTED BY THE COMMISSIONER'S RULES.

OPERATING AGREEMENT

OF

CMR MORTGAGE FUND III, LLC

THIS OPERATING AGREEMENT ("Agreement") is made and entered into effective as of January 9, 2006, by and among California Mortgage and Realty, Inc. ("Manager"), Craig Raymond, an individual (the "Initial Member"), and such other persons as may be added pursuant to the terms hereof ("Members").

ARTICLE I<br>DEFINITIONS

Unless stated otherwise, the terms set forth in this Article I shall, for all purposes of this Agreement, have the meanings as defined herein:

1.01 "Affiliate" shall mean, with respect to any Person, (i) any Person directly or indirectly controlling, controlled by or under common control with such Person, (ii) any Person owning or controlling ten percent (10%) or more of the outstanding voting securities of such Person, (iii) any officer, director or general partner of such Person, or (iv) any Person who is an officer, director, general partner, trustee or holder of ten percent (10%) or more of the voting securities of any Person described in clauses (i) through (iii) of this sentence.

(c) To employ, at the expense of the Company, such agents, employees, independent contractors, attorneys and accountants as the Manager deems reasonable and necessary for any Company purpose;

(d) To effect necessary insurance for the proper protection of the Company, the Manager or Members;

(e) To prosecute, defend, pay, collect, compromise, arbitrate, or otherwise adjust any and all claims or demands of or against the Company;

(f) To bind the Company in all transactions involving the Company's property or business affairs, including the preparation and execution of all loan documents, the funding of loans, and the purchase and sale of notes;

(g) To amend this Agreement with respect to the matters described in Subsections 12.04(a) through (g) below;

(h) To determine the accounting method or methods to be used by the Company, which methods may be changed at any time by written notice to all Members;

(i) To open accounts in the name of the Company in one or more banks, savings and loan associations or other financial institutions or money market funds, and to deposit Company funds therein, subject to withdrawal upon the signature of the Manager or any person authorized by the Manager;

(j) To pledge or sell from time to time all or any portion of the Company's assets, or any undivided or beneficial interests therein, including without limitation the securitization, offer and sale of senior participating interests in the Company's mortgage loan portfolio, all upon such terms and conditions as the Manager shall deem appropriate in its sole business judgment; and

(k) To retain such advisors and professionals, execute all instruments and documents and do all other things necessary or appropriate in the judgment of the Manager to effectuate any of the foregoing.

3.02 Fiduciary Duty. The Manager shall have fiduciary responsibility for the safekeeping and use of all funds and assets of the Company, and the Manager shall not employ such funds or assets in any manner except for the exclusive benefit of the Company.

3.03 Allocation of Time to Company Business. The Manager shall not be required to devote full time to the affairs of the Company but shall devote whatever time, effort and skill the Manager may deem to be reasonably necessary for the conduct of the Company's business. The Manager may engage in any other businesses including businesses related to or competitive with the Company.

3.04 Exculpation and Indemnification. Neither the Manager, nor its shareholders, officers, directors, employees or agents, shall have any liability whatsoever to the Company or to any Member for any loss suffered by the Company or any Member which arises out of any

action or inaction of the Manager or any of its shareholders, officers, directors, employees or agents, so long as the Manager or such other Person, in good faith, determined that such course of conduct was in the best interests of the Company and did not constitute fraud, bad faith or willful misconduct. The Manager and its shareholders, officers, directors, employees and agents and the employees and agents of the Company shall be entitled to be indemnified and held harmless by the Company, at the expense of the Company, against any loss, expense, claim or liability (including reasonable attorneys' fees, which shall be paid as incurred) resulting from the assertion of any claim or legal proceeding relating to the performance or nonperformance of any act concerning the activities of the Company, including claims or legal proceedings brought by a third party or by Members, on their own behalf or as a Company derivative suit, so long as the party to be indemnified determined in good faith that such course was in the best interests of the Company and did not constitute fraud, bad faith or willful misconduct; provided, that any such indemnity shall be paid solely from the assets of the Company. Nothing herein shall prohibit the Company from paying in whole or in part the premiums or other charge for any type of indemnity insurance in which the Manager or other agents or employees of the Manager or the Company are indemnified or insured against liability or loss arising out of their actual or asserted misfeasance or nonfeasance in the performance of their duties or out of any actual or asserted wrongful act against, or by, the Company including, but not limited to, judgments, fines, settlements and expenses incurred in the defense of actions, proceedings and appeals therefrom.

3.06 <u>Removal of the Manager; Election of Successor Manager</u>. The Manager may be removed upon the following terms and conditions:

(a) The Manager may be removed by the written consent of a Majority Interest of the Members. Members may exercise such right by presenting to the Manager a written notice, which shall be executed by the Members and their signatures acknowledged, to the effect that the Manager is removed effective on the date set forth in such notice.

(b) Concurrently with delivery of such notice or within ninety (90) days thereafter by written notice similarly given, a Majority Interest of the Members may also designate a successor Manager.

(c) Substitution of a new Manager, if any, shall be effective upon written acceptance of the duties and responsibilities of a Manager by the new Manager. Upon effective substitution of a new Manager, this Agreement shall remain in full force and effect except for the change in the Manager and the business of the Company shall be continued by the new Manager.

3.07 <u>Retirement by Manager</u>. The Manager may withdraw ("retire") from the Company upon not less than six (6) months written notice of same to the Members. In the event that the Manager retires, the Members shall elect a successor manager by a Majority Interest of the Members.

## ARTICLE IV
## THE MEMBERS - CAPITAL CONTRIBUTIONS

4.01 <u>Capital Contributions of Members</u>. The Members shall contribute to the capital of the Company an amount equal to One Thousand Dollars ($1,000) for each Unit subscribed

Case: 09-30802   Doc# 416   Filed: 06/10/10   Entered: 06/10/10 12:40:06   Page 18 of 18