1  McNUTT LAW GROUP LLP
   MICHAEL A. SWEET (CSBN 184345)
2  DALE L. BRATTON (CSBN 124328)
   188 The Embarcadero, Suite 800
3  San Francisco, California 94105
   Telephone: (415) 995-8475
4  Facsimile: (415) 995-8487

5  Attorneys for Official
   Committee of Equity Security Holders
6

7

8                UNITED STATES BANKRUPTCY COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  In re                                    Case Nos.  08-32220 TEC
                                                        09-30788 TEC
12  CMR MORTGAGE FUND, LLC,                              09-30802 TEC
    CMR MORTGAGE FUND II, LLC,
13  CMR MORTGAGE FUND III, LLC,             Chapter 11

14              Debtors.
                                            SECOND INTERIM APPLICATION FOR
15  ☐  Affects **FUND I**                   COMPENSATION AND
                                            REIMBURSEMENT OF EXPENSES FOR
16  ☐  Affects **FUND II**                  McNUTT LAW GROUP LLP AS
                                            COUNSEL FOR THE OFFICIAL
17  ☐  Affects **FUND III**                 COMMITTEE OF EQUITY SECURITY
                                            HOLDERS
18  ☒  Affects **ALL FUNDS**
                                            Date:      October 1, 2010
19                                          Time:      9:30 a.m.
                                            Place:     235 Pine Street
20                                                     Courtroom 23
                                                       San Francisco, CA 94104
21
                                            Judge:     Hon. Thomas E. Carlson
22

23

24              I.  **SUMMARY OF RELIEF REQUESTED**

25          McNutt Law Group LLP ("MLG" or "Applicant"), attorneys for the Official Committee of

26  Equity Security Holders (the "Committee") of CMR Mortgage Fund, LLC ("Fund I"), CMR

27  Mortgage Fund II, LLC ("Fund II") and CMR Mortgage Fund III, LLC ("Fund III") (collectively

28  the "Funds" or "Debtors") in the above-captioned cases (the "Cases"), hereby presents its second

Case: 08-32220   Doc# 661   Filed: 09/10/10   Entered: 09/10/10 15:58:57   Page 1 of 35

1 interim application, seeking an order for allowance of $572,688.50 in fees and reimbursement of

2 $23,708.55 in expenses incurred for the period February 1, 2010 through July 31, 2010 (the

3 "Application").

4 Further, MLG requests that the Court allow the release of the 20% "holdback" (in the total

5 amount of $57,257.39) that was set aside under the March 31, 2010, order on MLG's First Interim

6 Fee Application.

7 MLG submits this Application in accordance with the orders authorizing MLG's

8 employment as counsel for the Committee entered on November 2, 2009, in the Fund I case [Doc.

9 No. 296], the Fund II case [Doc. No. 169], and the Fund III case [Doc. No. 143] (collectively, the

10 "Employment Order"); § 327(a) of Title 11 of the United States Code ("Bankruptcy Code");

11 Federal Rule of Bankruptcy Procedure 2016; the Guidelines for Compensation and Expense

12 Reimbursement of Professionals and Trustees for the United States Bankruptcy Court for the

13 Northern District of California ("Court Guidelines"); and the United States Trustee Guidelines for

14 Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

15 U.S.C. § 330 ("UST Guidelines").

## II.  <u>NOTICE OF APPLICATION</u>

17 Notice of this Application, in the form attached hereto as <u>Exhibit A</u>, is being sent

18 concurrently with its filing to all creditors, equity interest holders, and other parties in interest.

19 Full copies of the Application are being transmitted by mail to the United States Trustee, Debtors'

20 counsel, and parties who have requested special notice.  Applicant respectfully submits that no

21 further notice is required in this matter.

## III.  <u>BACKGROUND AND BASIS FOR RELIEF REQUESTED</u>

23 **A.    Background**

24 The Funds are California limited liability companies that are managed by California

25 Mortgage and Realty, Inc. ("CMRI" or the "Manager"), and were formed for the purpose of

26 making or investing in business loans secured by deeds of trust on real estate properties –

27 predominately commercial income producing structures or land held by businesses located

28 primarily in California.  The principal assets of the Funds currently are interests in limited liability

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

186989.1

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 15:58:57    Page 2 of
35

1  corporations that own real property acquired by foreclosure.

2      On November 18, 2008, Fund I filed its voluntary petition for relief under Chapter 11 of

3  the Bankruptcy Code, and on March 31, 2009, Fund II and Fund III filed their respective voluntary

4  petitions for relief under Chapter 11 of the Bankruptcy Code.

5      On October 2, 2009, the United States Trustee appointed the Committee to serve in the

6  Fund I, Fund II, and Fund III bankruptcy cases, as reflected in the Appointment of Official

7  Committee of Unsecured Creditors filed with this Court on October 2, 2009.  The Committee

8  hired MLG as counsel ("Committee Counsel") on October 16, 2009, and LECG as financial

9  advisors ("Committee Financial Advisors") on November 2, 2009.

10      Since its appointment in the case the Committee has taken an active role.  Most

11  significantly, it has taken the lead in bringing the Debtors and the investor constituency together to

12  reach consensus on a joint plan and disclosure statement.  The Committee and its professionals

13  took the lead in formulating a wind-down plan (the "Plan" or "Joint Plan") that will allow a

14  measured sale of the Funds' assets over a three to five year period, a process that will allow the

15  payment of all unsecured debts in full and is likely to yield a decent return to equity investors.

16  These are unusual achievements in Chapter 11 cases.

17      The Committee's professionals including MLG negotiated the key provisions of the Joint

18  Plan with the Debtors as well as various creditors with significant interests in the estates.  The

19  Committee's professionals including MLG then located a lender willing to provide bankruptcy exit

20  financing for the Plan when the DIP financing proposed by the Debtors failed to materialize.

21      The Committee's professionals, particularly MLG, then took the lead in drafting a plan and

22  disclosure statement as well as the related motion for substantive consolidation of the estates in the

23  three Funds' bankruptcy cases.  Substantive consolidation was conditionally approved on March

24  31, 2010.  After interim presentations to the Court of a plan, the Joint Plan as finally proposed was

25  filed on June 24, 2010.  The Disclosure Statement for the Joint Plan was approved on June 24,

26  2010.  Upon submission to creditors and equity investors, the Plan received overwhelmingly

27  support.  All objections to confirmation of the Plan have been overruled (with qualifications as

28  directed by the Court) except for the objection by Canpartners Realty Holding Company IV LLP

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

186989.1
Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 13:58:57    Page 3 of
35

1  ("Canpartners").  That objection is resolved via a settlement which is now pending before the

2  Court for hearing on approval.

3         Assuming that the final obstacles to Plan approval have been eliminated, the Committee

4  would expect the Plan to have an early-October effective date.

5  **B.      Prior Payments to Applicant**

6         MLG made one prior interim fee application, which was considered by the Court on March

7  26, 2010.  The first interim fee application covered the period of October 16, 2010, through

8  January 31, 2010, and was approved with a 20% hold-back.  Because the Debtors had very limited

9  funds available, MLG has received only $50,000 towards the first fee award.  Aside from the

10  single $50,000 distribution, MLG has received no additional compensation to date in these cases.

11  **C.      Available Funds and Administrative Expenses**

12         Pursuant to the Plan, there should be sufficient funds available on its effective date, or soon

13  afterwards, to pay all administrative expenses including MLG's fees and costs.

14              **IV.   SUMMARY OF FEES AND COST REIMBURSEMENT**

15         From February 1, 2010, through July 31, 2010, MLG rendered the services described in

16  this Application and in the invoices attached to the Declaration of Michael A. Sweet in Support Of

17  Second Interim Application for Compensation and Reimbursement of Expenses for McNutt Law

18  Group LLP as Counsel For the Official Committee of Equity Security Holders, filed concurrently

19  herewith ("Sweet Decl.").  MLG also incurred the actual and necessary expenses itemized in the

20  invoices.  MLG expended a total of 1,440.70 hours rendering services to the Committee during the

21  period covered by this Application, for which it seeks $572,688.50 in compensation.  MLG also

22  seeks $23,708.55 in reimbursement of expenses incurred during the period.

23                      **V.   REQUIRED DISCLOSURE**

24         MLG has not entered into any agreement for the purpose of fixing the fees or other

25  compensation to be paid for services rendered and expenses incurred in connection with this case.

26  MLG has not agreed to share the compensation to be received for the services rendered in this case

27  with any other entity.  *See* Sweet Decl., ¶ 10.

28         The names and hourly rates of the professionals and paraprofessionals of MLG who billed

4

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

186989.1

time for the period covered by this Application are as follows:

| PROFESSIONAL | INITIALS | POSITION | DATE ADMITTED | RATE THROUGH 6/30/2010 | RATE FROM 7/1/2010 |
|---|---|---|---|---|---|
| Scott H. McNutt | SHM | Attorney | 1982 | $500 | $525 |
| Michael A. Sweet | MAS | Attorney | 1996 | $450 | $495 |
| Dale L. Bratton | DLB | Attorney | 1986 | $450 | $450 |
| Douglas C. Graham | DCG | Attorney | 2001 | $375 | $395 |
| Lindsey R. Moran | LRM | Attorney | 2005 | $325 | $325 |
| Shane J. Moses | SJM | Attorney | 2005 | $325 | $325 |
| Marianne M. Dickson | MMD | Attorney | 2006 | $275 | $300 |
| Jackie Jacobus | JJ | Paralegal | n/a | $150 | $150 |

The hourly rates charged by MLG in this case are its customary rates charged by comparably skilled practitioners in cases other than cases under Title 11. MLG's rates in this case are not greater than those charged to other clients in other than bankruptcy matters.

As set forth below, MLG has compiled a project-based itemization of services rendered based upon its contemporaneous daily records during the period covered by this Application. MLG has utilized the project categories suggested by the UST Guidelines. The Committee has been given an opportunity to review this Application. *See* Sweet Decl., ¶ 9.

The following chart summarizes project billing categories and the total hours expended for each category during the period covered by this Application, and is followed by a narrative and detail.

| CATEGORY | | TOTAL HOURS BILLED | TOTAL HOURS NOT BILLED | TOTAL FEES |
|---|---|---|---|---|
| A. | Case Administration | 6.50 | | $2,894.00 |
| B. | Asset Analysis and Recovery | 34.10 | | 13,435.00 |
| C. | Asset Disposition | 45.40 | | 17,113.00 |
| D. | Recovery of Insurance Policy and Proceeds | | | |
| | 1) Analysis of Insurance/Attempts at Direct Recovery From Insurers | 57.00 | | $22,710.00 |
| | 2) Derivative Litigation | 62.10 | | 22,182.50 |

SECOND INTERIM APPLICATION FOR COMPENSATION FOR COUNSEL TO OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

186989.1

Case: 08-32220   Doc# 661   Filed: 09/10/10   Entered: 09/10/10 15:58:57   Page 5 of 35

| | Category | Total Hours Billed | Total Hours Not Billed | Total Fees |
|---|---|---|---|---|
| E. | Relief from Stay and Adequate Protection Proceedings | 6.50 | | $2,797.50 |
| F. | Fee and Employment Applications | 49.70 | .70 | 16,984.00 |
| G. | Other Fee and Employment Applications | 19.00 | | 6,555.00 |
| H. | Compensation of Professionals | 2.90 | | 1,230.00 |
| I. | Communications with Creditors | 21.00 | | 8,239.00 |
| J. | Communications with Committee Members | 25.90 | | 10,522.00 |
| K. | Equity Committee Meetings | 64.70 | | 27,133.50 |
| L. | Committee Meetings Preparation and Follow Up | 21.20 | | 8,238.00 |
| M. | Avoidance Action Analysis | 13.20 | | 5,077.50 |
| N. | Plan and Disclosure Statement | | | |
| | 1) Substantive Consolidation | | | |
| | a) Motion for Substantive Consolidation | 117.10 | | 44,582.50 |
| | b) Addressing Objections to Substantive Consolidation | 48.50 | | 18,812.50 |
| | 2) Financing and Cash Collateral | 63.30 | .40 | 27,885.00 |
| | 3) Disclosure Statement | | | |
| | a) Outline Essential Terms | 11.80 | | 5,060.00 |
| | b) Drafting of Disclosure Statement | 60.70 | | 27,385.00 |
| | c) Liquidating Trust Agreement | 14.50 | | 6,702.50 |
| | d) Disclosure Issues/Responding to Inquiries | 43.30 | | 19,745.00 |
| | e) Objections to Disclosure Statement | 31.60 | | 13,185.00 |
| | f) Disclosure Hearings and Related Matters | 22.20 | | $9,990.00 |

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 15:58:57    Page 6 of 35
186989.1

| Category | Total Hours Billed | Total Hours Not Billed | Total Fees |
|---|---|---|---|
| 4) Joint Plan of Reorganization | | | |
| a) Plan Outline and Essential Terms | 62.40 | | 27,057.50 |
| b) Preparation of Plan and Revisions | 84.60 | | 37,170.00 |
| c) Procedural and Logistical Issues | 38.00 | | $14,461.00 |
| d) Inquiries and Negotiations | 58.50 | | 26,269.00 |
| e) Tax Issues | 7.40 | | 3,465.00 |
| f) Claims and Plan | 35.10 | | 15,170.000 |
| g) Objections to Plan | 17.50 | | 8,280.00 |
| h) Plan Voting and Balloting | 73.80 | .30 | 19,863.00 |
| i) Confirmation Hearings and Related Matters | 9.80 | | 4,690.50 |
| O. Litigation and Contested Matters | 122.50 | | 43,825.00 |
| P. Claims Administration and Objections | 70.60 | | 27,674.00 |
| Q. Committee Website | 18.30 | | 6,305.00 |
| **TOTAL:** | **1,440.70** | **1.40** | **$572,688.50** |

# VI.  SERVICES RENDERED

## A.    Case Administration

This is a complicated Chapter 11 case.  There are three Debtors, approximately $188 million in initial invested capital, over 1,200 investors, and various assets with intertwined interests and relationships.  In most instances MLG has been able to place tasks into specific categories.  However, some time entries relate to the most general areas of case administration, or bridge multiple categories.

/ / /

/ / /

186989.1

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. A.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | .40 | $210.00 |
| Michael A. Sweet | MAS | 4.90 | 2,259.00 |
| Dale L. Bratton | DLB | .40 | 180.00 |
| Douglas C. Graham | DCG | .40 | 150.00 |
| Lindsey R. Moran | LRM | .20 | 65.00 |
| Jackie Jacobus | JJ | .20 | 30.00 |
| TOTALS | | 6.50 | 2,894.00 |

**B.**      **Asset Analysis and Recovery**

The various intertwined interests and interdependent relationships among the Funds required that the Committee carefully scrutinize potential assets.  Following the execution of the term-sheet with the Debtors and the Manager, and in support of efforts to determine the best approach for addressing options for a joint Chapter 11 Plan, the Committee analyzed materials related to various assets that might be available to the post-confirmation liquidating trust ("Trust") under the Plan.  There are two significant areas of claims under this category.  First, the Debtors have significant claims against David Choo and CMRI for losses suffered as a result of management practices.  The Debtors have analyzed these claims and attempted to negotiate settlements with Choo and the Manager.  The initial analysis and settlement discussions fall under this category.  Second, in many of their loan transactions the Debtors obtained personal guarantees of third-parties.  Since it was anticipated that the rights against these guarantors would pass to the Trust through the Plan, it was essential that the Committee gain some understanding of the potential value of these assets.

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. B.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 10.40 | $4,680.00 |
| Dale L. Bratton | DLB | 3.70 | 1,665.00 |
| Douglas C. Graham | DCG | 11.80 | 4,425.00 |

8

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 15:58:57    Page 8 of
35

| Professional | Initials | Hours Billed | Total Fees |
|---|---|---|---|
| Lindsey R. Moran | LRM | 8.20 | 2,665.00 |
| **TOTALS** | | **34.10** | **$13,435.00** |

## C.    Asset Disposition

The Debtors' business was to make relatively short-term loans secured by deeds of trust on real estate.  As this real estate was developed, the Funds' investments would be "taken out" by construction financing or other equity financing.  However, as the real estate market began to collapse, the Funds ended up foreclosing on many of these properties.  The foreclosed properties, in most cases, were then held through single-purpose real estate entities.  Usually when a Fund foreclosed, it was doing so from a junior position which meant that it still needed to service more senior debt or negotiate some other arrangement with banks and other creditors.  Because the ability to hold onto the Debtors' interests in these properties is key to the success of the proposed Chapter 11 Plan, the Committee Financial Advisors and Committee Counsel have taken an active role in activities relating to the disposition of these assets.

For example, in order to protect the Wheatland property, the Committee actively participated in negotiations with senior lenders on that property.  The Committee is also actively involved in work relating to preserving the Debtors' interest in an entity known as Pfau, Pfau and Pfau LLC.  This entity is itself the debtor in a bankruptcy in San Diego.  This entity has two real estate holdings that will be significant assets of the post-confirmation Trust.

Committee Counsel has been engaged in negotiations over a settlement of claims related to a property in the East Bay called Saigon Plaza.  Committee Counsel has also been involved with negotiations concerning claims arising out of the Debtors' interest in a property called Hamilton Creek, which is the subject of an entirely separate bankruptcy case in this court.

Much of Committee Counsel's time in this category relates to work to keep these properties from being lost to senior secured creditors.

/ / /

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 15:58:57    Page 9 of 35

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. C.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 15.60 | $7,128.00 |
| Dale L. Bratton | DLB | 2.40 | 1,080.00 |
| Lindsey R. Moran | LRM | 27.40 | 8,905.00 |
| **TOTALS** | | **45.40** | **$17,113.00** |

## D.    Recovery of Insurance Policy Proceeds

A promising avenue for recovery is insurance policies which cover actions related to the Manager's conduct.  The Funds purchased at least eight million dollars worth of insurance, a $5,000,000 financial services liability policy issued through Indian Harbor Insurance Company and $3,000,000 in mortgage bankers and brokers professional liability coverage under a policy issued by Certain Underwriters at Lloyd's, London.  With far more than eight million dollars lost to the investors in the three Funds, and with no other entities or persons claiming damage under the policies besides equity investors, it seems clear that these policy proceeds should be paid to the investors in an efficient and equitable way and with a minimal expenditure on attorneys' fees (particularly since these are "wasting" or "declining policies").

### 1.    Analysis of Insurance/Attempts at direct recovery from insurers

Committee Counsel analyzed the two insurance policies and made demands on the carriers. Simultaneously Committee Counsel worked to open communications with the law firm that had represented CMRI on insurance matters prior to the bankruptcy filing and which had apparently tendered claims to one or both of the insurers.  MLG engaged in these efforts for several months as it attempted to bring the insurers into the Chapter 11 cases in a constructive way.  Meeting with strong resistance, and no prospect of voluntary cooperation from the insurers, the Committee then retained an attorney specializing in insurance issues to assist in these efforts.

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. D.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 2.00 | $1,000.00 |

186989.1

Case: 08-32220   Doc# 661   Filed: 09/10/10   Entered: 09/10/10 13:58:57   Page 10 of 35

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 15.20 | 6,840.00 |
| Dale L. Bratton | DLB | 6.20 | 2,790.00 |
| Douglas C. Graham | DCG | 23.20 | 8,700.00 |
| Lindsey R. Moran | LRM | 10.40 | 3,380.00 |
| **TOTALS** | | **57.00** | **22,710.00** |

## 2. Derivative Litigation

The Committee and its professionals were unable to engage meaningfully with the insurance carriers. Lloyds had denied coverage completely prior to the Committee retaining counsel, and Indian Harbor asserted that its policy was not obligated to respond because the investors had not asserted any claims against any of the insureds. Committee Counsel then commenced analysis of the most efficient and inexpensive vehicle for asserting the investors' claims to bring the insurance proceeds into the estate.

Ultimately Committee Counsel advised the Committee that the most likely avenue to yield results with the insurance carriers was to file litigation against the Manager and David Choo (both of whom are insureds). Committee counsel researched claims for relief against Choo and CMRI and prepared to file a derivative and class action complaint.

This effort involved complex issues and a careful investigation of the potential consequences of various possible approaches. The goal was to find a way to resolve all claims between the Manager, David Choo, and the investors, obtain the maximum recovery for investors, and achieve global settlement. This would require that not only the debtors, but also non-debtor parties be given releases, something that typically cannot be done via a Chapter 11 plan. Committee Counsel ultimately advised the Committee that an action against Choo and CMRI should be framed as a suit by investor plaintiffs on behalf of the Funds derivatively and on behalf of a class of all similarly situated investors. Three committee-members elected to file a class

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

186989.1

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 15:58:51    Page 11 of 35

action lawsuit along these lines.[1]

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. E.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 4.70 | $2,115.00 |
| Dale L. Bratton | DLB | 11.30 | 5,085.00 |
| Lindsey R. Moran | LRM | 45.70 | 14,852.50 |
| Shane J. Moses | SJM | .40 | 130.00 |
| **TOTALS** | | **62.10** | **$22,182.50** |

## E.     Relief from Stay and Adequate Protection Proceedings

Several of the investors in the Funds have filed state court actions through which they are attempting to obtain judgments against the Funds as well as other entities insured under the Indian Harbor and Lloyd's policies. As described above, the Committee believes that the limited amount of insurance proceeds should benefit the entire equity body, not just select investors, and has objected to the attempts by this small group of investors to continue state court lawsuits against the Manager and related entities. During the period covered by this fee application there were several hearings on pending relief from stay motions by state court plaintiffs. Committee Counsel has also responded to inquiries from the attorney representing the Debtors and the Manager in state court as to the impact of the bankruptcy proceedings on the state court actions. Finally, Committee Counsel has been required to address, from time to time, a pending relief from stay motion in the Hamilton Creek case by the senior secured lender.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. F.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 4.80 | 2,160.00 |
| Douglas C. Graham | DCG | 1.70 | 637.50 |

---

[1] While MLG is representing these individual committee-members in the class action, it is doing so under a separate engagement agreement and MLG has not billed the Committee for its work in connection with this class action once the decision was made that the action would need to be brought by individuals and not the entire Committee.

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

186989.1

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| **TOTALS** | | **6.50** | **$2,797.50** |

**F.    Fee and Employment Applications**

Time incurred in this category primarily concerns MLG's First Interim Fee Application which was approved by the Court on March 31, 2010.  There is also some time billed during the period of this Application related to this Second Interim Fee Application.

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. G.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 13.00 | $6,106.50 |
| Lindsey R. Moran | LRM | 30.70 | 9,977.50 |
| Jackie Jacobus | JJ | 6.00 | 900.00 |
| **TOTALS** | | **50.40** | **$17,351.50** |

(The bulk of the time incurred in preparation of this Second Interim Fee Application will appear in the application for the next period, but pursuant to the Court Guidelines an estimate – approximately $18,000 – is provided here.)

**G.    Other Fee and Employment Applications**

As primary counsel for the Equity Committee, MLG has supported the Committee's other retained professionals as appropriate with regard to their employment applications and fee applications.  Entries in this category include assisting the Committee Financial Advisors with their first interim fee application which was granted by the Court on March 31, 2010.  Committee Counsel also assisted the special insurance counsel and special tax counsel with their employment applications, which were approved by the Court on April 19, 2010, and June 16, 2010, respectively.  Finally, Committee Counsel was called upon to advise on applications for employment of and payment to professionals who have been providing services to the various Debtor entities.

/ / /

SECOND INTERIM APPLICATION FOR COMPENSATION FOR COUNSEL TO OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

186989.1

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 13:58:51    Page 13 of 35

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. H.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 1.20 | $540.00 |
| Dale L. Bratton | DLB | 2.90 | 1,305.00 |
| Lindsey R. Moran | LRM | 13.50 | 4,387.50 |
| Marianne M. Dickson | MMD | .90 | 247.50 |
| Jackie Jacobus | JJ | .50 | 75.00 |
| **TOTALS** | | **19.00** | **$6,555.00** |

## H.    Compensation of Professionals

As these are rather complicated cases with complex financial situations, the Debtors have hired numerous professionals including accountants, tax professionals, and special counsel since the commencement of these cases. Charges in this category refer to the Committee's review and analysis of the proposed or requested compensation for these various professionals, and attendance at one hearing on such matters.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. I.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 2.30 | $1,035.00 |
| Lindsey R. Moran | LRM | .60 | 195.00 |
| **TOTALS** | | **2.90** | **$1,230.00** |

## I.    Communications with Creditors

MLG has continued to incur considerable time responding to inquiries from among the 1,200-plus investors in the Funds. This has included general inquiries about the Plan and Disclosure statement, the financial status of the Funds' assets, and the Committee's intended strategy for recovery. MLG has received and responded to these inquiries by telephone, email, and postal mail. As a general rule such inquiries are handled by non-attorneys, but if requested an attorney will communicate with an investor. Most inquiries are handled in a comparatively short time. There have been some situations where investors have engaged MLG staff and attorneys in

14

SECOND INTERIM APPLICATION FOR COMPENSATION FOR COUNSEL TO OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

186989.1

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 13:58:57    Page 14 of 35

lengthy calls or have posed inquiries that required detailed email responses.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. J.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 1.60 | $800.00 |
| Michael A. Sweet | MAS | 5.00 | 2,349.00 |
| Dale L. Bratton | DLB | 4.40 | 1,980.00 |
| Lindsey R. Moran | LRM | 9.20 | 2,990.00 |
| Jackie Jacobus | JJ | .80 | 120.00 |
| **TOTALS** | | **21.00** | **$8,239.00** |

**J.  Communications with Committee Members**

Most of the work with the Committee is handled through regular Committee meetings. *See* the following category. However, members of the Committee also work individually with Committee Counsel from time to time, for example to discuss developments in the case and their implications for the investors, or to provide input on the formulation of specific strategies for the Committee. During the period covered by the Second Interim Fee Application, communications between MLG and Committee members have generally related to issues surrounding the plan process. There have also been discussions on other topics, such as the status of the Canpartners litigation or plans for the disposition of various Debtor assets.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. K.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 9.10 | $4,212.00 |
| Dale L. Bratton | DLB | 6.80 | 3,060.00 |
| Lindsey R. Moran | LRM | 10.00 | 3,250.00 |
| **TOTALS** | | **25.90** | **$10,522.00** |

**K.  Equity Committee Meetings**

During the period covered by this Application, the Committee has met about once per month. Occasionally the Committee meets more frequently, when the workload or hearing

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS
186989.1

schedule so dictates.  Generally, meetings take place via telephone conference and run three to four hours; some members occasionally attend in person.  For most meetings the two MLG attorneys who are most active in the case, Michael Sweet and Dale Bratton, participate.  However, from time to time other attorneys participate for some or all of a meeting to discuss specific tasks that those attorneys are performing for the Committee.

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. L.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | .60 | $300.00 |
| Michael A. Sweet | MAS | 23.40 | 10,611.00 |
| Dale L. Bratton | DLB | 23.40 | 10,530.00 |
| Douglas C. Graham | DCG | 1.40 | 525.00 |
| Lindsey R. Moran | LRM | 15.90 | 5,167.50 |
| **TOTALS** | | **64.70** | **$27,133.50** |

## L.   Committee Meeting Preparation and Follow Up

The time in this category includes preparation of agendas and minutes for Committee meetings, as well as preparing or reviewing materials that are to be the subject of discussion at these meetings.  Such materials have often involved complex legal and financial issues.

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. M.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 8.30 | $3,820.50 |
| Dale L. Bratton | DLB | 1.80 | 810.00 |
| Lindsey R. Moran | LRM | 11.10 | 3,607.50 |
| **TOTALS** | | **21.20** | **$8,238.00** |

## M.   Avoidance Action Analysis

Part of the Committee's work has been to determine whether monies could be recovered through avoidance actions under the Bankruptcy Code.  Although the Debtors did not make many payments to creditors (since these payments generally took place through the Manager), there

Case: 08-32220   Doc# 661   Filed: 09/10/10   Entered: 09/10/10 19:58:57   Page 16 of 35
186989.1

were some distributions to equity investors during the months leading up to the bankruptcy filings. Committee Counsel, working with the Committee Financial Advisor, reviewed the Debtors' cashflow during the months leading up to the filings to determine whether any of these distributions were recoverable. This analysis will be utilized by the post-confirmation Trust.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. N.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 1.30 | $585.00 |
| Dale L. Bratton | DLB | .40 | 180.00 |
| Douglas C. Graham | DCG | 11.50 | 4,312.50 |
| **TOTALS** | | **13.20** | **$5,077.50** |

## N.    Plan and Disclosure Statement

At the time the Committee was appointed, the three Debtor-funds appeared to be working at cross-purposes. Funds II and III had separate plans pending before the Court. There appeared to be no coherent or viable strategy for putting forward a plan that was actually likely to bring a positive result for any part of the equity body. Meanwhile, Fund I was embroiled in expensive, and high-stakes, litigation with Canpartners over a property which may, in the final analysis, be of no value at all to the Funds.

Having been appointed to represent the equity interests in all three Funds, the Committee early on focused on bringing the various divergent interests together. The goal was to formulate a Chapter 11 plan that actually had prospects of recovering significant value for equity investors, in difficult legal and financial circumstances and from a precariously-positioned pool of illiquid assets.

The first step in this process was the entry into a term-sheet with the Debtor funds. This occurred in mid-January 2010, which was in the period covered by the Committee's prior fee application. The term-sheet called for the three Debtors to work together with the Manager and the Committee to negotiate a joint plan of reorganization. Shortly thereafter, the Committee and the Debtors set to work on such a plan. This eventually became the Plan as filed on June 24.

17

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 13:58:51    Page 17 of 35

The Plan, as conceived by MLG along with the Committee Financial Advisors, would use a liquidating trust to sell off the Funds' various real property assets over a three to five-year period. By utilizing a controlled-sale process, the Trust can identify specific assets that should be sold in the near term while the proceeds of those sales can be utilized to service senior indebtedness on other properties or to pay for entitlements or other improvements that will improve the long-term sale price of key holdings in the Funds' property portfolio.

At the time of submission of this Application, the Plan is progressing well on its way to confirmation. The final confirmation objection, by Canpartners, has been resolved through a settlement agreement subject to the Court's approval, and a motion for such approval is set for hearing on September 22, 2010. If all goes well, the Plan could go effective in early October.

This section of the fee application addresses each of the various tasks undertaken by Committee Counsel to bring this Plan to fruition.

### 1. <u>Substantive Consolidation</u>

Substantive consolidation is authorized when multiple debtors' books and records cannot be adequately disentangled, or keeping the entities separate would be inequitable to creditors and interest holders. Both of these factors are present here. The books and records inadequately reflect the intent of the various parties involved with these Funds on how investment funds were treated and lien positions were created. The Manager in many respects treated what should have been formally distinct Funds as if they were a single pool of investable funds.

Early in the conceptual process for the Joint Plan, it became clear that the most efficient vehicle for generating a recovery for equity investors would be through a single substantively consolidated plan. It would be seriously inequitable to the various parties, particularly equity holders, to maintain the illusion that these funds were operated separately and in full accord with their operating agreements. The legal and financial issues involved were complex, and the subject of a good deal of analysis. The results of the analytical efforts, however, clearly favored consolidation.

The Committee recognized that combining presentation of the substantive consolidation issue with the presentation of separate Chapter 11 plans for three separate Funds would raise

Case: 08-32220   Doc# 661   Filed: 09/10/10   Entered: 09/10/10 19:58:51   Page 18 of
186989.1

1 serious logistical issues. Investors would then have been faced with a ballot decision that would
2 have had to be framed in a very complex and inherently confusing way. The results of balloting
3 through three separate plans could also have been difficult to reconcile, and might have led to an
4 internally contradictory result. After analyzing these issues, the Committee determined to first
5 move to substantively consolidate the three Funds' cases, and only subsequently create a single
6 plan and disclosure statement. Then, with this threshold issue clearly presented and resolved, a
7 single coherent plan for dealing with all assets and all claims in a systematic way could be
8 proposed.

9                    **(a)      Motion For Substantive Consolidation**

10        The time in this category relates to the actual research, analysis, and drafting of the
11 Committee's Motion for Substantive Consolidation. It also includes preparation for and
12 attendance at the hearing on the Motion.

13        The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. O.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 3.80 | $1,900.00 |
| Michael A. Sweet | MAS | 17.60 | 7,920.00 |
| Dale L. Bratton | DLB | 30.40 | 13,680.00 |
| Lindsey R. Moran | LRM | 64.50 | 20,962.50 |
| Jackie Jacobus | JJ | .80 | 120.00 |
| **TOTALS** | | **117.10** | **$44,582.50** |

21                    **(b)      Addressing Objections to Substantive Consolidation**

22        There were two objections to the Committee's Motion for Substantive Consolidation. The
23 Office of the U.S. Trustee filed one. The Committee found that odd, since the UST had actually
24 appointed a single Committee to represent the investors in the three Funds. The other was by
25 Canpartners, which the Committee perceived as intent on preventing the Funds from pooling
26 resources to better maintain the litigation over Fund I's losses suffered as a result of the Hawaii
27 investment with Canpartners.
28

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

186989.1

In an attempt to accommodate inquiries by Canpartners and try to address questions raised in its objection to substantive consolidation, Committee Counsel and the Committee's Financial Advisor engaged in informal discovery with Canpartners' counsel. Ultimately, Canpartners went forward with its objection anyway, which made it necessary for additional briefing and declarations to be prepared by Committee Counsel.

This category covers work by Committee Counsel to respond to the objections. The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. P.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 17.10 | $7,695.00 |
| Dale L. Bratton | DLB | 7.30 | 3,285.00 |
| Lindsey R. Moran | LRM | 24.10 | 7,832.50 |
| **TOTALS** | | **48.50** | **$18,812.50** |

### 2. Financing and Cash Collateral

At the time the Committee was appointed, the Debtor Funds were in the process of attempting to raise debtor-in-possession ("DIP") financing for their various Chapter 11 plans. The proposal was to raise money from investors who were already participants in the various funds. The Committee's Financial Advisor began making projections for how a liquidating plan might operate and it was clear that there would be a need for over $10 million in interim financing for the Plan to have a good prospect for successful implementation. Committee Counsel and the Committee's Financial Advisor realized clearly that the ability of the Debtors and the Manager to raise sufficient additional money to finance a plan that had a realistic chance of achieving confirmation was highly speculative. The Committee instructed Committee Counsel and the Committee Financial Advisor to explore alternate sources of exit financing.

Securing financing necessary for a plan was not an easy task. The Debtors had not been able to raise any significant amount of DIP financing. Bankruptcy exit financing such as the Committee sought was not readily available on the commercial market. Committee Counsel

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

186989.1

therefore engaged in extensive outreach to various individuals and entities with which MLG had worked in other bankruptcies in an effort to identify a viable funding source.

Ultimately MLG was able to secure a commitment for a $12 million loan through ASK Financial which would become the financing upon which the Joint Plan is based. As a pre-requisite to its lending, and in order to support its due diligence efforts, ASK Financial required appraisals of key properties in the Funds' portfolio. In addition to the $12 million loan, ASK also agreed to make a loan of $200,000 in order to finance the preparation of these appraisals.

This category covers work by Committee Counsel to identify a lender, as well as to document the two ASK Financial loan commitments (one for $12 million and the smaller appraisal loan of $200,000). The category also includes fees associated with bringing a motion before the Court for approval of the $200,000 borrowing to fund the appraisals.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. Q.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 24.70 | $12,532.50 |
| Michael A. Sweet | MAS | 15.50 | 7,020.00 |
| Dale L. Bratton | DLB | 6.60 | 2,970.00 |
| Lindsey R. Moran | LRM | 16.50 | 5,362.50 |
| **TOTALS** | | **63.30** | **$27,885.00** |

3. **Disclosure Statement**

The task of preparing and obtaining approval of a disclosure statement in a case as complex as this was complicated. In order to comply with the appropriate fee application guidelines, Committee Counsel has divided its work on the disclosure statement into several sub-categories that reflect the work performed on different disclosure-related tasks.

(a) **Outline Essential Terms**

This category covers work by Committee Counsel to organize the general concepts of the Disclosure Statement and to outline its key components.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. R.

186989.1

Case: 08-32220     Doc# 661     Filed: 09/10/10     Entered: 09/10/10 15:58:57     Page 21 of 35

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 3.70 | $1,665.00 |
| Dale L. Bratton | DLB | 6.10 | 2,745.00 |
| Lindsey R. Moran | LRM | 2.00 | 650.00 |
| TOTALS | | **11.80** | **$5,060.00** |

**(b)   Drafting of Disclosure Statement**

This category covers work by Committee Counsel on the actual drafting of the disclosure statement as well as various key exhibits.

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. S.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 1.40 | $700.00 |
| Michael A. Sweet | MAS | 6.90 | 3,105.00 |
| Dale L. Bratton | DLB | 52.40 | 23,580.00 |
| TOTALS | | **60.70** | **$27,385.00** |

**(c)   Liquidating Trust Agreement**

This category covers work by Committee Counsel in drafting the Wind-Down Trust Agreement, which is an exhibit to the Disclosure Statement and a key document that will govern the Trust under the Plan post-confirmation.

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. T.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 3.40 | $1,707.50 |
| Dale L. Bratton | DLB | 11.10 | 4,995.00 |
| TOTALS | | **14.50** | **$6,702.50** |

**(d)   Disclosure Issues/Responding to Inquiries**

As the disclosure process moved forward a number of issues and inquiries arose both internally among the plan proponents and externally from interested parties.  This category

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

encompasses efforts by Committee Counsel to respond to these various inquiries as well as the process of incorporating supplements or modifications to the Disclosure Statement that would address such concerns.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. U.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 10.00 | $5,000.00 |
| Michael A. Sweet | MAS | 10.30 | 4,635.00 |
| Dale L. Bratton | DLB | 22.20 | 9,990.00 |
| Jackie Jacobus | JJ | .80 | 120.00 |
| **TOTALS** | | **43.30** | **$19,745.00** |

### (e)    Objections to Disclosure Statement

Objections to the Disclosure Statement were made by Canpartners, Robert Feinbaum, and the United States Trustee.  Work in this category relates to responding to these objections, including making changes to the Disclosure Statement to accommodate requests of the objectors when appropriate.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. V.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 7.50 | $3,375.00 |
| Dale L. Bratton | DLB | 15.30 | 6,885.00 |
| Lindsey R. Moran | LRM | 8.00 | 2,665.00 |
| Shane J. Moses | SJM | .80 | 260.00 |
| **TOTALS** | | **31.60** | **$13,185.00** |

### (f)    Disclosure Hearings and Related Matter

The Court held several hearings on the Disclosure Statement during the period of this Application.  This category includes work by Committee Counsel preparing for and attending those hearings as well as post-hearing follow-up activities.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. W.

186989.1

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 13:58:51    Page 23 of 35

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 12.40 | $5,580.000 |
| Dale L. Bratton | DLB | 9.80 | 4,410.00 |
| **TOTALS** | | **22.20** | **$9,990.00** |

### 4. Joint Plan of Reorganization

As with the Disclosure Statement, the task of preparing the Plan was also complicated. In order to comply with the appropriate fee application guidelines, Committee Counsel has divided its work on the Plan into several sub-categories that reflect the work performed on different plan-related tasks.

#### (a) Plan Outline and Essential Terms

This category covers work by Committee Counsel to organize the general concepts of the Plan and to outline its key components.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. X.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 8.30 | $4,247.50 |
| Michael A. Sweet | MAS | 7.10 | 3,195.00 |
| Dale L. Bratton | DLB | 34.70 | 15,615.00 |
| Douglas C. Graham | DCG | 2.50 | 937.50 |
| Lindsey R. Moran | LRM | 9.10 | 2,957.50 |
| Jackie Jacobus | JJ | .70 | 105.00 |
| **TOTALS** | | **62.40** | **$27,057.50** |

#### (b) Preparation of Plan and Revisions

This category covers work by Committee Counsel on the actual drafting of the Plan and exhibits.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. Y.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 3.60 | $1,620.00 |

SECOND INTERIM APPLICATION FOR COMPENSATION
FOR COUNSEL TO OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS

186989.1

| Professional | Initials | Hours Billed | Total Fees |
|---|---|---|---|
| Dale L. Bratton | DLB | 77.40 | 34,830.00 |
| Douglas C. Graham | DCG | .80 | 300.00 |
| Jackie Jacobus | JJ | 2.80 | 420.00 |
| **TOTALS** | | **84.60** | **$37,170.00** |

**(c)** **Procedural and Logistical Issues**

The Committee had the lead role in putting forward the Joint Plan. This also necessitated taking the lead on coordinating procedural and logistical issues for the Plan both among the co-proponents and interested third parties. This category covers work by Committee Counsel on things like allocating work among the other proponents, setting hearings on the Plan, and ensuring that all parties performed agreed tasks on the timeline as the case moved towards balloting and confirmation hearing.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. Z.

| Professional | Initials | Hours Billed | Total Fees |
|---|---|---|---|
| Scott H. McNutt | SHM | 2.50 | $1,267.50 |
| Michael A. Sweet | MAS | 7.60 | 3,478.50 |
| Dale L. Bratton | DLB | 11.90 | 5,355.00 |
| Lindsey R. Moran | LRM | 11.20 | 3,640.00 |
| Jackie Jacobus | JJ | 4.80 | 720.00 |
| **TOTALS** | | **38.00** | **$14,461.00** |

**(d)** **Inquiries and Negotiations**

In order to achieve plan confirmation, the needs of many disparate constituencies had to be addressed. In addition to efforts to address issues raised by plan objectors and equity investors, which are addressed under other categories, Committee Counsel also responded to other parties who had interests in the Plan. This category covers responses to inquiries by and negotiations with these parties, including among others the SEC, the Office of the United States Trustee, and Wells Fargo Foothill.

186989.1

Included in this category is substantial negotiation and documentation effort with Wells Fargo Foothill, for Plan treatment of WFF's secured claim that results in a major discount from the full amount of WFF's claim in return for earlier payment of the discounted amount.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. AA.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 1.60 | $820.00 |
| Michael A. Sweet | MAS | 3.10 | 1,426.50 |
| Dale L. Bratton | DLB | 52.30 | 23,535.00 |
| Lindsey R. Moran | LRM | 1.50 | 487.50 |
| **TOTALS** | | **58.50** | **$26,269.00** |

**(e)     Tax Issues**

As the Court is aware, the Committee retained special tax counsel because the Plan has tax implications for the equity investors, and disclosure materials on those implications are required as well. This category covers work by Committee Counsel to synthesize the input of special tax counsel into the Joint Plan.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. BB.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 2.70 | $1,350.00 |
| Michael A. Sweet | MAS | .10 | 45.00 |
| Dale L. Bratton | DLB | 4.60 | 2,070.00 |
| **TOTALS** | | **7.40** | **3,465.00** |

**(f)     Claims and Plan**

The Committee's goal was to provide a mechanism for a plan that would pay creditors in full. This would allow money after that is achieved to flow to the equity body. So a significant component of developing the Plan was to evaluate claims of various parties (both insiders and third-parties) to determine the appropriate treatment of these creditors.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. CC.

186989.1

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 2.30 | $1,035.00 |
| Dale L. Bratton | DLB | 27.80 | 12,510.00 |
| Lindsey R. Moran | LRM | 5.00 | 1,625.00 |
| **TOTALS** | | **35.10** | **$15,170.00** |

### (g) Objections to Plan Confirmation

Objections to confirmation were filed by Canpartners, several investors, investors who are plaintiffs in state court actions against the Funds and/or the Manager, and a real estate speculator with no apparent standing in the case. At the time of this drafting it appears that the Canpartners objection has been resolved via settlement; a hearing on approval of that settlement has been scheduled. The other confirmation objections were overruled by the Court. This category includes work by Committee Counsel to analyze objections to confirmation and to develop and implement strategies for responding to the objections.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. DD.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 4.80 | $2,520.00 |
| Michael A. Sweet | MAS | 1.00 | 495.00 |
| Dale L. Bratton | DLB | 11.70 | 5,265.00 |
| **TOTALS** | | **17.50** | **$8,280.00** |

### (h) Plan Voting and Balloting

Over 2,100 plans, disclosure statements, and ballots were mailed out in this case to creditors and equity investors. (Many investors had multiple accounts.) As the lead proponent of the Joint Plan, the Committee took the responsibility for the mailings as well as tallying all ballots voted.

Given the importance of the decision the investors were asked to make in balloting on the Plan, the Committee determined to hold an open information session for all interested investors and made preparations to make it a useful event. The informational meeting took place on July

SECOND INTERIM APPLICATION FOR COMPENSATION FOR COUNSEL TO OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

21, 2010, and lasted approximately three hours. Over 100 investors participated in person, with 30-50 more participants accessing the meeting live by telephone conferencing facility. Investors heard presentations from members of the Equity Committee as well as its advisors including MLG attorneys, the Committee Financial Advisor, special tax counsel, and a representative of the Manager. Dozens of questions were submitted by investors, both those attending in person and participating via telephone. In days prior to and following the meeting MLG attorneys and staff also fielded dozens of questions from investors about the plan process and balloting requirements.

This category includes work by Committee Counsel on all of these facets of outreach to investors as well as distributing, collecting, and tallying the ballots for the Joint Plan.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. EE.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 2.70 | $1,387.50 |
| Michael A. Sweet | MAS | 9.60 | 4,630.50 |
| Dale L. Bratton | DLB | 15.40 | 6,930.00 |
| Jackie Jacobus | JJ | 46.10 | $6,915.00 |
| TOTALS | | 73.80 | $19,863.00 |

**(i)      Confirmation Hearings and Related Matters**

The Court held an initial hearing on plan confirmation during the period of this Second Interim Fee Application. (Additional hearings on confirmation were held after the end date for this Application.) This category includes work by Committee Counsel preparing for and attending that hearing, as well as post-hearing follow-up activities.

The breakdown of fees incurred in this category is as follows. *See* Sweet Decl., Ex. FF.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 2.30 | $1,207.50 |
| Michael A. Sweet | MAS | 2.90 | 1,413.00 |
| Dale L. Bratton | DLB | 4.60 | 2,070.00 |
| TOTALS | | 9.80 | $4,690.00 |

186989.1

SECOND INTERIM APPLICATION FOR COMPENSATION FOR COUNSEL TO OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

## O.     Litigation and Contested Matters

There are a number of items of pending litigation that affect the interests of the equity-holders.  The most significant piece of litigation is the dispute between Fund I and Canpartners over the failed Hawaii investment.  During the period covered by this Application Committee Counsel engaged in analysis of the remaining claims in the litigation.  The purpose was to advise the Committee as to likely costs and benefits that would result from the post-confirmation Wind-Down Trust retaining rights to the litigation or otherwise playing an active role in the litigation post-confirmation.  Ultimately, based largely on this analysis, the Committee elected to seek negotiations for a global settlement between Canpartners and the Funds, with the purpose of resolving all issues through an appropriate compromise and bringing the litigation to an end.

The other litigation that was the focus of the Committee's efforts during the period of this fee application was the various state court actions brought by certain investors against the Manager, David Choo, and the Debtor Funds.  Because the state court actions named entities that were "insureds" under the same $5 million to $8 million in insurance policies that have been a focus of Committee recovery efforts, Committee Counsel has carefully monitored the actions.  Where appropriate, the Committee has acted to take steps that would preserve policy proceeds and prevent parties from running up significant legal bills that would drain the wasting policies.

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. GG.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | .40 | $200.00 |
| Michael A. Sweet | MAS | 23.30 | $10,512.00 |
| Dale L. Bratton | DLB | 7.80 | 3,510.00 |
| Douglas C. Graham | DCG | .40 | 158.00 |
| Lindsey R. Moran | LRM | 83.80 | 27,235.00 |
| Shane J. Moses | SJM | 6.80 | 2,210.00 |
| **TOTALS** | | **122.50** | **$43,825.00** |

186989.1

**P.  Claims Administration and Objections**

In preparation for Plan confirmation, Committee Counsel scrutinized the various claims by unsecured creditors of the three funds.  Committee Counsel concluded that, at a minimum, the largest unsecured claim - $5.8 million, filed by Canpartners, was objectionable.  The Committee needed to prevent this disputed claim from distorting voting on confirmation of the Plan, with potential adverse effect on achieving confirmation.  Accordingly, a claim objection needed to be filed prior to balloting, and – potentially – the claim would need to be estimated for voting purposes.  Committee Counsel prepared and filed an objection.  This was a substantial task given the complexity of the dispute between the parties and the size of the claim.

Soon after the claim objection was filed, Canpartners and the Committee were able to commence the serious settlement discussions that led to the resolution through compromise one of the most contentious and costly components of this case.  By eliminating this single claim, Committee Counsel also succeeded in eliminating the sole remaining objection to confirmation while simultaneously freeing up a significant amount of post-confirmation cash that might have otherwise had to be reserved for the Canpartners claim.

This category includes time related to analyzing and objecting to the Canpartners claim, as well as negotiations over resolution of that objection.

The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. HH.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Scott H. McNutt | SHM | 1.70 | $892.50 |
| Michael A. Sweet | MAS | 9.00 | 4,351.50 |
| Dale L. Bratton | DLB | 23.70 | 10,665.00 |
| Shane J. Moses | SJM | 36.20 | 11,765.00 |
| **TOTALS** | | **70.60** | **$27,674.00** |

**Q.  Committee Website**

With over 1,200 investors as the Committee constituency, MLG anticipated expending considerable time responding to investor inquiries, concerns, and requests for information.

SECOND INTERIM APPLICATION FOR COMPENSATION FOR COUNSEL TO OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

1  Accordingly, the Committee sought authorization from the court to establish procedures on how

2  the Committee should disseminate information as well as an order defining the extent of the

3  Committee's obligation to provide access to the Debtor's confidential and other non-public

4  proprietary information and to the Committee's privileged information.  Such protocols would

5  ensure that confidential, privileged, proprietary, and/or material non-public information will not be

6  disseminated to the detriment of the Debtors' estates and aid the Committee in performing its

7  statutory function under §section 1102(b)(3)(A) of Bankruptcy Code, as amended by the

8  Bankruptcy Abuse Prevention Consumer Protection Act of 2005.

9       Establishing a website is one such way the Committee achieves its dissemination of

10  information to its large constituency.  Committee Counsel constructed a website that made the

11  following information available: (i) general public information concerning the Funds' cases,

12  including documents filed in the cases and links to the Court's PACER system and case docket,

13  (ii) the Committee's occasional written reports summarizing recent public proceedings, public

14  events, and financial information, (iii) a calendar with upcoming significant events in the cases,

15  (iv) a general overview of the Chapter 11 process, (v) press releases (if any) issued by the

16  Committee or the Debtors, and (vi) answers to frequently asked questions.  Additionally,

17  Committee Counsel distributed case updates via electronic mail for investors that have registered

18  for this service on the Committee website.  Committee Counsel also established and maintained a

19  telephone number and electronic mail address for investors to submit questions and comments.

20       In Chapter 11 cases Committees often outsource the committee website to companies that

21  charge tens of thousands of dollars to setup and maintain the website.  By keeping the website in-

22  house at MLG, the Committee believes it is saving a significant amount of money.  This category

23  includes work by Committee Counsel to keep the Committee website updated.

24       The breakdown of fees incurred in this category is as follows.  *See* Sweet Decl., Ex. II.

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet | MAS | 1.10 | $495.00 |
| Dale L. Bratton | DLB | 2.60 | 1,170.00 |
| Lindsey R. Moran | LRM | 14.00 | $4,550.00 |

31

186989.1

| PROFESSIONAL | INITIALS | HOURS BILLED | TOTAL FEES |
|---|---|---|---|
| Jackie Jacobus | JJ | .60 | 90.00 |
| **TOTALS** | | **18.30** | **$6,305.00** |

## VII. SUMMARY OF EXPENSES

MLG does not charge for incidental in-house copying, faxes, de minimus postage, or long-distance phone charges (other than third-party vendor hosted conference calls). MLG does charge for attorney travel expenses, and costs incurred with third party vendors, at actual cost. Committee Members incurred some travel expenses when attending Committee meetings in person.

The total expenses incurred by MLG in this case for the period covered by this Application are as follows. *See* Sweet Decl., Ex. JJ.

| | CATEGORY | EXPENSES BILLED |
|---|---|---|
| A. | Copying | $5,346.06 |
| B. | Outside Printing | 29,678.88 |
| C. | Conference Calls | 2,353.56 |
| D. | Online Research | 2,114.60 |
| E. | Delivery/Messengers | 339.45 |
| F. | Postage | 12,084.81 |
| G. | Local Travel | 200.95 |
| H. | Meals | 53.37 |
| I. | Litigation Support Vendors | 750.00 |
| J. | Committee Expenses | 465.75 |
| | **TOTAL EXPENSES BILLED:** | **$53,387.43** |

## VIII. INTEROFFICE CONFERENCES

Some of the attorneys' fees expended by Applicant in its representation of the Committee in this case include conferences between and among the attorneys of MLG. Applicant believes such meetings are necessary to the efficient and economical administration of the case to (i) ensure that all professionals involved in the case understand and appreciate the overall case strategy and

186989.1

1  the ultimate goals of the case; (ii) effectively delegate those matters which can be most

2  economically handled by junior professionals with a lower hourly billing rate while providing the

3  necessary guidance and support to such junior professionals regarding their assignments; and

4  (iii) ensure that the efforts of all professionals working on the case complement each other without

5  waste or duplication.  Applicant does not believe that there has been an extraordinary or

6  unwarranted use of interoffice conferences in this case.  Sweet Decl., ¶ 6.

### IX.  MULTIPLE PROFESSIONALS

8  At various times in the course of its representation of the Committee in this case, more

9  than one professional from MLG may have participated in a significant meeting.  Such

10 participation was based on the mix of issues involved, and particular professionals' knowldege and

11 expertise on the relevant aspects of this representation.  Applicant believes that its use of multiple

12 professionals in these instances was reasonable and was beneficial to the efficient representation

13 of the Committee.  Sweet Decl., ¶ 7.

### X.  RESPONSIBLE PERSONNEL

15 The services subject to this Application were performed by attorneys Scott H. McNutt,

16 Michael A. Sweet, Dale L. Bratton, Douglas C. Graham, Lindsey R. Moran, Shane J. Moses, and

17 Marianne M. Dickson, and paralegal Jackie Jacobus.  A description of these individuals'

18 experience and qualifications is set forth as an exhibit to the accompanying declaration of Michael

19 A. Sweet.  *See* Sweet Decl., Ex. MM.

### XI.  ESTABLISHMENT OF FEES

21 "A compensation award based on a reasonable hourly rate multiplied by the number of

22 hours actually and reasonably expended is presumptively a reasonable fee."  In re Manoa Finance

23 Company, 853 F.2d 687 (9th Cir. 1988).  Establishing a reasonable hourly rate requires

24 consideration of market rates in the relevant community which are, in turn, at least partly a

25 function of the type of services rendered and the lawyer's experience, skill, and reputation.  MLG

26 has more than 20 years of successful experience representing creditors, trustees, debtors, creditors'

27 committee's, equity committees, and other parties in interest in bankruptcy proceedings.  *See*

28 Sweet Decl., ¶ 8.  For this level of skill and experience in Chapter 11 work, the hourly rates

186989.1
Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 15:58:51    Page 81 of
35

charged by MLG are within the market range for attorneys in the San Francisco area legal market. Id.

## XII.   CONCLUSION

WHEREFORE, Applicant requests that the Court approve an interim award of attorneys' fees in the amount of $572,688.50 and reimbursement of expenses in the amount of $23,708.55 on account of MLG's services rendered to the Committee for the period February 1, 2010, through July 31, 2010.

AND WHEREFORE, Applicant further requests that the Court allow the release of the $57,257.39 (20%) holdback that was to be retained following Committee Counsel's First Interim Fee Application.


Dated: September 10, 2010          MCNUTT LAW GROUP LLP


By:  _/s/ Michael A. Sweet_
                    Michael A. Sweet
Attorneys for Official Committee of Equity Security Holders

SECOND INTERIM APPLICATION FOR COMPENSATION FOR COUNSEL TO OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 15:58:51    Page 34 of 35
186989.1

# **CERTIFICATION**

I, Michael A. Sweet, do hereby certify as follows:

I am a partner with McNutt Law Group LLP, counsel of record to the Official Committee of Equity Security Holders of CMR Mortgage Fund, LLC, CMR Mortgage Fund II, LLC, and CMR Mortgage Fund III, LLC. I am the attorney primarily responsible for this case.

I hereby certify (a) that I have read the Second Interim Fee Application of the McNutt Law Group; (b) to the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with this Court's Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees, except as specifically noted in the certification application; and (c) the compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by the applicant and generally accepted by the applicant's clients.


Dated: September 10, 2010                  _____*/s/ Michael A. Sweet*_____
                                                              Michael A. Sweet, Esq.

Case: 08-32220    Doc# 661    Filed: 09/10/10    Entered: 09/10/10 15:58:51    Page 35 of 35

186989.1

SECOND INTERIM APPLICATION FOR COMPENSATION FOR COUNSEL TO OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS