John D. Fiero, CA Bar No. 136557
Miriam P. Khatiblou, CA Bar No. 178584
Teddy M. Kapur, CA Bar No. 242486
PACHULSKI, STANG, ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
jfiero@pszjlaw.com, tkapur@pszjlaw.com,
mkhatiblou@pszjlaw.com

Attorneys for Heller Ehrman LLP,
Debtor and Debtor in Possession

Ronald Lovitt, CA Bar No. 040921
J. Thomas Hannan, CA Bar No. 039140
Henry I. Bornstein, CA Bar No. 75885
Terence F. Young, CA Bar No. 069943
Robert W. Williams, CA Bar No. 35528
LOVITT & HANNAN, INC.
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 362-8769
Facsimile: (415) 362-7528
rl@lh-sf.com, jth@lh-sf.com, hib@lh-sf.com
tfy@lh-sf.com, williams@lh-sf.com

Special Litigation Counsel to the Debtor

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>Heller Ehrman LLP,<br><br>          Debtor. | ) Case No. 08-32514<br>)<br>) Chapter 11<br>)<br>) Date: TBD<br>) Time: TBD<br>) Place: Courtroom 22, 235 Pine Street,<br>)         San Francisco, CA<br>) Judge: Honorable Dennis Montali |

**EX PARTE APPLICATION PURSUANT TO BANKRUPTCY RULE 2004
FOR ORDER AUTHORIZING EXAMINATION OF
WITNESSES AND PRODUCTION OF DOCUMENTS**

The Debtor (the "Applicant") of the law firm of Heller Ehrman LLP (referred to herein as "Debtor" or "Heller") hereby submits this Ex Parte Application Pursuant to Bankruptcy Rule 2004 for Order Authorizing Examination of Witnesses and Production of Documents ("Application")[1] to secure an Order directing the law firm of Covington & Burling LLP ("Covington") to produce the documents described in Exhibit "A", attached hereto. In addition, the Debtor seeks permission to take the oral deposition of the custodian of records of Covington.

## I. RELIEF REQUESTED

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), the Debtor seeks the entry of an Order for Examination of Witnesses and Production of Documents so that it may investigate and evaluate the validity of any claims held by the Debtor against Covington. Specifically, the Debtor seeks Rule 2004 discovery from Covington concerning the employment of Heller attorneys who became employees or partners at Covington and the transfer of Heller clients and client matters to Covington.

As a first phase, the Debtor requests that Covington produce the documents identified in the attached Exhibit A. The Debtor requests that such production be made on March 2, 2010 at 9:30 a.m.

As a second phase, the Debtor requests that the custodian of documents of Covington appear for examination by oral deposition with respect to the subject matter of the writings described in Exhibit A.

## II. FACTUAL BACKGROUND

The Heller Intellectual Property Practice Group ("IP Group") was a major contributor to the revenue and, accordingly, the viability, of Heller, contributing nearly $40 million in annualized revenue. There were approximately forty-five attorneys, including shareholders and associates, in the IP Group at the beginning of August 2008. The leading shareholders in the IP Group

---

[1] A motion for a Rule 2004 examination may be considered by the Court on an *ex parte* basis. *In re Hickman*, 151 B.R. 125 (Bankr. N.D. Ohio 1993). BKR L.R. 2004-1(a).

announced that they were leaving Heller for Covington at the end of August, 2008. By October 10th, all but a few of the forty-five attorneys in the IP Group had left and joined Covington.

As of the beginning of August, 2008, Heller management was negotiating a potential merger with one merger partner (Mayer Brown LLP) and, at the same time, considering other possible merger partners. The loss of the lawyers that comprised the IP Group made the Debtor a much less attractive merger candidate. It also resulted in Heller breaching one of the covenants of its Credit Line agreement with the Bank of America. Their departure to Covington was an element of the failure, dissolution, and bankruptcy of the firm. The Debtor's investigation has disclosed strong indications that the leaders of the IP Group began negotiations with Covington long before their announced departure at the end of August. These negotiations involved former shareholders Robert Haslam, Robert Fram, Alan Blankenheimer, Sturgis Sobin, and others. During the course of the negotiations, the leaders of the IP Group were told that the departure of the heart of their group would almost surely lead to the failure of a proposed merger with Mayer Brown. Thereafter, on or about Sunday, August 10, 2008, Messrs. Fram and Blankenheimer withdrew from a telephone conference involving the key members of the Heller Policy Committee when the subject of return of capital contributions to departing shareholders arose. On or about August 10th, Messrs. Fram and Blankenheimer announced their intention to resign from the Policy Committee. They had been fully engaged in the firm's management up to that time and were aware of the merger negotiations.

The facts developed through the Debtor's investigation to date lead to an inference strong enough to support an allegation that Covington, in combination with leaders of the IP Group, knowingly interfered with the prospective economic advantage of Heller Ehrman LLP regarding the proposed merger with Mayer Brown and possible mergers with others. Furthermore, the leaders of the IP Group now at Covington may have breached their respective fiduciary duties to Heller.

### III. THE DEBTOR IS ENTITLED TO THE REQUESTED RELIEF

Rule 2004 permits "[t]he examination of an entity… relat[ing] only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate," and further provides that "[t]he attendance of an entity for

examination and the production of documentary evidence may be compelled [by subpoena pursuant to Bankruptcy Rule 9016]." Fed. R. Bankr. P. 2004(b)-(c). The scope of a Rule 2004 examination is "unfettered and broad," and has been termed "a quick 'fishing expedition." *In re Dinubilo*, 177 B.R. 932, 939-40 (E.D. Cal. 1993); see also *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984).

A Rule 2004 examination may properly extend to creditors and third parties "who have had dealings with the debtor." *In re Financial Corporation of America*, 119 B.R. 728, 733 (Bankr. C. D. Cal. 1990); *see also In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989); *In re GHR Companies, Inc.*, 41 B.R. 655, 660 (Bankr. D. Mass. 1984) ("The clear intent of Rule 2004. . . is to give parties in interest an opportunity to examine individuals having knowledge of the financial affairs of the debtor in order to preserve the rights of creditors."); *Johns-Manville*, 42 B.R. at 364 (Rule 2004 examination may "cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him.") (citation omitted).

In particular, it is well established that Rule 2004 examinations of third parties may be used as a pre-litigation devise to investigate the merits of possible claims. See *In re Bakalis,* 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (Rule 2004 "examinations may be used to prepare for initiation of litigation"); *In re Kitchen Fare Food Service, Inc.,* 70 B.R. 501, 504 (Bankr. E.D. Mich. 1987) (Rule 2004 "is a powerful tool, allowing an attorney investigating a claim to perform almost all of the necessary discovery before filing an action."); *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (granting trustee's request to conduct Rule 2004 examinations of two third parties where trustee was investigating potential antitrust claims against the proposed examinees and other third party.)

Rule 2004 further permits "wide latitude of examination of 'persons closely connected to the [debtor] in business dealings… for the purpose of uncovering assets and unearthing frauds." *In re Arkin-Medo, Inc.*, 44 B.R. 138, 140 (Bankr. S.D.N.Y. 1984). The standard for determining the propriety of a discovery request under Rule 2004 is "good cause." *See, e.g., In re Grabill Corp.,* 109 B.R. 329, 334 (Bankr. N.D. Ill. 1989). "Under that standard, the movant must show 'some

reasonable basis to examine the material… [and] that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." *Id*.

The Debtor has "good cause" for the requested Rule 2004 discovery. The proposed discovery falls squarely within the scope of Rule 2004 because it relates to issues that may affect the Debtor's property and the administration of the Debtor's estate, namely, the extent to which the Debtor have claims against Covington. Given the involvement of Covington with Heller managers just prior to Heller's dissolution, the present discovery requests are an expeditious and sensible way to investigate Covington's liabilities to the Debtor.

## IV. CONCLUSION

On March 4, 2009, this Court entered its Order Granting Debtor's Application to Employ Lovitt & Hannan, Inc. as Special Counsel ("Order"). Pursuant to the Order, Lovitt & Hannan, Inc. was employed to investigate, and where necessary, prosecute litigation claims sounding in contract and tort belonging to the Debtor. As amended on July 17, 2009, the Order authorizes investigation and evaluation of claims against third parties arising out of the facts and circumstances related to the Debtor's dissolution (the Potential Claims). The Examination sought herein is central to the Debtor's investigation and evaluation of the Potential Claims. Accordingly, the Debtor's Application should be granted.

No previous application has been made for an Order of Examination of the custodian of records of Covington or for the deposition of individuals with knowledge of the facts of said claims or Potential Claims.

WHEREFORE, Applicant prays that this Court immediately take and enter its Order of Examination as follows:

Directing Covington & Burling LLP to produce documents responsive to the descriptions set forth in Exhibit A on March 2, 2010 at 9:30 a.m. or as soon thereafter as the Court may direct, at the law offices of Lovitt & Hannan, Inc., located at 900 Front Street, Suite 300, San Francisco,

California 94111 and to allow Applicant, its agents and attorneys, the opportunity to inspect and copy any of the documents provided; and

Directing the custodian of records of Covington & Burling LLP to appear at the Offices of Lovitt & Hannan, Inc. on March 16, 2010, at 9:30 a.m., or at such later time is agreed to by counsel, to testify concerning the documents described on Exhibit "A" attached hereto, which examination may be continued from day to day, Saturdays, Sundays and holidays excepted, until completed.

Dated: February 2, 2010　　　　　　　　LOVITT & HANNAN, INC.

By: */s/ J. Thomas Hannan*
　　　Henry I. Bornstein
　　　Ronald Lovitt
　　　J. Thomas Hannan
　　　Terence F. Young
　　　Robert W. Williams
　　　***Special Litigation Counsel to the Debtor***

# Exhibit A

# EXHIBIT A

# INSTRUCTIONS

The following instructions apply to all requests for production of writings contained herein:

1. In producing these writings, you are required to furnish all writings in your possession, custody or control regardless of whether these writings are possessed directly by you or your partners, professional corporations, members, shareholders, agents, employees, representatives, investigators, or by your attorneys or their agents, employees, representatives or investigators.

2. If any of these writings cannot be produced in full, produce them to the extent possible, specifying the reasons for your inability to produce the remainder and stating whatever information, knowledge or belief you have concerning the portion that is not produced.

3. With respect to any writing responsive to these requests that you contend you are not required to produce because of a claimed privilege or based on the attorney work product exception to discovery, describe each such writing as follows:

    a. Identify each such writing by date, author, addressee(s), and recipient(s);

    b. Identify each person to whom a copy was provided;

    c. Identify the general subject matter of each such writing;

    d. Identify the privilege claimed for each such writing and the basis for the claim of privilege in sufficient detail to permit the hearing officer to adjudicate the validity of the claim.

4. Writings produced and labeled in response to this Request shall be organized and labeled as they are kept or maintained, including any file folder and the labels on such folders.

5. All writings responsive to these requests that constitute electronically stored information should be produced in its native file format or in a mutually agreed upon usable form.

6. Unless otherwise indicated, the relevant time period for each writing request set forth below includes WRITINGS and FILES dating from January 1, 2007 to present.

Case 08-32514     1     EXHIBIT A
COVINGTON & BURLING LLP 2004 EXAMINATION
Case: 08-32514   Doc# 901   Filed: 02/04/10   Entered: 02/04/10 11:51:20   Page 8 of 11

# DEFINITIONS

A. "YOU," "YOUR," and "COVINGTON" means COVINGTON & BURLING, LLP and all of its agents, partners, members, employees, officers, professional corporations (PCs), shareholders, representatives or others acting or authorized to act on its behalf.

B. "HELLER" means Heller Ehrman, LLP, a California limited liability partnership, the debtor in this matter, and all of its agents, partners, professional corporations ("PCs"), shareholders, members, employees, officers, representatives or others acting or authorized to act on its behalf.

C. "SHAREHOLDERS" means the attorneys who were shareholders in any of the HELLER PCs.

D. "WRITING" or "WRITINGS" means letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation. Federal Rule of Evidence 1001(a)

E. The terms "RELATE TO" and "RELATING TO" mean constituting, mentioning, identifying, in connection with, referring to, reflecting, regarding, comprising, consisting of, concerning, discussing, analyzing, summarizing, evidencing, embodying, supporting or describing, in whole or in part.

F. Whenever the word "ALL" appears, it means "ANY and ALL."

G. Whenever the word "ANY" appears, it means "ANY and ALL."

H. Whenever the word "AND" appears, it includes "OR" and means "AND/OR."

I. Whenever the word "OR" appears, it includes "AND" and means "AND/OR."

J. "THE PRESENT" means the date of your response to this request.

K. The term "HELLER CLIENTS" refers to individuals, companies, corporations, partnerships and any other entities with which HELLER had an attorney-client relationship, including without limitation, Ronald A. Katz Technology Licensing LP; and A2D Licensing Technology LP ("Katz"), during the RELEVANT PERIOD.

L. The term "COMMUNICATIONS" means any oral or written statement, expression, dialogue, discussion, conversation, or agreement of any kind.

M. The term "BUSINESS COMBINATION" means a merger, acquisition, joint venture, partnership, corporation, asset purchase, stock purchase, or the employment of any HELLER lawyer as an employee, agent, or independent contractor, or any other business relationship. "RELEVANT PERIOD" means the period from January 1, 2007 to the PRESENT.

N. DOCUMENTS sought by this request are those dated or created during the RELEVANT PERIOD.

## **WRITINGS REQUESTED**

1. ALL WRITINGS RELATING TO COMMUNICATIONS between YOU and any HELLER lawyer on the subject of any form of BUSINESS COMBINATION between HELLER and any other entity

2. ALL COMMUNICATIONS between YOU and SHAREHOLDERS RELATING TO HELLER CLIENTS becoming clients of COVINGTON.

3. ALL COMMUNICATIONS between YOU and employees of HELLER RELATING TO HELLER CLIENTS becoming clients of COVINGTON.

4. ALL COMMUNICATIONS RELATING TO HELLER CLIENTS becoming clients of any law firm other than YOU or HELLER.

5. ALL WRITINGS RELATING TO fee agreements between YOU and former HELLER CLIENTS.

6. ALL WRITINGS RELATING TO the establishment of an attorney client relationship with former HELLER CLIENTS.

7. ALL WRITINGS RELATING TO YOUR document preservation, retention OR destruction policies, program AND practices.

8. ALL WRITINGS RELATING TO meetings of COVINGTON'S management committees, including minutes of those meetings, concerning HELLER OR HELLER CLIENTS.

9.	ALL WRITINGS RELATING TO meetings of COVINGTON'S Compensation Committee, including minutes of such meetings, concerning HELLER OR HELLER CLIENTS

10.	ALL COMMUNICATIONS between YOU and HELLER RELATING TO the financial condition of HELLER.

11.	ALL insurance policies OR other agreements under which YOU may claim coverage to satisfy ALL OR part of ANY possible liability for the claims of interference with contract, interference with prospective economic advantage, AND unfair business practices.

12.	ALL WRITINGS RELATING TO HELLER billings to HELLER CLIENTS.

13.	ALL WRITINGS RELATING TO HELLER revenues.

14.	ALL WRITINGS RELATING TO ANY studies OR analyses undertaken OR directed by YOU concerning the operations, profitability, OR projected profitability, of HELLER, OR HELLER CLIENTS.

15.	ALL WRITINGS RELATING TO YOUR internal COMMUNICATIONS concerning HELLER.

16.	ALL WRITINGS RELATING TO billings for fees and costs by YOU to HELLER CLIENTS.

17.	ALL WRITIING RELATING TO contingent fees, performance bonuses, OR partially contingent fees AND HELLER CLIENTS.

18.	ALL WRITINGS RELATING TO revenue received by YOU from work performed for HELLER CLIENTS.