John D. Fiero, CA Bar No. 136557
Miriam P. Khatiblou, CA Bar No. 178584
Teddy M. Kapur, CA Bar No. 242486
PACHULSKI, STANG, ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
jfiero@pszjlaw.com, tkapur@pszjlaw.com,
mkhatiblou@pszjlaw.com

Attorneys for Heller Ehrman LLP,
Debtor and Debtor in Possession

Ronald Lovitt, Bar No. 040921
J. Thomas Hannan, Bar No. 039140
Henry I. Bornstein, Bar No. 75885
Terence F. Young, Bar No. 069943
Robert W. Williams, Bar No. 35528
LOVITT & HANNAN, INC.
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 362-8769
Facsimile: (415) 362-7528
rl@lh-sf.com, jth@lh-sf.com, hib@lh-sf.com
tfy@lh-sf.com, williams@lh-sf.com

Special Litigation Counsel to the Debtor

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | ) Case No. 08-32514 |
| Heller Ehrman LLP, | ) Chapter 11 |
| Debtor. | ) Date: TBD |
| | ) Time: TBD |
| | ) Place: Courtroom 22, 235 Pine Street, San Francisco, CA |
| | ) Judge: Honorable Dennis Montali |

**EX PARTE APPLICATION PURSUANT TO BANKRUPTCY RULE 2004
FOR ORDER AUTHORIZING EXAMINATION OF
WITNESSES AND PRODUCTION OF DOCUMENTS**

The Debtor (the "Applicant") of the law firm of Heller Ehrman LLP (referred to herein as "Debtor" or "Heller") hereby submits this Ex Parte Application Pursuant to Bankruptcy Rule 2004 for Order Authorizing Examination of Witnesses and Production of Documents ("Application")[1] to secure an Order directing the accounting firm of Ernst & Young ("E&Y") to produce the documents from its audit of the financial statements of the Debtor for the fiscal years 2007 and 2008 as described in Exhibit "A" attached hereto. In addition, the Debtor seeks permission to take the oral deposition of the custodian of records of E&Y.

## I. RELIEF REQUESTED

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), the Debtor seeks the entry of an Order for Examination of Witnesses and Production of Documents so that it may investigate and evaluate the validity of any claims held by the Debtor against E&Y. Specifically, the Debtor seeks Rule 2004 discovery from E&Y concerning its audit of the financial statements of the Debtor for the fiscal years 2007 and 2008.

As a first phase, the Debtor requests that E&Y produce the documents identified in the attached Exhibit A. The Debtor requests that such production be made on March 9, 2010.

As a second phase, the Debtor requests that the custodian of documents of E&Y appear for examination by oral deposition with respect to the subject matter of the writings described in Exhibit A.

## II. FACTUAL BACKGROUND

The Debtor believes that the Debtor was damaged by the professional negligence of its auditor, E&Y, in connection with the audit of the Debtor's 2007 financial statement. E&Y was engaged to perform a "non GAAP" audit of this statement for the benefit of the Debtor. Generally Accepted Accounting Principles ("GAAP") require that a company's financial statements be

---

[1] A motion for a Rule 2004 examination may be considered by the Court on an *ex parte* basis. *In re Hickman*, 151 B.R. 125 (Bankr. N.D. Ohio 1993). BKR L.R. 2004-1(a).

audited in accordance with Generally Accepted Auditing Standards ("GAAS"). While non-GAAP audits require less formal and detailed work, they still require performance of the audit in such a way that the client receives a reliable report and opinion on its financial statements, and reasonable assurance about whether the financial statements are free of material misstatements.

The opinion letter that the Debtor ultimately received included the following statements:

> We have conducted our audits in accordance with auditing standards generally accepted in the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.
> . . .
> In our opinion the financial statements referred to above present fairly, in all material respects, the assets, liabilities, and partners' equity arising from cash transactions of Heller Ehrman LLP at December 31, 2007 and 2006, and its revenue collected, its expenses paid, and its cash flow for the years then ended on [a modified cash basis of accounting].

The investigation by the Debtor to date has lead it to conclude that the audit report is inaccurate in at least one critical respect and that the opinion letter likely should have been qualified. First, the financial statements contain a novel entry in the "Statements of Cash Flows" not present in previous financial statements. That entry under "Investing activities" in the amount of $11,074,300 is entitled "Loans to partners." Since the Heller Ehrman PCs that comprise the partners of the LLP do not have substantial assets, and in fact paid out the "loan" amount to the former Shareholders along with the year-end profits, the Debtor has concluded that this loan transaction was a thinly disguised improper device used to overpay the former Shareholders. The motivation for this overpayment appears to have been to raise profits to a sufficiently high industry standard (known as Profit Per Equity Partner ("PPEP")) to keep the Debtor in the top 10 of large firms for PPEP, and create the false impression that the Debtor's business was more successful and profitable than it was.

E&Y did not totally ignore this devious device in the conduct of its audit. It waffled on the treatment and on confirmation of the transactions and, it appears, knowingly covered up for the managers of the Debtor in the audit process and the audit report. The Debtor was damaged by this conduct through both the payments to Former Shareholders in excess of its distributable net profits,

and through permitting the Debtor to incur greater losses before its ultimate demise.

The Debtor is further investigating whether issuance of an unqualified audit opinion was proper given not only the overpayments to shareholders, but also the relationship of bank borrowings to the past history of the Debtor. This would include an analysis of whether and in what way the audit opinion letter should have been qualified. By way of example, the Debtor believes a proper analysis made in accordance with SAS 59 and AU 341 as to whether the Debtor was a going concern should have resulted in a qualification in the auditor's opinion letter.

A review of E&Y's writings related to its audits of the 2007 and 2008 financial statements is necessary in order to determine the extent of its knowledge and liability for the aforementioned improper entries.

### III. THE DEBTOR IS ENTITLED TO THE REQUESTED RELIEF

Rule 2004 permits "[t]he examination of an entity… relat[ing] only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate," and further provides that "[t]he attendance of an entity for examination and the production of documentary evidence may be compelled [by subpoena pursuant to Bankruptcy Rule 9016]." Fed. R. Bankr. P. 2004(b)-(c). The scope of a Rule 2004 examination is "unfettered and broad," and has been termed "a quick 'fishing expedition." *In re Dinubilo*, 177 B.R. 932, 939-40 (E.D. Cal. 1993); see also *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984).

A Rule 2004 examination may properly extend to creditors and third parties "who have had dealings with the debtor." *In re Financial Corporation of America*, 119 B.R. 728, 733 (Bankr. C. D. Cal. 1990); *see also In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989); *In re GHR Companies, Inc.,* 41 B.R. 655, 660 (Bankr. D. Mass. 1984) ("The clear intent of Rule 2004. . . is to give parties in interest an opportunity to examine individuals having knowledge of the financial affairs of the debtor in order to preserve the rights of creditors."); *Johns-Manville*, 42 B.R. at 364 (Rule 2004 examination may "cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him.") (citation omitted).

CASE 08-32514     4     EX PARTE APPLICATION
2004 EXAMINATION OF ERNST & YOUNG
Case: 08-32514    Doc# 902    Filed: 02/04/10    Entered: 02/04/10 11:55:27    Page 4 of 18

In particular, it is well established that Rule 2004 examinations of third parties may be used as a pre-litigation devise to investigate the merits of possible claims. See *In re Bakalis,* 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (Rule 2004 "examinations may be used to prepare for initiation of litigation"); *In re Kitchen Fare Food Service, Inc.,* 70 B.R. 501, 504 (Bankr. E.D. Mich. 1987) (Rule 2004 "is a powerful tool, allowing an attorney investigating a claim to perform almost all of the necessary discovery before filing an action."); *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (granting trustee's request to conduct Rule 2004 examinations of two third parties where trustee was investigating potential antitrust claims against the proposed examinees and other third party.)

Rule 2004 further permits "wide latitude of examination of 'persons closely connected to the [debtor] in business dealings… for the purpose of uncovering assets and unearthing frauds." *In re Arkin-Medo, Inc*., 44 B.R. 138, 140 (Bankr. S.D.N.Y. 1984). The standard for determining the propriety of a discovery request under Rule 2004 is "good cause." *See, e.g., In re Grabill Corp.,* 109 B.R. 329, 334 (Bankr. N.D. Ill. 1989). "Under that standard, the movant must show 'some reasonable basis to examine the material… [and] that the requested documents are necessary to establish the movant's claim or that denial of production would cause undue hardship or injustice." *Id*.

The Debtor has "good cause" for the requested Rule 2004 discovery. The proposed discovery falls squarely within the scope of Rule 2004 because it relates to issues that may affect the Debtor's property and the administration of the Debtor's estate, namely, the extent to which the Debtor and the Debtor have claims against E&Y. Given the involvement of E&Y with Heller managers just prior to Heller's dissolution, the present discovery requests are an expeditious and sensible way to investigate E&Y's liabilities to the Debtor.

## IV. CONCLUSION

On March 4, 2009, this Court entered its Order Granting Debtor's Application to Employ Lovitt & Hannan, Inc. as Special Counsel ("Order"). Pursuant to the Order, Lovitt & Hannan, Inc. was employed to investigate, and where necessary, prosecute litigation claims sounding in contract

and tort belonging to the Debtor.  As amended on July 17, 2009, the Order authorizes investigation and evaluation of claims against third parties arising out of the facts and circumstances related to the Debtor's dissolution (the Potential Claims).   The Examination sought herein is central to the Debtor's investigation and evaluation of the Potential Claims.  Accordingly, the Debtor's Application should be granted.

No previous application has been made for an Order of Examination of the custodian of records of E&Y or for the deposition of individuals with knowledge of the facts of said claims or Potential Claims.

WHEREFORE, Applicant prays that this Court immediately take and enter its Order of Examination as follows:

Directing E&Y to produce documents responsive to the descriptions set forth in Exhibit A on March 9, 2010 at 9:30 a.m. or as soon thereafter as the Court may direct, at the law offices of Lovitt & Hannan, Inc., located at 900 Front Street, Suite 300, San Francisco, California 94111 and to allow Applicant, its agents and attorneys, the opportunity to inspect and copy any of the documents provided; and

Directing the custodian of records of E&Y to appear at the offices of Lovitt & Hannan, Inc. on March 23, 2010, at 9:30 a.m., or at such later time is agreed to by counsel, to testify concerning the documents described on Exhibit "A" attached hereto, which examination may be continued from day to day, Saturdays, Sundays and holidays excepted, until completed.

Dated:   February 2, 2010            LOVITT & HANNAN, INC.


                                     By:   /s/ J. Thomas Hannan
                                           Henry I. Bornstein
                                           Ronald Lovitt
                                           J. Thomas Hannan
                                           Terence F. Young
                                           Robert W. Williams
                                           ***Special Litigation Counsel to the Debtor***

# Exhibit A

# EXHIBIT A

## INSTRUCTIONS

The following instructions apply to all requests for production of writings and things contained herein:

1. In producing these writings, you are required to furnish all writings in your possession, custody or control regardless of whether these writings are possessed directly by you or your partners, professional corporations, members, shareholders, agents, employees, representatives, investigators, or by your attorneys or their agents, employees, representatives or investigators.

2. If ANY of these writings cannot be produced in full, produce them to the extent possible, specifying the reasons for your inability to produce the remainder and stating whatever information, knowledge or belief you have concerning the portion that is not produced.

3. With respect to ANY writing responsive to these requests that you contend you are not required to produce because of a claimed privilege or based on the attorney work product exception to discovery, describe each such writing as follows:

   a. Identify each such writing by date, author, addressee(s), and recipient(s);

   b. Identify each person to whom a copy was provided;

   c. Identify the general subject matter of each such writing;

   d. Identify the privilege claimed for each such writing and the basis for the claim of privilege in sufficient detail to permit the hearing officer to adjudicate the validity of the claim.

4. Documents produced and labeled in response to this Request shall be organized and labeled as they are kept or maintained, including ANY file folder and the labels on such folders.

5. All writings responsive to these requests that constitute electronically stored information should be produced in its native file format or in a mutually agreed upon usable form.

Case 08-32514     1     EXHIBIT A
ERNST & YOUNG 2004 EXAMINATION
Case: 08-32514   Doc# 902   Filed: 02/04/10   Entered: 02/04/10 11:55:27   Page 8 of 18

6. Unless otherwise indicated, the relevant time period for each writing request set forth below includes DOCUMENTS and FILES dating from January 1, 2007 to present.

7. DOCUMENTS sought by this request are those dated or created during the RELEVANT PERIOD.

## DEFINITIONS

A. "YOU," "YOUR," and "E&Y" means Ernst & Young LLP and all of its agents, partners, members, employees, officers, professional corporations (PCs), shareholders, representatives or others acting or authorized to act on its behalf.

B. "HELLER" means Heller Ehrman, LLP, a California limited liability partnership, the debtor in this matter, and all of its agents, partners, professional corporations ("PCs"), shareholders, members, employees, officers, representatives or others acting or authorized to act on its behalf.

C. "SHAREHOLDERS" means the attorneys who were shareholders in ANY of the HELLER PCs.

D. "WRITING" or "WRITINGS" means letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation. Federal Rule of Evidence 1001(a)

E. The terms "RELATE TO" and "RELATING TO" mean constituting, mentioning, identifying, in connection with, referring to, reflecting, regarding, comprising, consisting of, concerning, discussing, analyzing, summarizing, evidencing, embodying, supporting or describing, in whole or in part.

F. Whenever the word "ALL" appears, it means "ANY and ALL."

G. Whenever the word "ANY" appears, it means "ANY and ALL."

H. Whenever the word "AND" appears, it includes "OR" and means "AND/OR."

I. Whenever the word "OR" appears, it includes "AND" and means "AND/OR."

J. "THE PRESENT" means the date of your response to this request.

K.  The term "COMMUNICATIONS" means ANY oral or written statement, expression, dialogue, discussion, conversation, or agreement of ANY kind.

L.  "RELEVANT PERIOD" means the period from January 1, 2007 to the PRESENT.

M.  The term "PLAN OF DISSOLUTION" refers to the plan adopted by HELLER on or about September 26, 2008 in which HELLER determined, among other things, to dissolve and liquidate its assets.

N.  The phrase "INTERNAL CONTROLS" means all processes, policies and procedures RELATING TO HELLER'S financial reporting, including its reliability, the effectiveness and efficiency of HELLER'S operations, and compliance with applicable laws and regulations, including, without limitation, all such processes, policies and procedures RELATING TO HELLER'S accounting, financial reporting, safeguarding of assets, operations and document retention.

O.  The term "FINANCIAL STATEMENTS" shall mean ANY presentation, compilation, accumulation, collection or listing (whether audited or unaudited, final, interim, pro forma, complete or partial) of financial data derived from accounting records and intended to communicate an entity's financial position, or its economic resources or its obligations at a point in time, or changes over a period of time. FINANCIAL STATEMENTS include, without limitation, the following types of presentations: consolidated and non-consolidated balance sheets, statements of earnings, statements of retained earnings or source and application of funds, cash flow statements, cash flow projections, statements of changes in financial position, statements of changes in owner's equity, statements of revenues and expenses and summaries of operations.

P.  The term "ACCOUNTING RECORDS" means books of original entry, general and subsidiary ledgers, related accounting records such as work sheets and spreadsheets, databases, and all other compilations, accumulations, collections or listings of financial data or information related to the business and operations of HELLER.

**WRITINGS REQUESTED**

1.  ALL WRITINGS RELATING TO YOUR establishment of the terms of engagement

for ANY audit of the FINANCIAL STATEMENTS of HELLER

2. ALL WRITINGS RELATING TO ANY audit engagement agreement with HELLER.

3. ALL WRITINGS RELATING TO ANY preliminary review of the FINANCIAL STATEMENTS of HELLER.

4. ALL WRITINGS RELATING TO ANY process for establishing materiality for ANY audit of the FINANCIAL STATEMENTS of HELLER.

5. ALL WRITINGS RELATING TO ANY process for assessing risks for ANY audit of the FINANCIAL STATEMENTS of HELLER.

6. ALL WRITINGS RELATING TO assessment of risk for ANY audit of the FINANCIAL STATEMENTS of HELLER.

7. ALL WRITINGS RELATING TO ANY process for creating ANY audit plan for ANY audit of the FINANCIAL STATEMENTS of HELLER.

8. ALL WRITINGS RELATING TO the audit plan for ANY audit of the FINANCIAL STATEMENTS of HELLER.

9. ALL WRITINGS RELATING TO ANY audit planning memorandum for ANY audit plan of the FINANCIAL STATEMENTS of HELLER

10. ALL WRITINGS RELATING TO the internal controls of HELLER.

11. ALL WRITINGS RELATING TO the application of internal controls of HELLER.

12. ALL WRITINGS RELATING TO tests of internal controls of HELLER.

13. ALL WRITINGS RELATING TO audit sampling for ANY audit of the FINANCIAL STATEMENTS of HELLER.

14. ALL WRITINGS RELATING TO selection of audit samples for ANY audit of the FINANCIAL STATEMENTS of HELLER.

15. ALL WRITINGS RELATING TO evaluation OR documentation of ANY sample OR samples of WRITINGS of HELLER.

16. ALL WRITINGS RELATING TO confirmation that the financial information

provided by HELLER was accurate for ANY audit of the FINANCIAL STATEMENTS of HELLER.

17. ALL WRITINGS RELATING TO confirmation of ANY loans by HELLER to its PC partners.

18. ALL WRITINGS RELATING TO confirmation of ANY loan by HELLER to ANY SHAREHOLDER.

19. ALL WRITINGS RELATING TO confirmation of ANY loan by any other person or entity to ANY SHAREHOLDER.

20. ALL WRITINGS RELATING TO computer assisted auditing techniques for ANY audit of the FINANCIAL STATEMENTS of HELLER.

21. ALL WRITINGS obtained OR collected in the process of ANY audit of the FINANCIAL STATEMENTS of HELLER.

22. ALL WRITINGS RELATING TO subsequent events for ANY audit of the FINANCIAL STATEMENTS of HELLER.

23. ALL WRITINGS RELATING TO ANY consideration of disclaiming an audit of the FINANCIAL STATEMENTS of HELLER.

24. ALL WRITINGS RELATING TO ANY consideration of the qualification of ANY audit of the FINANCIAL STATEMENTS of HELLER.

25. ALL WRITINGS RELATING TO ANY follow up activities with respect to ANY audit of HELLER.

26. ALL WRITINGS RELATING TO ANY assessment of ANY audit of HELLER.

27. ALL WRITINGS RELATING TO ANY audit report prepared OR issued on the FINANCIAL STATEMENTS OR ACCOUNTING RECORDS of HELLER.

28. ALL WRITINGS RELATING TO work performed by YOU, in ANY capacity, pertaining to services of ANY nature performed for HELLER.

29. ALL WRITINGS RELATING TO HELLER for the fiscal years 2005, 2006 and 2007.

Case 08-32514     5     EXHIBIT A
ERNST & YOUNG 2004 EXAMINATION
Case: 08-32514    Doc# 902    Filed: 02/04/10    Entered: 02/04/10 11:55:27    Page 12 of 18

30. ALL WRITINGS RELATING TO the internal audit function of audited FINANCIAL STATEMENTS of Heller for the fiscal years 2005, 2006 and 2007.

31. ALL WRITINGS RELATING TO auditor reports of HELLER for the fiscal years 2005, 2006 and 2007.

32. ALL WRITINGS RELATING TO YOUR work papers related to ANY HELLER audits for the fiscal years 2005, 2006 and 2007.

33. ALL WRITINGS that RELATE TO documentation of compliance with Generally Accepted Auditing Standards in connection with audits of HELLER FINANCIAL STATEMENTS during the relevant time period.

34. ALL WRITINGS that RELATE TO ANY policy of E&Y regarding the preservation OR destruction of WRITINGS of the types requested herein.

35. ALL WRITINGS RELATING TO ANY proposed OR contemplated changes in HELLER accounting practices, policies OR procedures, whether OR not recommended by YOU, including, but not limited to, file memoranda, correspondence, OR other WRITINGS prepared by firm‑designated experts AND/OR national office personnel.

36. ALL WRITINGS RELATING TO SHAREHOLDER compensation.

37. ALL WRITINGS RELATING TO HELLER pension or retirement plan, including descriptions of such plans AND evidence of payments made into such plans.

38. ALL WRITINGS RELATING TO meetings of the HELLER Policy Committee during the RELEVANT period, including minutes of such meetings.

39. ALL WRITINGS RELATING TO meetings of the HELLER Executive Committee during the RELEVANT PERIOD, including minutes of such meetings.

40. ALL WRITINGS RELATING TO meetings of the HELLER Compensation Committee during the RELEVANT PERIOD, including minutes of such meetings.

41. ALL WRITINGS RELATING TO ANY conversations, meetings OR other gatherings between personnel of HELLER and ANY or YOUR personnel.

42. ALL COMMUNICATIONS between YOU and HELLER RELATING TO the

financial condition of HELLER including but not limited to COMMUNICATIONS made by or among YOU and ANY Policy Committee members, Executive Committee members, Compensation Committee members, chairpersons, managing shareholders, executive directors, chief financial officers, chief operating officers, tax managers, finance managers, or other members of HELLER's management.

43. ALL insurance policies OR other agreements under which YOU may claim coverage to satisfy ALL OR part of ANY liability for claims for errors AND omissions by YOU RELATING TO YOUR work for HELLER.

44. The contents of the entire personnel file AND the current address, if known, of each partner OR employee engaged in rendering ANY services by YOU for HELLER during the RELEVANT PERIOD.

45. ALL WRITINGS RELATED TO business consulting services OR management advisory services YOU performed for HELLER, including, without limitation, ALL reports, studies, memoranda, management letters, AND letters of advice.

46. ALL WRITINGS RELATED TO HELLER quarterly FINANCIAL STATEMENTS.

47. ALL WRITINGS RELATED TO management letters from YOU RELATING TO HELLER, AND replies thereto, as well as ANY such letters from OR to other accountants.

48. ALL WRITINGS RELATED TO explanation of YOUR key accounting policies AND controls, including copies of ANY accounting policies AND procedures manuals.

49. ALL WRITINGS RELATED TO, HELLER federal AND state tax returns.

50. ALL WRITINGS RELATED TO billings for YOUR services to HELLER.

51. ALL WRITINGS RELATED TO HELLER property taxes.

52. ALL WRITINGS RELATED TO HELLER-related Revenue Agent examination reports.

53. ALL WRITINGS RELATED TO ANY breakdown of HELLER revenues by source (customer), type, revenue recognition policy AND change in revenue mix.

54. ALL WRITINGS RELATED TO description(s) of ANY HELLER-related contingent

Case 08-32514   7   EXHIBIT A
ERNST & YOUNG 2004 EXAMINATION
Case: 08-32514   Doc# 902   Filed: 02/04/10   Entered: 02/04/10 11:55:27   Page 14 of 18

liabilities which were outstanding at the time the WRITING was created.

55. ALL WRITINGS OR RELATED TO ANY contingent fee contracts entered into between HELLER and ANY CLIENT of HELLER.

56. ALL WRITINGS RELATED TO ANY contingent fee receivable from ANY client of HELLER.

57. ALL WRITINGS RELATED TO HELLER cash management practices AND procedures.

58. ALL WRITINGS that RELATE TO ANY studies undertaken OR conducted by YOU concerning the operations, profitability, OR projected profitability of HELLER, including, without limitation, ANY WRITINGS created, generated OR prepared in connection with ANY special project OR review, management advisory services OR management consulting services YOU rendered to HELLER.

59. ALL WRITINGS RELATED TO ANY HELLER credit line and credit line agreement.

60. ALL WRITINGS RELATED TO ANY discussion of legal industry AND HELLER billing policies.

61. ALL WRITINGS RELATED TO ANY HELLER-related contracts including engagement, employment, purchasing, AND supply.

62. ALL WRITINGS RELATED TO ANY summary of current domestic AND foreign HELLER tax positions.

63. ALL WRITINGS RELATED TO HELLER net operating losses.

64. ALL WRITINGS RELATED TO YOUR internal COMMUNICATIONS, including e‑mails, concerning HELLER, including, without limitation, internal memoranda OR other written statements RELATING TO HELLER as a client OR risk client, completion of YOUR work for HELLER, ANY difficulty YOU experienced in preparing the opinions YOU issued concerning HELLER FINANCIAL STATEMENTS, AND the cooperation received, OR not received, from PRESENT AND former HELLER officers, shareholders, partners, PC's, employees AND

Case 08-32514     8     EXHIBIT A
ERNST & YOUNG 2004 EXAMINATION
Case: 08-32514    Doc# 902    Filed: 02/04/10    Entered: 02/04/10 11:55:27    Page 15 of 18

personnel in performing YOUR work.

65. ALL WRITINGS RELATED TO HELLER contained in correspondence OR personal files kept by YOU, YOUR PRESENT OR former partners, principals OR employees.

66. ALL WRITINGS RELATED TO correspondence, COMMUNICATIONS AND/OR meetings between YOU AND/OR HELLER AND financial analysts, bankers, securities underwriters, investment advisors, securities brokers, members of HELLER's Policy Committee, HELLER's Executive Committee, HELLER's Compensation Committee, partners, shareholders, PCs, officers and personnel, audit committee, internal audit personnel, OR appraisers.

67. ALL WRITINGS RELATED TO loss reserves, payment of Annual bonuses or other employee or shareholder compensation, unbilled costs, provision for losses, revenue recognition AND asset valuation.

68. ALL WRITINGS RELATED TO, discussions of the HELLER budgeting process.

69. ALL WRITINGS RELATED TO HELLER quarterly financial projections including:
    a. Assumptions;
    b. Income statements (including derivation of assumed revenue growth);
    c. Balance sheets (including discussion of estimated changes in major accounts, fixed asset changes indebtedness AND current liabilities); AND
    d. Cash flow statements (including investment needs, planned capital expenditures, planned depreciation AND amortization schedules).

70. ALL WRITINGS RELATED TO HELLER annual historical plans AND actual plans.

71. ALL WRITINGS RELATED TO the formation of ANY HELLER annual business plan.

72. ALL WRITINGS RELATED TO the formation of a HELLER long-term strategic plan.

73. ALL WRITINGS RELATED TO HELLER external financing arrangements.

Case 08-32514     9     EXHIBIT A
ERNST & YOUNG 2004 EXAMINATION
Case: 08-32514    Doc# 902    Filed: 02/04/10    Entered: 02/04/10 11:55:27    Page 16 of 18

74. ALL WRITINGS RELATED TO the amount OR value of ANY consideration paid by HELLER for ANY review services, appraisal services, audit services, AND consulting services rendered to HELLER by YOU OR ANY other person OR ENTITY.

75. ALL WRITINGS RELATED TO fee arrangements or agreements between YOU AND HELLER AND ALL client evaluation OR investigations concerning HELLER.

76. ALL WRITINGS RELATED TO work performed by YOU for HELLER in connection with the refinancing of 2007 or 2008 existing bank debt.

77. ALL WRITINGS RELATED TO work performed for HELLER by YOU to review HELLER's business plan AND reports on findings to ANY lenders OR to HELLER's bank group.

78. ALL WRITINGS RELATED TO work performed for HELLER by YOU as a financial advisor to HELLER.

79. ALL WRITINGS RELATED TO ANY studies undertaken OR conducted by YOU OR to ANY COMMUNICATIONS between YOUR partners OR employees concerning ANY one OR more of the following subjects:

    a. HELLER actual AND projected revenues, earnings AND earnings per shareholder;

    b. HELLER operating AND non‑operating expenses;

    c. sales OR divestments of businesses, segments, OR assets made OR contemplated by HELLER (other than in the ordinary course of business);

    d. acquisitions of businesses AND assets made by HELLER;

    e. HELLER accounts receivable AND accounts payable;

    f. HELLER system of INTERNAL CONTROLS;

    g. the appropriate accounting treatment for proposed OR completed transactions;

    h. studies AND analyses of HELLER actual OR possible asset impairments, including those studies OR analyses conducted OR intended to be conducted in accordance with FAS 121.

80. ALL WRITINGS RELATED TO ANY indemnification for attorneys' fees, OR

Case 08-32514     10     EXHIBIT A
ERNST & YOUNG 2004 EXAMINATION
Case: 08-32514    Doc# 902    Filed: 02/04/10    Entered: 02/04/10 11:55:27    Page 17 of 18

1  judgment rendered OR settlements achieved in connection with litigation arising out of alleged
2  violations of federal OR state law, including ANY opinions of counsel with respect to the legality
3  OR validity of ANY such indemnification agreements OR settlements.
4      81.    ALL WRITINGS RELATED TO ANY COMMUNICATIONS with attorneys
5  representing HELLER concerning HELLER.
6      82.    ALL WRITINGS RELATED TO YOUR document preservation, retention OR
7  destruction policies, program and practices.
8      83.    ALL WRITINGS RELATED TO ANY HELLER income tax returns during the
9  RELEVANT PERIOD.