John D. Fiero (CA Bar No. 136557)
Kenneth H. Brown (CA Bar No. 100396)
Miriam Khatiblou (CA Bar No. 178584)
Teddy M. Kapur (CA Bar No. 242486)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010

E-mail: jfiero@pszjlaw.com
kbrown@pszjlaw.com
mkhatiblou@pszjlaw.com
tkapur@pszjlaw.com

Attorneys for Heller Ehrman LLP,
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>Heller Ehrman LLP,<br><br>Debtor. | Case No.: 08-32514<br><br>Chapter 11<br><br>**NOTICE OF COMPROMISE OF CONTROVERSY WITH APERTO NETWORKS, INSTANTSERVICE.COM, LITEL INSTRUMENTS, JOSEPH CARACCIOLO, LLOG EXPLORATION AND TARGETED GROWTH, AND OPPORTUNITY FOR HEARING** |

TO: THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THOSE PARTIES REQUESTING SPECIAL NOTICE, THE SETTLING PARTIES HEREIN, AND THE UNITED STATES TRUSTEE:

**NOTICE IS GIVEN** that subject to Bankruptcy Court approval, Heller Ehrman LLP ("Debtor") has agreed to settle its accounts receivable claims against a few of its former clients, Aperto Networks, Inc., InstantService.com, Inc., Litel Instruments, Joseph Caracciolo, LLOG Exploration, LLC and Targeted Growth, Inc., relating to outstanding indebtedness due from the former clients to the Debtor, as more as more fully discussed below. Copies of the settlement agreements may be obtained by contacting the Debtor's counsel.

### Background

On December 28, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. In 2009, the Debtor sent to Joel Adler, its special collections counsel, the accounts receivables due from Aperto Networks, Inc. ("Aperto"),

1

InstantService.com, Litel Instruments ("Litel"), Joseph Caracciolo, LLOG Exporation, LLC ("LLOG") and Targeted Growth, Inc. ("Targeted").[1] The disputes with these former clients/creditors and the resulting settlements are described separately below.

1. <u>Aperto</u>: During the pre-petition period, the Debtor provided legal services to Aperto in connection with multiple matters. Aperto had not paid invoices totaling $487,201.22 and demanded advisory Mandatory Fee Arbitration. Aperto claimed that the Debtor had overcharged it and/or otherwise improperly billed it for its services, which allegations the Debtor denied. Aperto timely filed a proof of claim in the Debtor's case in the amount of $1,281,000. Additionally, Aperto's ability to fully pay any judgment obtained by the Debtor is questionable as the Debtor understands that Aperto has never earned a profit. In fact, the source of the majority of the proposed settlement amount below is to be paid by one of Aperto's investors.

Subject to Bankruptcy Court approval, the parties have agreed to settle their dispute and executed a Settlement Agreement and Mutual Release pursuant to which Aperto will pay the Debtor the total sum of $150,000, payable in a down payment of $50,000 (which has already been received) and four equal monthly payments of $25,000 each starting March 22, 2010, which has also been received. The parties also agreed to release the other of all claims, except any claims that the Debtor may have against Aperto arising under the doctrine of *Jewel v. Boxer,* 156 Cal.App.3d 171 (1984).

2. <u>InstantService.com</u>. The Debtor provided legal services to InstantService.com in connection with multiple matters. Because InstantService.com failed to make certain payments when due and, after sending it a Notice of Client's Right to Arbitration, the Debtor filed Adversary Proceeding (Case No. 09-3212) on December 3, 2009 to collect the then-owing principal balance of $236,823.46. InstantService.com disputes the Debtor's claims and maintains that it was not in breach of its obligation to pay the receivable so long as it continued to make $5,000 monthly payments against the balance owed, which it has continued to do. InstantService.com also claims that the Debtor injured it by failing to preserve its files during the course of the Debtor's dissolution, which claims and the cost, if any, of such alleged damage are disputed by the Debtor.

In an effort to resolve the parties' dispute and subject to Bankruptcy Court approval, the parties have entered into a Settlement Agreement and Mutual Release pursuant to which Instantservice.com agreed to pay the Debtor the total sum of $187,500.00 by March 25, 2010, which has been received. The parties also agreed to release the other of all claims, except any claims that the Debtor may have against InstantService.com arising under the doctrine of *Jewel v. Boxer,* 156 Cal.App.3d 171 (1984) ("Boxer Doctrine").

3. <u>Litel</u>. The Debtor provided legal services to Litel and as of the Petition Date, Litel owed the Debtor the sum of $153,704 for those legal services. The Debtor filed an adversary proceeding against Litel to collect the amounts due and Litel defended the suit by claiming financial hardship and produced its financial records in support of its representations. In January 2010, Litel stipulated to a judgment in the amount of $153,704, plus interest.

However, in an effort to avoid collection problems associated with meager assets and senior secured creditors, and subject to Bankruptcy Court approval, the parties entered into a Settlement Agreement and Mutual Release pursuant to which Litel agreed to pay the Debtor the total sum of $76,852.24, payable in two installments: $51,234.82 by February 15, 2010, which was paid, and $25,617.42 by June 1, 2010. The parties also agreed to release the other of all claims, except any claims that the Debtor may have against Litel arising under the Boxer Doctrine. Additionally, in the event Litel fails to pay the settlement amount, the Debtor will file the stipulation for judgment.

---

[1] Pursuant to the Order Granting Application To Employ Adler Law Firm as Collections Counsel and Payment of Contingency Fees, dated April 28, 2009, Joel Adler is entitled to a contingency fee and recovery of costs and expenses in the event the settlements described herein are approved by the Court.

4. <u>Joeseph Caracciolo</u>.  During the pre-petition period, the Debtor provided legal services to Joseph Caracciolo and as of the Petition Date, Mr. Caracciolo owed the Debtor the sum of $188,163.  Mr. Caracciolo advised the Debtor that he is judgment proof and produced financial information in support of his representations.  Mr. Caracciolo has also filed a proof of claim against the Debtor in the amount of $660,000 for alleged malpractice and related claims.  In an effort to avoid collection issues and to resolve the claims against the estate, the parties agreed to do a 'walk away' whereby the Debtor agreed to release its claims (except those under the Boxer Doctrine) for the past due accounts receivable and Mr. Caracciolo agreed to waive his claims against the estate.

5. <u>LLOG</u>.  The Debtor provided legal services to LLOG and as of the Petition Date, LLOG owed the Debtor the amount of $441,505 for legal services rendered.  The Debtor commenced collection efforts to collect the past due amounts.  LLOG was not responsive, claiming it had no available funds and unable to provide security as it claimed its lender prohibited it from doing so.  After contact from collection counsel for the Debtor, in an effort to cease collection efforts and to resolve any and all disputes relating to the services that were provided by the Debtor to LLOG, the parties entered into a Settlement Agreement and Mutual Release pursuant to which LLOG agreed to pay the Debtor the total sum of $431,046.  LLOG agreed to pay the settlement amount through an initial payment of $143,682.27 by March 25, 2010, and two payments of $143,682.26 each, payable on April 25, 2010 and May 25, 2010.  The parties also agreed to release the other of all claims, except any claims that the Debtor may have against LLOG arising under the Boxer Doctrine.

6. <u>Targeted</u>.  The Debtor provided legal services to Targeted during prior to the Petition Date and Targeted became indebted to the Debtor for fees and expenses in the amount of $372,265 for those services.  The Debtor commenced collection efforts to collect the past due amounts.  Target was disputing the value of the services compared to previous projects having, was having serious cash flow issues, had closed three of its Canadian facilities, and was offering meager payment programs $5-6K per month pending a new round of financing with an anticipated January 2011, realization date.  The former client is venued in Washington State.  In the meantime, and in an effort to cease collection efforts and to resolve any and all disputes relating to the services that were provided by the Debtor, the parties entered into a Settlement Agreement and Mutual Release pursuant to which Targeted agreed to pay the Debtor the total sum of $200,000 by March 25, 2010.  The parties also agreed to release the other of all claims, except any claims that the Debtor may have against Targeted arising under the Boxer Doctrine.

## Standard for Approval of Settlement Agreement

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides that "on a motion by the trustee and after a notice and a hearing, the court may approve a compromise or settlement."  In general, compromises are favored in bankruptcy cases.  *In re Sassalos*, 160 B.R. 646 (D.Ore. 1993).  However, a court should approve a settlement only if the settlement is fair and equitable and in the best interest of the estate.  *In re Foster Mfg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995).  The court must compare the "terms of the compromise with the likely rewards of litigation."  *In re Jackson Brewing Co.,* 624 F.2d 605, 607 (5th Cir. 1990).

In deciding whether a settlement is fair and equitable and in the best interests of creditors, courts are guided by the standards originally set forth by the Supreme Court in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 88 S.Ct. 1157 (1968), wherein the Supreme Court stated that courts should:

> "Apprise [themselves] of all the facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting on any judgment, which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."

*Id.* at 1163-64.

The above standards have developed into a test whereby the Court examines four factors: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of creditors and a proper deference to their reasonable views in the premises. *See, e.g., In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.), *cert. denied* 111 S.Ct. 387, (1990); *In re A & C Properties,* 784 F.2d 1377, 1381 (9th Cir.), cert. denied, 107 S.Ct. 189 (1986).

The *A&C* factors are easily met in connection with the proposed settlements. First, the probability of success in litigation is likely to favor the Debtor in each case, however, the expense and delay associated with litigating the matters far outweigh any decision to proceed to litigate the disputes in the hopes of obtaining a better recovery. The Debtor is receiving very favorable settlements and is positioned to recover substantial amounts on its outstanding receivables. The Debtor will receive $150,000 from its settlement with Aperto, $187,500 from InstantService.com $76,852 from Litel, $431,046 from LLOG and $200,000 from Targeted. Second, the Debtor believes that some complications may exist with regard to collections against Aperto, Litel and Mr. Caracciolo as each party suffers from varying degrees of financial hardship. Thus proceeding to litigate against these parties may not provide any tangible or immediate benefit to the estate. Third, while the estate could proceed to litigate its claims against these former clients, the settlements reached alleviate the need to expend resources on formal discovery, research, trial preparation, trial and provide a very substantial and prompt recovery to the estate.

Accordingly, it is the opinion of the Debtor that the settlements reached with Aperto, InstantService.com, Litel, Mr. Caracciolo, LLOG, and Targeted as described above and as more fully described in the corresponding settlement agreements, are in the best interest of creditors herein and should be approved.

**PLEASE TAKE FURTHER NOTICE** that Bankruptcy Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed and that any objection to the relief requested in the Notice, or a request for hearing on the matter, must be filed and served upon the Debtor's counsel at the address set forth below ***within twenty (20) days of mailing*** of this Notice;

**PLEASE TAKE FURTHER NOTICE** that any request for hearing or objection must be accompanied by any declarations or memoranda of law the party objecting or requesting wishes to present in support of its position. If there is no timely objection or request for hearing, the Court may grant the relief requested in the Notice without further notice.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will give at least ten (10) days written notice of hearing to the objecting or requesting party, in the event an objection or request for hearing is timely made.

Copies of any response, objection, or request for hearing shall be served upon the following parties at the addresses below:

Miriam Khatiblou, Esq.
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500

Dated:	March 25, 2010	PACHULSKI STANG ZIEHL & JONES LLP

By	*/s/ Miriam Khatiblou*
	Miriam Khatiblou
	Attorneys for Heller Ehrman LLP