# EXHIBIT G

# MASTER AGREEMENT FOR LEGAL SERVICES

This "MASTER AGREEMENT FOR LEGAL SERVICES" (Agreement) is made at San Francisco, California, between McGRANE GREENFIELD LLP, a California limited liability partnership, VALLE MAKOFF LLP, and SCHNADER HARRISON SEGAL & LEWIS LLP (collectively, Attorneys) on the one hand, and the Official Committee of Unsecured Creditors of Heller Ehrman LLP (Official Committee) and any duly appointed successor to the Official Committee and to the Bankruptcy Estate (collectively, Client). The Official Committee has proposed Michael Burkart as the Plan Administrator for the debtor's post confirmation estate in a bankruptcy case entitled *In re Heller Ehrman LLP*, United States Bankruptcy Court for the Northern District of California (San Francisco Division), Case No. 08-32514 DM (Heller Bankruptcy Case).

1. **Scope of Services.**

Client retains Attorneys to represent it in bringing claims on behalf of debtor's estate in the Heller Bankruptcy Case (Debtor's Estate) and to perform legal services in connection with all matter(s) for which legal bills are rendered or legal services are performed where such bill refers to "MFAHELLER." Attorneys will provide those legal services reasonably required to represent Client and, through Client, prosecute claims on behalf of the Debtor's Estate or defend claims against the Debtor's Estate in all matters generally described as the prosecution of claims for money damages against the various persons and entities listed on Exhibit 1 hereto (hereafter, collectively Heller Claims Out) and the defense of certain claims in against Client by the same persons and entities listed

on Exhibit 1 (Heller Claims In). Heller Claims Out and Heller Claims In are hereafter sometimes collectively referred to as Heller Claims.

2. **Responsibilities of Attorneys and Client**.

Attorneys will perform legal services for Client respecting Heller Claims, keep Client informed of progress and developments, and respond promptly to Client's inquiries and communications. Client will fully cooperate with Attorneys in Attorneys' providing of legal services to Client hereunder (including keeping Attorneys reasonably informed of developments and complying with all reasonable requests of Attorneys in connection with the subject matter(s) of the representation), not seek to require Attorneys to commit any unlawful act or other action in violation of Attorneys' professional ethics, and timely make any and all payments required by this Agreement.

3. **Establishment and Maintenance of Litigation Reserve Account**. Client shall, as part of a Plan of Reorganization, establish a litigation reserve account (the Litigation Reserve Account) from which Hourly Legal Fees and Costs and Expenses (as those terms are defined, *infra*) for this engagement and the Costs and Expenses (defined in paragraph 7 of the Bank Case Agreement) incurred in the Bank Case, which is the subject of a related engagement as reflected in the attached Exhibit 2, shall be disbursed over the first two years following the Effective Date (defined infra in paragraph 20) of this Agreement. The Litigation Reserve Account shall initially be funded with the sum of three million five hundred thousand dollars ($3,500,000). Should Client, in its sole discretion, fund the Litigation Reserve Account by an additional three million dollars ($3,000,000) before the expiration of the first two years following the Effective Date, the

Pure Contingency provisions of this Agreement (as the term Pure Contingency is defined, *infra*) shall become null and void and Attorneys compensation shall then be limited to Hourly Legal Fees and Costs and Expenses under this Agreement and Costs and Expenses from the Bank Case capped at six million five hundred thousand dollars ($6,500,000) plus the Contingency Fee Kicker, as that term is defined, *infra*. At the conclusion of all matters covered by this Agreement, any balance in the Litigation Reserve Account shall be distributed to Client.

4. **Hourly Legal Fees**.

Subject to the Cap (defined *infra* in paragraph 11), and as long as there are sufficient funds in the Litigation Reserve Account, Client shall consent to payment of Attorneys from the Litigation Reserve Account by the hour for all legal services rendered under this Agreement at the flat rate of three hundred and fifty dollars ($350) an hour for all partners, two hundred twenty-five dollars ($225) an hour for all associates and/or attorneys who are of counsel to Attorneys as well as ninety dollars ($90) an hour for all law clerks, paralegals, and case clerks (Hourly Legal Fees). The Hourly Legal Fees charged by Attorneys will be based on the time spent by Attorneys' partners, associates, and/or attorneys who are of counsel to Attorneys as well as law clerks, paralegals, and case clerks.

5. **Contingent Fee Kicker to Hourly Legal Fee**.

For the first 24 months of the retention, and an additional 24 months if Client has funded the additional $3,000,000.00 into the Litigation Reserve Account as provided for in paragraph 3 above, and subject to the Bankruptcy Court's right to award Attorneys'

lesser compensation as set forth in 11 United States Code section 330, Client shall pay Attorneys the greater of (1) compensation consisting of Hourly Legal Fees plus Costs and Expenses for MFAHELLER Costs and Expenses and the Bank Case Costs and Expenses, each previously received from the Litigation Reserve Account under this Agreement (as Costs and Expenses are defined, *infra*) or (2) compensation equal to eighteen percent (18%) of the amount of any consideration, however described, received by Client on account of the Heller Claims Out less any monies previously paid Attorneys for Hourly Legal Fees and Costs and Expenses for the MFAHELLER representation by Client (the Contingent Fee Kicker). The Contingent Fee Kicker shall not be increased by any consideration in the form of reduced exposure by Client on account of Heller Claims In. The Contingent Fee Kicker shall be paid at the conclusion of the prosecution and defense of the Heller Claims.

6. **Limited Liability of Client for Fees and Costs.**

The only obligation of Client is to undertake best efforts to cause the Debtor's Estate to pay to Attorneys the fees and costs owed under this Agreement and neither the individual members of the Official Committee nor any successor to the Official Committee shall have any obligation personally to make any payments required under this Agreement.

7. **Conversion from Hourly Legal Fee Plus Contingent Fee Kicker to Pure Contingency.**

If after 24 months, Client elects in its sole discretion not to deposit the additional $3,000,000.00 pursuant to the provisions of paragraph 3 above, and again subject to the

Bankruptcy Court's right to award Attorneys' lesser compensation as set forth in 11 United States Code section 330, Client shall pay Attorneys compensation equal to eighteen percent (18%) of the amount of any consideration, however described, received by Client on account of the Heller Claims Out, less a fifty percent (50%) offset for any monies previously paid Attorneys for Hourly Legal Fees and Costs and Expenses for MFAHELLER representation under this Agreement by Client. While Attorneys shall continue to be obliged to defend the Heller Claims In under this Agreement should their compensation become subject to the Pure Contingency, the Pure Contingency shall not be increased by any consideration in the form of reduced exposure by Client on account of Heller Claims In.

8. **Staffing and Association of Attorneys**. Attorneys may assign attorney and non-attorney personnel as Attorneys deem appropriate to provide representation to Clients.

9. **Costs and Expenses**.

a. **In General**. Attorneys may incur various costs and expenses in performing legal services under this Agreement. These costs and expenses commonly include process servers' fees, fees fixed by law or assessed by courts and other agencies, court reporter fees, long distance telephone calls, word processing fees, messenger and other delivery fees, postage, parking and other local travel expenses, photocopying (including in-house photocopying) and other reproduction costs, facsimile transmission, charges for computer research, and other similar items (Costs and Expenses).

b. **Out-of-Town Travel.** Costs and Expenses also include transportation, meals, lodging and all other costs of any necessary out-of-town travel by Attorneys.

c. **Experts, Consultants and Investigators.** Costs and Expenses also include the cost of expert witnesses, consultants or investigators. Attorneys will select any expert witnesses, consultants or investigators to be hired, in consultation with Clients.

10. **Billing Statements.** Attorneys will send Client monthly statements for Hourly Legal Fees, Costs and Expenses incurred under this Agreement for MFAHELLER representation and and Cost and Expenses in the Bank Case per paragraph 7 of Bank Case Agreement (in aggregate, Attorney Billings). Client shall cause the Debtor's Estate to pay Attorney Billings promptly upon receipt, provided, however, that Client shall have no obligation (1) in any given month to have the Debtor's estate pay Attorney Billings, regardless of amount, at a rate of more than one hundred and sixty two thousand, five hundred dollars ($162,500) per month on account of any Attorney Billing and (2) pay Attorney Billings in excess of the Litigation Reserve Account, (collectively, the Cap). Attorney Billing shall carry past due balances forward and any and all such unpaid balances, subject always to the Cap, shall be paid by Client in the ordinary course.

11. **Contingent Fee Kicker Reserve.** Upon the receipt of any monies received as recoveries on account of the Heller Claims Out, Client shall establish and fund a reserve sufficient to pay at the conclusion of the prosecution and defense of the Heller

Claims any Contingent Fee Kicker or Pure Contingency (as the case may be) based on the recoveries actually received.

12. **Discharge and Withdrawal**. Client may discharge Attorneys at any time by written notice to Attorneys, effective upon receipt by Attorneys. Attorneys may likewise terminate this representation for good cause with the approval of the Bankruptcy Court, subject to Attorneys' obligation to provide reasonable transition assistance to new counsel of Client's choice and subject to any requirement that Attorneys obtain court permission for withdrawal.

When Attorneys' services to Client are concluded (upon receipt of notice of discharge or withdrawal), Attorneys will provide no further services and advance no further costs on Client's behalf, except as may be expressly agreed to in a writing signed by Attorneys and Client. If Attorneys are Client's attorneys of record in any proceeding, Clients will execute and return a substitution-of-attorney form immediately on its receipt from Attorneys. Notwithstanding such discharge or withdrawal, the Debtor's Estate will remain obligated to pay Attorneys the Hourly Legal Fees and MFAHELLER Costs and Expenses and Bank Case Agreement Costs and Expenses up to the Cap for services provided and to reimburse Attorneys for all such costs prior to the discharge or withdrawal. After Attorneys' services are concluded, Attorneys will, at Client's request and expense and as required by California Rule of Professional Conduct 3-700(D)(1), deliver Client's original file(s) to Client, along with any of Client's funds or property in Attorneys' possession. In the event Client requests the return of Client's original file(s), Attorney shall have the right to make and retain a copy of Client's file(s) and Client shall

be responsible for all costs of copying same. In the event of termination of this Agreement pursuant to this paragraph, Attorneys shall continue to have a lien on any recovery or funds held for the benefit of Client as set forth in Paragraph 9 of this Agreement.

13. **Lien.** Client agrees that Attorneys shall have a lien on any assets of the Debtor's Estate for the Hourly Legal Fees and MFAHELLER Costs and Expenses and Bank Case Agreement Costs and Expenses up to the Cap on any recovery, and that this lien shall survive any termination of Attorneys or this Agreement. Client agrees it will not assign, in whole or in part, or otherwise grant a lien on or interest in any claims without Attorneys' prior written consent.

14. **Destruction of Clients Files.** Following discharge, withdrawal or final conclusion of the matter(s) for which Attorneys services were engaged, Attorneys shall maintain their original file in storage for a minimum of five years. At the end of the five-year period, Attorneys shall notify Client in writing at the last known address for Client of its intent to destroy the original files. Client shall have two weeks from such notification to inform Attorneys in writing of Client's intent to take custody of the original files instead of allowing destruction. Client shall then have 30 days in which to take custody of the Client matter(s) files. If Client fails to notify Attorneys of its intent to take custody of the original files or fails to take physical custody of the files in the time allotted, Attorneys shall destroy the Client matter(s) files.

15. **Disclaimer of Partnership.** While Attorneys have agreed to enter into a single Agreement with Client, and to cooperate, coordinate and share in furtherance of

Client's interests. Attorneys are separate law firms and shall not be deemed a partnership or relationship for which the acts of one law firm or its agents may be imputed to another. The relationship between the law firms shall be publicly described by all of the law firms, and by Client, as that of co-counsel only.

16. **Modification**. This Agreement may only be modified by a writing signed by all of the parties.

17. **Severability**. If any provision of this Agreement is held, in whole or in part, to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

18. **Key Man Provision**. Attorneys agree that William McGrane and Christopher Sullivan are crucial components of this retention agreement. If one or both of them change firms, Clients reserve the right to change firms and Attorneys agree not to assert *Jewel v. Boxer* claims against a successor firm.

19. **Entire Agreement**. This Agreement constitutes the entire agreement between Attorneys and Client. No other agreement, statement or promise made on or before the Effective Date (defined *infra* in paragraph 20) of this Agreement will be binding on the parties or any of them.

20. **Effective Date**. This Agreement will take effect upon its full execution and approval by a final, non-appealable order of the Bankruptcy Court of the Debtor's Plan of

Confirmation and the employment of the Attorneys under the terms of this Agreement (Effective Date).

DATED: March 31, 2010

"Attorneys"

McGRANE GREENFIELD LLP

By: _____
WILLIAM McGRANE
Its Partner

DATED: March 31, 2010

VALLE MAKOFF LLP

By: _____
JEFFREY MAKOFF
Its Partner

DATED: ___, 2010

SCHNADER HARRISON SEGAL & LEWIS LLP

By: _____
KEVIN COLEMAN
Its Partner

"Client"

DATED: ___, 2010

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF HELLER EHRMAN LLP

By: _____
Theresa Hoyt
Authorized Signatory for BREF 333, LLC,
Its Chairperson