# EXHIBIT G-2

# AGREEMENT FOR LEGAL SERVICES

This "AGREEMENT FOR LEGAL SERVICES" (Agreement) is made at San Francisco, California, between McGRANE GREENFIELD LLP, a California limited liability partnership (collectively, Attorneys) on the one hand, and the Official Committee of Unsecured Creditors of Heller Ehrman LLP (Official Committee) and any duly appointed successor to the Official Committee and to the Bankruptcy Estate (collectively, Client). The Official Committee has proposed Michael Burkart as the Plan Administrator for the debtor's post confirmation estate in a bankruptcy case entitled *In re Heller Ehrman LLP*, United States Bankruptcy Court for the Northern District of California (San Francisco Division), Case No. 08-32514 DM (Heller Bankruptcy Case). The Official Committee is also proposing to retain McGRANE GREENFIELD LLP, VALLE MAKOFF LLP, and SCHNADER HARRISON SEGAL & LEWIS LLP as its attorneys in a related engagement as part of the Plan of Reorganization for the Heller Bankruptcy Case (Related Engagement).

1. **Scope of Services.**

Client retains Attorneys to represent it on behalf of the debtor's estate in the Heller Bankruptcy Case (Debtor's Estate) in the prosecution of claims for money damages against Bank of America, N.A. and Citibank, N.A. in connection with Adversary Proceeding No. 09-03071, now pending in connection with the main bankruptcy case of *In re Heller Ehrman LLP*, United States Bankruptcy Court for the Northern District of California (San Francisco Division) Case No. 08-32514 DM (Bank Case) and to perform legal services in connection with all matter(s) for which legal bills are rendered or legal

services are performed where such bill refers to "FAHELLER." Attorneys will provide those legal services reasonably required to represent Client and, through Client, prosecute the Bank Case on behalf of the Debtor's Estate

2. **Responsibilities of Attorneys and Client**.

Attorneys will perform legal services for Client respecting the Bank Case, keep Client informed of progress and developments, and respond promptly to Client's inquiries and communications. Client will fully cooperate with Attorneys in Attorneys' providing of legal services to Client hereunder (including keeping Attorneys reasonably informed of developments and complying with all reasonable requests of Attorneys in connection with the subject matter(s) of the representation), not seek to require Attorneys to commit any unlawful act or other action in violation of Attorneys' professional ethics, and timely make any and all payments required by this Agreement.

3. **Flat Legal Fee**.

Client shall pay Attorneys a flat legal fee of one million dollars within fourteen (14) days of the Effective Date of this Agreement (defined *infra* in paragraph 18) for all legal services rendered, subject to the further payment of a Contingent Fee as described *infra*.

4. **Contingent Legal Fee**.

Subject to 11 United States Code section 328(a), Client shall pay Attorneys contingent compensation equal to five percent (5%) of the amount of any consideration, however described, received by Client on account of the Bank Case less any monies previously reimbursed to Attorneys by Client (i.e. the bankruptcy estate) for Costs and

Expenses (the Contingent Fee). The consideration for purposes of calculating the Contingent Fee in the form of reduced exposure by Client on account of claims made against the Debtor's Estate in the Bank Case shall be limited to the *pro rata* benefit to the Debtor's Estate of any reduction of unsecured claims to reflect the net benefit to the Debtor's Estate. The Contingent Fee shall be paid at the conclusion of the prosecution and defense of the Heller Claims pursuant to the proposed Plan of Reorganization.

5. **Limited Liability of Client for Fees, and Costs.**

The only obligation of Client is to undertake best efforts to cause the Debtor's Estate to pay to Attorneys the Fees and Costs up to the Cap (as defined in the Related Engagement Master Agreement for Legal Services) owed under this Agreement and neither the individual members of the Official Committee nor any successor to the Official Committee shall have any obligation personally to make any payments required under this Agreement.

6. **Staffing and Association of Attorneys**. Attorneys may assign attorney and non-attorney personnel from their firm, as well as the firms of VALLE MAKOFF LLP and SCHNADER HARRISON SEGAL & LEWIS LLP, as Attorneys deem appropriate to provide representation to Clients.

7. **Costs and Expenses**.

    a. **In General**. Attorneys may incur various costs and expenses in performing legal services under this Agreement. These costs and expenses commonly include process servers' fees, fees fixed by law or assessed by courts and other agencies, court reporter fees, long distance telephone calls, word processing fees, messenger and

other delivery fees, postage, parking and other local travel expenses, photocopying (including in-house photocopying) and other reproduction costs, facsimile transmission, charges for computer research, and other similar items (Costs and Expenses).

b. **Out-of-Town Travel.** Costs and Expenses also include transportation, meals, lodging and all other costs of any necessary out-of-town travel by Attorneys.

c. **Experts, Consultants and Investigators.** Costs and Expenses also include the cost of expert witnesses, consultants or investigators. Attorneys will select any expert witnesses, consultants or investigators to be hired, in consultation with Clients.

8. **Payment of Costs and Expenses.** Upon the Effective Date of this Agreement as set forth in paragraph 18, *infra*, the Debtor's Estate shall be responsible for payment of the Costs and Expenses. Upon the confirmation of a Plan of Reorganization the payment of Costs and Expenses will be paid from the Litigation Reserve Account established in connection with the Related Engagement in accordance with the terms of the Related Engagement, with a credit to the Debtor's Estate for the Costs and Expenses paid prior to confirmation of a Plan of Reorganization and a corresponding deduction taken from the Litigation Reserve Account for such amounts.

9. **Billing Statements.** Attorneys will send Client monthly statements for Costs and Expenses (Attorney Cost Billings). Prior to Plan Confirmation, Client shall cause the Debtor's Estate to pay Attorney Cost Billings promptly upon Court approval. After Plan Confirmation, Client shall approve payment of the Debtor's Costs and

Expenses from the Litigation Reserve Account pursuant to the terms of the Related Engagement.

10. **Contingent Fee Reserve**. Upon the receipt of any monies received as recoveries on account of the Bank Case, Client shall establish and fund a reserve sufficient to pay at the conclusion of the prosecution and defense of the Heller Claims (as defined in the Related Engagement) any Contingent Fee based on the consideration received by the Debtor's Estate as a result of the prosecution of the Bank Case.

11. **Discharge and Withdrawal**. Client may discharge Attorneys at any time by written notice to Attorneys, effective upon receipt by Attorneys. Attorneys may likewise terminate this representation for good cause with the approval of the Bankruptcy Court, subject to Attorneys' obligation to provide reasonable transition assistance to new counsel of Client's choice and subject to any requirement that Attorneys obtain court permission for withdrawal.

When Attorneys' services to Client are concluded (upon receipt of notice of discharge or withdrawal), Attorneys will provide no further services and advance no further costs on Client's behalf, except as may be expressly agreed to in a writing signed by Attorneys and Client. If Attorneys are Client's attorneys of record in any proceeding, Clients will execute and return a substitution-of-attorney form immediately on its receipt from Attorneys. Notwithstanding such discharge or withdrawal, the Debtor's Estate will remain obligated to pay Attorneys at the agreed rates for services provided and to reimburse Attorneys for all Costs & Expenses (up to the Cap, as defined in the Related Engagement Master Agreement for Legal Services) advanced prior to the discharge or

withdrawal. After Attorneys' services are concluded, Attorneys will, at Client's request and expense and as required by California Rule of Professional Conduct 3-700(D)(1), deliver Client's original file(s) to Client, along with any of Client's funds or property in Attorneys' possession. In the event Client requests the return of Client's original file(s), Attorney shall have the right to make and retain a copy of Client's file(s) and Client shall be responsible for all costs of copying same. In the event of termination of this Agreement pursuant to this paragraph, Attorneys shall continue to have a lien on any recovery or funds held for the benefit of Client as set forth in Paragraphs 9 and 10 of this Agreement.

12. **Lien.** Client agrees that Attorneys shall have a lien on any assets of the Debtor's Estate for their Costs & Expenses on any recovery , and that this lien shall survive any termination of Attorneys or this Agreement. Client agrees it will not assign, in whole or in part, or otherwise grant a lien on or interest in any claims without Attorneys' prior written consent.

13. **Destruction of Clients Files**. Following discharge, withdrawal or final conclusion of the matter(s) for which Attorneys services were engaged, Attorneys shall maintain their original file in storage for a minimum of five years. At the end of the five-year period, Attorneys shall notify Client in writing at the last known address for Client of its intent to destroy the original files. Client shall have two weeks from such notification to inform Attorneys in writing of Client's intent to take custody of the original files instead of allowing destruction. Client shall then have 30 days in which to take custody of the Client matter(s) files. If Client fails to notify Attorneys of its intent to

take custody of the original files or fails to take physical custody of the files in the time allotted, Attorneys shall destroy the Client matter(s) files.

14. **Modification**. This Agreement may only be modified by a writing signed by all of the parties.

15. **Severability**. If any provision of this Agreement is held, in whole or in part, to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

16. **Key Man Provision**. Attorneys agree that William McGrane and Christopher Sullivan are crucial components of this retention agreement. If one or both of them change firms, Clients reserve the right to change firms and Attorneys agree not to assert *Jewel v. Boxer* claims against a successor firm.

17. **Entire Agreement**. This Agreement constitutes the entire agreement between Attorneys and Client. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties or any of them.

18. **Effective Date**. This Agreement will take effect upon its full execution and approval by a final, non-appealable order of the Bankruptcy Court approving the employment of the Attorneys under the terms of this Agreement.

"Attorneys"

DATED: March 31, 2010

McGRANE GREENFIELD LLP

By: /s/ William McGrane
WILLIAM McGRANE
Its Partner

"Client"

DATED: ___, 2010

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF HELLER EHRMAN LLP

By: _____
Theresa Hoyt
Authorized Signatory for BREF 333, LLC,
Its Chairperson