STEVEN H. FELDERSTEIN, State Bar No. 056978
THOMAS A. WILLOUGHBY, State Bar No. 137597
JASON E. RIOS, State Bar No. 190086
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435

Attorneys for The Official Committee
of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| In re: | CASE NO.: 08-32514 |
|---|---|
| HELLER EHRMAN LLP, | Chapter 11 |
| Debtor. | Date: April 13, 2010<br>Time: 1:30 p.m.<br>Place: 235 Pine Street<br>San Francisco, CA<br>Judge: Hon. Dennis Montali |

**DECLARATION OF CHRISTOPHER D. SULLIVAN IN SUPPORT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION (1) FOR AUTHORITY TO EMPLOY McGRANE GREENFIELD LLP AS SPECIAL LITIGATION COUNSEL; AND (2) TO APPROVE A COMBINATION FLAT FEE AND CONTINGENCY FEE AGREEMENT**

I, Christopher D. Sullivan, declare:

1. I am an attorney duly licensed to practice law in the State of California and a partner with McGrane Greenfield LLP ("McGrane"), the proposed special litigation counsel for the Official Committee of Unsecured Creditors herein (the "Committee"). If called as a witness, I would testify competently to the matters stated herein.

2. The Committee has requested that McGrane represent it on behalf of the estate of Heller Ehrman LLP (the "Debtor") in the prosecution of claims for money damages against Bank of America, N.A., and Citibank, N.A., in connection with Adversary Proceeding No. 09-03071 (the "Bank Case"), now pending in connection with the above-captioned main bankruptcy case.

-1-
Declaration in Support of Motion
to Employ Special Litigation Counsel
Case: 08-32514   Doc# 1051   Filed: 04/05/10   Entered: 04/05/10 16:11:34   Page 1 of 18

3. To the best of my knowledge McGrane is a disinterested party within the meaning of section 101(14) of the Bankruptcy Code and is qualified for employment by the Committee under section 327 of the Bankruptcy Code. McGrane does not represent any other entity having an adverse interest in connection with the Debtor's case, nor does McGrane have any adverse interest in this matter. McGrane is not a creditor, equity security holder or insider of the Debtor. Neither I, nor any of my partners or staff, is or has ever been a director, officer or employee of the Debtor at any time.

4. This declaration is submitted pursuant to Bankruptcy Rule 2014(a) in support of the Application of the Official Committee of Unsecured Creditors to Employ McGrane Greenfield LLP as its special litigation counsel (the "Application"). I have read the Application and hereby incorporate its factual statements.

5. I have reviewed the list of creditors and parties provided to me by the Committee and I have made reasonable inquiries of my partners and staff to determine the nature of the connections described herein. I have reviewed McGrane's client list and do not believe that any of our current representations pose an adverse interest in connection with the case or disqualify McGrane from representation of the Committee under the Bankruptcy Code.

6. To the best of my knowledge, neither I nor any of my partners or staff have any business or social connections with the Debtor, its creditors, their equity security holders, or with any parties in interest, their respective attorneys or accountants, or with the Office of the United States Trustee or any persons employed in the Office of the United States Trustee, except as follows:

   a. Both the McGrane firm and I have been retained by the proposed Plan Administrator, Michael Burkart. I have socialized on occasion with Mr. Burkart.

   b. Both the McGrane firm and I have worked with the firm of Felderstein Fitzgerald Willoughby & Pascuzzi LLP ("FFWP") on several engagements and have been referred potential work from the firm of FFWP. On two occasions either me or the McGrane firm discussed with clients the possibility that they consider retaining the FFWP firm. As far as I know, however, the clients did not retain FFWP. I have socialized on occasion with FFWP partner Thomas

-2-

Willoughby.

  c. Both the McGrane firm and I have been retained by Development Specialists, Inc. ("DSI"), the joint financial advisors to the Debtor and the Committee, and have been retained by Mr. Brad Sharp of DSI in his capacity as Chapter 11 Trustee of a bankruptcy estate. The McGrane firm has been retained by a client who is potentially adverse to Mr. Sharp in his capacity as trustee for another bankruptcy estate. The McGrane firm has retained Mr. Kyle Everett of DSI as an expert witness and consultant and recommended him for appointment as trustee for a bankruptcy estate.

  d. The McGrane firm has worked with the Luce Forward firm ("LF"), a potential *Jewel v. Boxer* defendant, when LF represented a bankruptcy trustee and the McGrane firm prosecuted a claim on behalf of the estate and represented a creditor. The McGrane firm has referred clients to LF.

  e. Both the McGrane firm and I have been referred to, and are presently retained as local counsel for, a client represented by the firm of Proskaeur Rose, a potential *Jewel v. Boxer* defendant.

  f. The McGrane firm has recommended to clients as an expert consultant in intellectual property matters Mr. Henry Bunsow of the Howrey LLP firm, a potential *Jewel v. Boxer* defendant, and has worked with Mr. Bunsow after he was retained in such a capacity.

  g. The Wilson Sonsini firm, a potential *Jewel v. Boxer* defendant, is a shareholder in a reorganized debtor, Jasmine Networks, Inc., that is currently represented by the McGrane firm in the case of Jasmine Networks, Inc. v. Marvell Semiconductor, Inc. The Wilson Sonsoni firm was formerly a member of the Official Committee of Unsecured Creditors in the Jasmine Networks, Inc. bankruptcy when the McGrane firm was counsel for the Creditors Committee in that case.

  h. Ms. Jessica Pers, a former shareholder of the Debtor and its Managing Partner between 1992 and 1995 is the wife of Mr. Robert Stein, a partner at the firm of Stein & Lubin, who is a friend and who attended the same law school as my partner, William McGrane. The Stein & Lubin firm has retained McGrane as its counsel in a currently pending matter. Ms. Pers

1 and Mr. Stein called Mr. McGrane in January of 2009 asking for recommendations for bankruptcy counsel for Ms. Pers and certain other former shareholders. The merits of the case were not discussed and Mr. McGrane indicated he was not himself interested in representing any former shareholders. Mr. McGrane may have given the names of potential bankruptcy counsel.

7. McGrane specializes in complex business litigation and has extensive expertise and experience in litigation arising from bankruptcy proceedings. A true and correct copy of McGrane's resume is filed herewith as Exhibit 1.

8. McGrane has agreed to undertake this matter on a combination flat fee and contingency fee basis. A true and correct copy of the Agreement for Legal Services is attached hereto as Exhibit 2.

9. I understand and acknowledge that all compensation is subject to Sections 328, 329, 330 and 331 of the Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 5, 2010 at San Francisco, California.

/s/ Christopher D. Sullivan
───────────────────────────
Christopher D. Sullivan

# EXHIBIT 1

# McGrane Greenfield LLP

McGrane Greenfield LLP is a commercial and civil litigation practice with offices in San Francisco and San Jose, serving clients throughout Silicon Valley. McGrane Greenfield LLP is associated with Berliner Cohen of San Jose and Merced.

Practice areas include civil litigation, real estate, business, securities, employment, construction, environmental, malpractice, insurance coverage, Fair Debt Collection Practices Act defense, and creditor rights litigation in State and Federal Courts, including U.S. Bankruptcy Court.

*Partners:*

**William McGrane** was admitted to the State Bar of California over 30 years ago after receiving his J.D. from Boalt Hall, University of California Berkeley. His practice has been exclusively devoted to civil litigation and bankruptcy litigation. Mr. McGrane is a senior partner in the firm, and has acted as counsel for creditors' committees as well as being regularly employed as special litigation counsel to debtors in possession and trustees in matters ranging from complex real estate disputes to legal malpractice. Mr. McGrane was a 2005 Northern California Super Lawyer.

**Bernard S. Greenfield** was admitted to the State Bar of California over 30 years ago after receiving his J.D. from Southwestern University School of Law. His practice has been exclusively devoted to civil litigation and bankruptcy litigation. Mr. Greenfield is a senior partner in the firm, and frequently represents the interests of creditors in bankruptcy matters. Mr. Greenfield was rated one of the top 100 Northern California Super Lawyers in 2004.

**Christopher D. Sullivan** received a Bachelor of Arts degree from the University of Massachusetts, Amherst in 1985, and a Juris Doctorate from the University of California, Hastings School of Law in 1990, magna cum laude, where he was the Editor-in-Chief of the Hastings Law Journal. Mr. Sullivan clerked for the Honorable Melvin J. Brunetti of the Ninth Circuit Court of Appeals and taught Legal Writing and Research at Stanford Law School, before joining the firm of Bartko, Zankel, Tarrant & Miller in 1992 and becoming a partner in 1997. Mr. Sullivan's practice focuses on complex commercial litigation, corporate and partnership disputes, and bankruptcy-related litigation. He is admitted to practice before the California State Courts and the U.S. District Court for the Northern, Central, and Eastern Districts of California. Mr. Sullivan is a member of the State Bar of California and is the Immediate Past President of the Federal Bar Association for the Northern District of California.

**Brian J. Hannon** was admitted to the State Bar of California in 1981 after obtaining his J.D. from the University of Santa Clara School of Law. Mr. Hannon has been a partner in the firm since its inception, and his practice is exclusively in the field of civil litigation.

**Maureen A. Harrington** was admitted to the State Bar of California in 1998 after obtaining her J.D. from the University of San Francisco School of Law. Ms. Harrington has been a partner in the firm since its inception, and her practice is divided between civil litigation and bankruptcy work, primarily in the representation of creditors.

*Of Counsel:*

**Marcia Gerston** obtained her J.D. from Western New England College School of Law with Honors in 1984. She received her Bachelor of Arts degree cum laude from Clark University in 1980. Ms. Gerston has been a member of the State Bar of California for over 20 years, with a practice involving frequent representation of creditors in the bankruptcy courts, as well as extensive civil litigation experience. She is a member of the State Bar of California and is admitted to practice in the California State Courts and the U.S. District Courts for the Northern and Eastern Districts of California

*Associates:*

Stephanie Southwick
Practice Areas: Commercial Litigation; Employment Litigation. Admitted: 2003, California; U.S. District Court, Eastern District of California and U.S. Court of Appeals, Ninth Circuit. Law School: The George Washington University Law School, J.D., with honors, 2003. College: University of Washington, International Political Economy, 1998. Member: Federal Bar Association; State Bar of California. Volunteer: San Francisco Court Appointed Special Advocate for abused and neglected children. Born: Ventura, California

Gavin McGrane
Practice Areas: Bankruptcy Litigation; Commercial Litigation; Real Estate Litigation. Admitted: December 2007. Law School: McGeorge School of Law; J.D., 2006. College: University of California, Davis. Member: California State Bar. Born: Berkeley, CA 1976

Anand Patel
Practice Areas: Bankruptcy, Commercial & Real Estate Litigation. Licensed: State Bar of California. Admitted: United States Court of Appeals Ninth Circuit, United States

District Court Northern District of California, United States District Court Eastern District of California. Law School: University of California, Davis – King Hall School of Law; J.D., 2007. College: University of California, Berkeley; B.A., Political Science, 2002. Member: San Francisco Bar Association; South Asian Bar Association. Born: Park Ridge, Illinois, 1980

William J. Walraven
Practice Areas: Commercial, Employment, and Bankruptcy Litigation. Admitted: March 2009, State Bar of California. Admitted to Practice: United States District Court Northern District of California, United States District Court Eastern District of California. Law School: Golden Gate University School of Law; J.D., 2008. College: University of California, Los Angeles; B.A., Psychology, 2000. Member: San Francisco Bar Association; Filipino Bar Association of Northern California. Born: San Francisco, CA, 1977.

**Practice Areas:** Bankruptcy, Commercial & Real Estate Litigation
**Licensed:** State Bar of California
**Admitted:** United States Court of Appeals Ninth Circuit, United States District Court Northern District of California, United States District Court Eastern District of Califor
**Law School:** University of California, Davis – King Hall School of Law; J.D., 2007
**College:** University of California, Berkeley; B.A., Political Science, 2002
**Member:** San Francisco Bar Association; South Asian Bar Association

**Born:** Park Ridge, Illinois, 198
Justin Draa
**Practice Areas:** Real Estate, Commercial, and Bankruptcy Litigation
**Admitted:** December 2007, State Bar of California.
**Law School:** Santa Clara University School of Law, J.D., 2007
**College:** Claremont McKenna College, B.A., Philosophy & Public Affairs, 2004
**Member:** State Bar of California; Congressman Don Edwards Inns of Court
**Born:** Marin County, California, July 14, 1982

# EXHIBIT 2

# AGREEMENT FOR LEGAL SERVICES

This "AGREEMENT FOR LEGAL SERVICES" (Agreement) is made at San Francisco, California, between McGRANE GREENFIELD LLP, a California limited liability partnership (collectively, Attorneys) on the one hand, and the Official Committee of Unsecured Creditors of Heller Ehrman LLP (Official Committee) and any duly appointed successor to the Official Committee and to the Bankruptcy Estate (collectively, Client). The Official Committee has proposed Michael Burkart as the Plan Administrator for the debtor's post confirmation estate in a bankruptcy case entitled *In re Heller Ehrman LLP*, United States Bankruptcy Court for the Northern District of California (San Francisco Division), Case No. 08-32514 DM (Heller Bankruptcy Case). The Official Committee is also proposing to retain McGRANE GREENFIELD LLP, VALLE MAKOFF LLP, and SCHNADER HARRISON SEGAL & LEWIS LLP as its attorneys in a related engagement as part of the Plan of Reorganization for the Heller Bankruptcy Case (Related Engagement).

1.  **Scope of Services**.

Client retains Attorneys to represent it on behalf of the debtor's estate in the Heller Bankruptcy Case (Debtor's Estate) in the prosecution of claims for money damages against Bank of America, N.A. and Citibank, N.A. in connection with Adversary Proceeding No. 09-03071, now pending in connection with the main bankruptcy case of *In re Heller Ehrman LLP*, United States Bankruptcy Court for the Northern District of California (San Francisco Division) Case No. 08-32514 DM (Bank Case) and to perform legal services in connection with all matter(s) for which legal bills are rendered or legal

services are performed where such bill refers to "FAHELLER." Attorneys will provide those legal services reasonably required to represent Client and, through Client, prosecute the Bank Case on behalf of the Debtor's Estate

2. **Responsibilities of Attorneys and Client.**

Attorneys will perform legal services for Client respecting the Bank Case, keep Client informed of progress and developments, and respond promptly to Client's inquiries and communications. Client will fully cooperate with Attorneys in Attorneys' providing of legal services to Client hereunder (including keeping Attorneys reasonably informed of developments and complying with all reasonable requests of Attorneys in connection with the subject matter(s) of the representation), not seek to require Attorneys to commit any unlawful act or other action in violation of Attorneys' professional ethics, and timely make any and all payments required by this Agreement.

3. **Flat Legal Fee.**

Client shall pay Attorneys a flat legal fee of one million dollars within fourteen (14) days of the Effective Date of this Agreement (defined *infra* in paragraph 18) for all legal services rendered, subject to the further payment of a Contingent Fee as described *infra*.

4. **Contingent Legal Fee.**

Subject to 11 United States Code section 328(a), Client shall pay Attorneys contingent compensation equal to five percent (5%) of the amount of any consideration, however described, received by Client on account of the Bank Case less any monies previously reimbursed to Attorneys by Client (i.e. the bankruptcy estate) for Costs and

Expenses (the Contingent Fee). The consideration for purposes of calculating the Contingent Fee in the form of reduced exposure by Client on account of claims made against the Debtor's Estate in the Bank Case shall be limited to the *pro rata* benefit to the Debtor's Estate of any reduction of unsecured claims to reflect the net benefit to the Debtor's Estate. The Contingent Fee shall be paid at the conclusion of the prosecution and defense of the Heller Claims pursuant to the proposed Plan of Reorganization.

5. **Limited Liability of Client for Fees, and Costs.**

The only obligation of Client is to undertake best efforts to cause the Debtor's Estate to pay to Attorneys the Fees and Costs up to the Cap (as defined in the Related Engagement Master Agreement for Legal Services) owed under this Agreement and neither the individual members of the Official Committee nor any successor to the Official Committee shall have any obligation personally to make any payments required under this Agreement.

6. **Staffing and Association of Attorneys**. Attorneys may assign attorney and non-attorney personnel from their firm, as well as the firms of VALLE MAKOFF LLP and SCHNADER HARRISON SEGAL & LEWIS LLP, as Attorneys deem appropriate to provide representation to Clients.

7. **Costs and Expenses.**

   a. **In General**. Attorneys may incur various costs and expenses in performing legal services under this Agreement. These costs and expenses commonly include process servers' fees, fees fixed by law or assessed by courts and other agencies, court reporter fees, long distance telephone calls, word processing fees, messenger and

other delivery fees, postage, parking and other local travel expenses, photocopying (including in-house photocopying) and other reproduction costs, facsimile transmission, charges for computer research, and other similar items (Costs and Expenses).

      b.    **Out-of-Town Travel**. Costs and Expenses also include transportation, meals, lodging and all other costs of any necessary out-of-town travel by Attorneys.

      c.    **Experts, Consultants and Investigators**. Costs and Expenses also include the cost of expert witnesses, consultants or investigators. Attorneys will select any expert witnesses, consultants or investigators to be hired, in consultation with Clients.

8.    **Payment of Costs and Expenses**. Upon the Effective Date of this Agreement as set forth in paragraph 18, *infra*, the Debtor's Estate shall be responsible for payment of the Costs and Expenses. Upon the confirmation of a Plan of Reorganization the payment of Costs and Expenses will be paid from the Litigation Reserve Account established in connection with the Related Engagement in accordance with the terms of the Related Engagement, with a credit to the Debtor's Estate for the Costs and Expenses paid prior to confirmation of a Plan of Reorganization and a corresponding deduction taken from the Litigation Reserve Account for such amounts.

9.    **Billing Statements**. Attorneys will send Client monthly statements for Costs and Expenses (Attorney Cost Billings). Prior to Plan Confirmation, Client shall cause the Debtor's Estate to pay Attorney Cost Billings promptly upon Court approval. After Plan Confirmation, Client shall approve payment of the Debtor's Costs and

Expenses from the Litigation Reserve Account pursuant to the terms of the Related Engagement.

10. **Contingent Fee Reserve.** Upon the receipt of any monies received as recoveries on account of the Bank Case, Client shall establish and fund a reserve sufficient to pay at the conclusion of the prosecution and defense of the Heller Claims (as defined in the Related Engagement) any Contingent Fee based on the consideration received by the Debtor's Estate as a result of the prosecution of the Bank Case.

11. **Discharge and Withdrawal.** Client may discharge Attorneys at any time by written notice to Attorneys, effective upon receipt by Attorneys. Attorneys may likewise terminate this representation for good cause with the approval of the Bankruptcy Court, subject to Attorneys' obligation to provide reasonable transition assistance to new counsel of Client's choice and subject to any requirement that Attorneys obtain court permission for withdrawal.

When Attorneys' services to Client are concluded (upon receipt of notice of discharge or withdrawal), Attorneys will provide no further services and advance no further costs on Client's behalf, except as may be expressly agreed to in a writing signed by Attorneys and Client. If Attorneys are Client's attorneys of record in any proceeding, Clients will execute and return a substitution-of-attorney form immediately on its receipt from Attorneys. Notwithstanding such discharge or withdrawal, the Debtor's Estate will remain obligated to pay Attorneys at the agreed rates for services provided and to reimburse Attorneys for all Costs & Expenses (up to the Cap, as defined in the Related Engagement Master Agreement for Legal Services) advanced prior to the discharge or

withdrawal. After Attorneys' services are concluded, Attorneys will, at Client's request and expense and as required by California Rule of Professional Conduct 3-700(D)(1), deliver Client's original file(s) to Client, along with any of Client's funds or property in Attorneys' possession. In the event Client requests the return of Client's original file(s), Attorney shall have the right to make and retain a copy of Client's file(s) and Client shall be responsible for all costs of copying same. In the event of termination of this Agreement pursuant to this paragraph, Attorneys shall continue to have a lien on any recovery or funds held for the benefit of Client as set forth in Paragraphs 9 and 10 of this Agreement.

12. **Lien.** Client agrees that Attorneys shall have a lien on any assets of the Debtor's Estate for their Costs & Expenses on any recovery , and that this lien shall survive any termination of Attorneys or this Agreement. Client agrees it will not assign, in whole or in part, or otherwise grant a lien on or interest in any claims without Attorneys' prior written consent.

13. **Destruction of Clients Files**. Following discharge, withdrawal or final conclusion of the matter(s) for which Attorneys services were engaged, Attorneys shall maintain their original file in storage for a minimum of five years. At the end of the five-year period, Attorneys shall notify Client in writing at the last known address for Client of its intent to destroy the original files. Client shall have two weeks from such notification to inform Attorneys in writing of Client's intent to take custody of the original files instead of allowing destruction. Client shall then have 30 days in which to take custody of the Client matter(s) files. If Client fails to notify Attorneys of its intent to

take custody of the original files or fails to take physical custody of the files in the time allotted, Attorneys shall destroy the Client matter(s) files.

14. **Modification**. This Agreement may only be modified by a writing signed by all of the parties.

15. **Severability**. If any provision of this Agreement is held, in whole or in part, to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

16. **Key Man Provision**. Attorneys agree that William McGrane and Christopher Sullivan are crucial components of this retention agreement. If one or both of them change firms, Clients reserve the right to change firms and Attorneys agree not to assert *Jewel v. Boxer* claims against a successor firm.

17. **Entire Agreement**. This Agreement constitutes the entire agreement between Attorneys and Client. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties or any of them.

18. **Effective Date**. This Agreement will take effect upon its full execution and approval by a final, non-appealable order of the Bankruptcy Court approving the employment of the Attorneys under the terms of this Agreement.

"Attorneys"

DATED: March 31, 2010

McGRANE GREENFIELD LLP

By: /s/ William McGrane
WILLIAM McGRANE
Its Partner

"Client"

DATED: ___, 2010

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF HELLER EHRMAN LLP

By: _____
Theresa Hoyt
Authorized Signatory for BREF 333, LLC,
Its Chairperson