STEVEN H. FELDERSTEIN, State Bar No. 056978
THOMAS A. WILLOUGHBY, State Bar No. 137597
JASON E. RIOS, State Bar No. 190086
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1450
Sacramento, CA 95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435

Attorneys for The Official Committee
of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>HELLER EHRMAN LLP,<br><br>Debtor. | CASE NO.: 08-32514<br><br>Chapter 11<br><br>Date: April 13, 2010<br>Time: 1:30 p.m.<br>Place: 235 Pine Street<br>      San Francisco, CA<br>Judge: Hon. Dennis Montali |

**DECLARATION OF THERESA A. HOYT IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION (1) FOR AUTHORITY TO EMPLOY McGRANE GREENFIELD LLP AS SPECIAL LITIGATION COUNSEL; AND (2) TO APPROVE A COMBINATION FLAT FEE AND CONTINGENCY FEE AGREEMENT UNDER SECTION 328 OF THE BANKRUPTCY CODE**

I, Theresa A. Hoyt, declare:

1. I am the Chairperson of the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned case of Heller Ehrman LLP (the "Debtor") and am the representative of BREF 333, LLC on the Committee.

2. The Court, by order dated April 21, 2009, authorized the Committee to serve as the Debtor's estate representative for potential claims against Bank of America, N.A. ("Bank of America") and Citibank, N.A. (together with Bank of America, the "Banks"). The Court, by order dated March 25, 2010, authorized the Committee to serve as the Debtor's estate representative for certain other claims against various parties.

3. On April 23, 2009, the Committee commenced Adversary Proceeding No. 09-

-1-

Declaration In Support Of Motion
To Employ Special Litigation Counsel
Case: 08-32514    Doc# 1052    Filed: 04/05/10    Entered: 04/05/10 16:12:52    Page 1 of 7

03071 (the "Bank Case"), now pending against the Banks in connection with the above-captioned main bankruptcy case.

4. On or about February 11, 2010, the Committee through its professionals began the process of selecting counsel (the "Special Litigation Counsel") to pursue the Bank Case and certain other claims by transmitting a Request for Proposal ("RFP") or contacting by phone approximately fifteen prospective counsel.

5. It is my understanding that the list of prospective counsel had been developed over the course of this litigation with referrals from Committee professionals and Committee members, and after consulting with the Debtor's professionals.

6. The RFP set February 17, 2010, as the deadline for prospective counsel to provide the Committee, through its counsel Felderstein Fitzgerald Willoughby & Pascuzzi LLP ("FFWP"), an expression of interest in participating in the selection process. The RFP also required each prospective counsel to provide by such date a statement: (1) declaring that it had reviewed the Conflicts Check List attached to the RFP; (2) describing any potential conflicts or connections relevant to its representation of the Committee in accordance with the RFP; and (3) explaining how any such conflicts would be resolved. Finally, the RFP permitted each prospective counsel to provide by such date materials (not to exceed 20 pages in length) relevant to its candidacy for selection as Special Litigation Counsel.

7. On or about February 21, and after reviewing the submissions made by prospective counsel, the Committee selected the following prospective counsel for further consideration (each, a "Due Diligence Counsel"): (1) Diamond McCarthy LLP ("Diamond McCarthy"); (2) Haynes & Boone LLP; (3) Lovitt & Hannan, Inc. ("Lovitt & Hannan") and Hennigan, Bennett & Dorman LLP ("Hennigan Bennett," and together with Lovitt & Hannan, the "Lovitt Group"); (4) McGrane Greenfield LLP ("McGrane Greenfield"), Valle Makoff LLP ("Valle Makoff") and Schnader Harrison Segal & Lewis LLP (together with McGrane Greenfield and Valle Makoff, the "McGrane Group"); (5) Reid Davis LLP ("Reid Davis"); (6) Stahl Cowen Crowley Addis LLC; and (7) Quinn Emanuel Urquhart Oliver & Hedges, LLP and Baker Marquart Crone & Hawxhurst LLP.

8. On or about February 24, the Committee entered into a Confidentiality and Non-Disclosure Agreement ("NDA") with each Due Diligence Counsel.

9. The NDA specifically created an attorney-client relationship between the Committee and each Due Diligence Counsel and it is my understanding that all communications by and between the Committee and each Due Diligence Counsel are attorney-client privileged communications.

10. After execution of the NDA, the Committee granted each Due Diligence Counsel access to an electronic database containing documents relevant to the proposed representation and transmitted to each Due Diligence Counsel a confidential report, protected by the attorney-client privilege and the attorney-work-product doctrine, prepared by Lovitt & Hannan in its capacity as special investigation counsel to the Debtor and the Committee. The report contains information regarding the estate's potential claims against third parties.

11. On March 9, it is my understanding that A. Kyle Everett of Development Specialists, Inc. ("DSI") and Thomas A. Willoughby, Esq., of FFWP met via conference call for approximately one hour with each Due Diligence Counsel except the Lovitt Group to discuss the proposed representation and to answer questions.

12. Throughout the due diligence process, it is my understanding that Due Diligence Counsel were able to ask questions of FFWP and DSI and, through FFWP, Lovitt & Hannan.

13. On March 11, each Due Diligence Counsel submitted its confidential response to the RFP. Many of the responses included a detailed analysis of the Committee's potential claims, and all included the proposed financial terms for the representation.

14. Based on these meetings and submissions, the Committee selected the following Due Diligence Counsel for further consideration (each, a "Finalist"): (1) Diamond McCarthy; (2) the Lovitt Group; (3) the McGrane Group; and (4) Reid Davis.

15. Based on the materials submitted, it is my understanding that each Finalist specializes in complex business litigation and has extensive expertise and experience in litigation arising from bankruptcy proceedings.

16. On March 17, the Committee met in person for approximately one and one-half

hours with each Finalist to discuss the proposed representation.

    **a.**    Allan B. Diamond, Esq., Christopher A. Provost, Esq., and Michael Yoder, Esq., represented Diamond McCarthy at the meeting.

    **b.**    On the Lovitt Group's behalf were J. Thomas Hannan, Esq., and Henry I. Bornstein, Esq., both of Lovitt & Hannan, and J. Michael Hennigan, Esq., of Hennigan Bennett.

    **c.**    On the McGrane Group's behalf were William N. McGrane, Esq., and Christopher D. Sullivan, Esq., both of McGrane Greenfield, and Jeffrey T. Makoff, Esq., of Valle Makoff.

    **d.**    William T. Reid IV, Esq., and Lisa S. Tsai, Esq., represented Reid Davis at the meeting.

17. The Committee deliberated regarding the candidacy of each Finalist on March 17 immediately after the interviews into the early evening, and began the process of ranking the Finalists, and informally narrowed the choice down to two or three firms.

18. On March 21, the Committee met via conference call and after deliberation delayed the final decision on the selection of counsel to allow Hennigan Bennett (as noted, initially part of the Lovitt Group) to submit a proposal as lead firm in a new group with Keller Rohrback LLP (such group, the "Hennigan Group").

19. The Hennigan Group submitted its proposal on March 25.

20. On March 26, the Committee held 15-30 minute final phone interviews with the Hennigan Group, the McGrane Group, and Diamond McCarthy.

21. After these final phone interviews, the Committee deliberated and selected the McGrane Group based on a wide set of factors, including but not limited to: (1) cost; (2) amount of funds required up-front to fully fund all litigations through to completion; (3) perceived experience in similar cases; (4) willingness to take on extremely contentious cases against some of the largest firms and most talented lawyers in the United States; (5) skill levels of proposed lead counsel and second chairs (who would be doing much of the work); (6) depth and ability to staff and respond in multiple litigations and locations simultaneously; and (7) perceived

-4-

tenaciousness, which the Committee believes may be necessary given the litigation posturing of certain groups of the Debtor's former shareholders in this case.

22. With regard to the overall cost factor, Diamond McCarthy's bid was perceived to likely be the lowest, but it contained various clauses that could have resulted in its being higher in certain circumstances.

23. The Committee considered the McGrane Group's bid to be the second lowest (or possibly the lowest in certain circumstances). After negotiations, the McGrane Group agreed to separate out the preference action from its proposal, and presented two alternatives, one where $4.5 million would be the only funding for the litigation and another where an additional $3 million would be funded within 24 months of inception of the litigation.

24. A summary of the terms of the agreement is as follows:

   a. **Bank Case**.
      i. $1.0 million fixed fee to be funded on Court approval prior to Plan confirmation, plus 5 percent of the value received; and
      ii. The calculation of the "value received" from the Banks' waiver of their right to assert a claim under Bankruptcy Code section 502(h) is to be calculated based on the actual net benefit to the estate from eliminating that claim at the conclusion of the representation.
      iii. Costs are to be paid prior to confirmation of the plan by the estate (but such payments will reduce amounts paid for under "all other actions" retention).

   b. **All Other Actions**.
      i. **$3.5 million funded on Plan Confirmation.** Attorneys' fees and costs (including expert fees) paid at the higher of (a) actual fees and costs incurred, capped at $3.5 million; or (b) 18 percent (18%) of the value received from the representation, plus 50 percent (50%) of the actual fees and costs incurred, capped at $3.5 million, with the payout from the latter percentage calculation not to exceed $1.75 million; or

     ii. **$3.5 million initially funded on Plan confirmation plus an additional $3 million funded within 24 months.** Attorneys' fees and costs (including expert fees) paid at the higher of (a) actual fees and costs incurred, capped at $6.5 million; or (b) 18 percent (18%) of the value received.

     iii. The hourly rates are set at a negotiated lower rate, including partners at $350, associates at $225, and paralegals at $90.

25. The Committee also considered the timing of the retentions and concluded that the immediate retention of the McGrane Group for the Bank Case made the most sense for various reasons.

  **a.** The McGrane Group's immediate retention will prevent delays in the discovery process. The McGrane Group will be able to depose Bank of America pursuant to Federal Rule of Civil Procedure 30(b)(6) on April 16th, which is a crucial deposition in the case.

  **b.** By starting work immediately, the McGrane Group will be able to work with Lovitt & Hannan, which is completing the Debtor's document production in the Bank Case, thus best allowing a seamless transition with respect to electronically-stored information and maximizing the transfer of information from Lovitt & Hannan to the McGrane Group.

26. Prior to the selection of the McGrane Group, it is my understanding that Mr. Willoughby consulted with Debtor's counsel and two members of the Dissolution Committee per the Committee's prior agreement to do so.

27. Based on the RFP process, the extensive work conducted by the Committee, and the recommendations of the Committee's professionals, and after considering the comments of the Dissolution Committee and the Debtor's professionals, the Committee selected the McGrane

///

///

///

-6-
Declaration In Support Of Motion
To Employ Special Litigation Counsel
Page 6 of 7
Case: 08-32514 Doc# 1052 Filed: 04/05/10 Entered: 04/05/10 16:12:52

1 | Group and believes that the immediate approval of this retention for the Bank Case is in the best
2 | interests of the estate.
3 |     I declare under penalty of perjury that the foregoing is true and correct.  Executed on April
4 | 5, 2010, at New York, New York.

                                                                                   */s Theresa A. Hoyt*

                                                                                     Theresa A. Hoyt