1  PAMELA PHILLIPS (No. 87581)
   Email: pphillips@howardrice.com
2  JONATHAN W. HUGHES (No. 186829)
   Email: jhughes@howardrice.com
3  HOWARD RICE NEMEROVSKI CANADY
        FALK & RABKIN
4  A Professional Corporation
   Three Embarcadero Center, 7th Floor
5  San Francisco, California  94111-4024
   Telephone:    415/434-1600
6  Facsimile:    415/217-5910

7  Attorneys for party in interest
   ORRICK HERRINGTON & SUTCLIFFE LLP

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 08-32514-DM |
| HELLER EHRMAN, LLP, | Chapter 11 |
| Debtor. | **OPPOSITION OF PARTY IN INTEREST ORRICK HERRINGTON & SUTCLIFFE LLP TO DEBTOR'S MOTION TO (A) ABANDON AND DESTROY KNOWN ADMINISTRATIVE AND CLIENT FILES AND (B) GAIN APPROVAL OF PROCEDURE FOR REVIEW AND <u>DISPOSITION OF UNINDEXED BOXES</u>** |
| | Date:  July 6, 2010 |
| | Time:  1:30 p.m. |
| | Place: U.S. Bankruptcy Court<br>235 Pine Street, Courtroom 22<br>San Francisco, CA |
| | Judge: Honorable Dennis Montali |

OPPOSITION TO DEBTOR'S MOTION TO ABANDON FILES

## INTRODUCTION

Party in interest Orrick Herrington & Sutcliffe LLP ("Orrick") objects in part to Heller Ehrman LLP's Motion To (A) Abandon And Destroy Known Administrative And Client Files And (B) Gain Approval Of Procedure For Review And Disposition Of Unindexed Boxes (the "motion").

The Debtor characterizes the three categories of documents subject to its motion as: a) "Unclaimed Client Files," b) "unnecessary Administrative Files," and c) "50,000 Boxes" of unindexed documents. Orrick does not oppose the protocol that the debtor proposes in its motion with respect to the "50,000 Boxes" of unindexed documents, except that to the extent it finds Administrative Files, it should scan and retain those documents in an electronic form. Orrick also does not oppose the motion with respect to the "Unclaimed Client Files," provided that the debtor's right to destroy such files should be subject to an Order that the debtor and the Committee shall be precluded from seeking any damages attributable to any work performed for a client whose files were destroyed.

Orrick opposes the motion as to the Administrative Files. The files the debtor refers to as the "unnecessary Administrative Files" may be relevant to claims the debtor and the Official Committee of Unsecured Creditors (the "Committee") have identified and intend to pursue against "successor firms," including Orrick. The debtor and the Committee state that they intend to pursue potential claims against former Heller shareholders and those shareholders' new firms ("successor firms"), including claims arising under *Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984), and fraudulent transfer laws. Through meet and confer efforts, Heller's counsel has represented to Orrick's counsel that Heller intends to preserve files relevant to such claims, but has determined that non-electronically stored "general administrative documents from before 2004" are not relevant to the anticipated claims. Orrick is not in a position to know whether the documents the debtor and the Committee wish to destroy will be relevant to the as yet unasserted claims. However, it is certainly possible that historical financial records and contracts may be necessary to prosecute or defend the claims.

If the debtor and the Committee intend to pursue such claims (which Orrick believes are meritless), then they have a duty to preserve all relevant evidence. That duty attaches as soon as a

Case: 08-32514    Doc# 1251    Filed: 06/25/10    Entered: 06/25/10 17:25:08    Page 2 of 11

potential claim is identified and, therefore, must be imposed on the debtor and the Committee here. As the potential plaintiffs, they have a choice: either comply with the duty to preserve evidence or bear the consequences for failing to do so. Further, while the debtor contends in its motion that it costs the estate approximately $150,000 to store the Unclaimed Client Files *and* the "unnecessary Administrative Files," the debtor provides no information about the cost of storing the "unnecessary Administrative Files" alone. Thus, the debtor has not met its burden to justify abandonment or destruction of those potentially relevant documents. They cannot have it both ways. Because the debtor and the Committee evidently intend to sue, the motion should be denied as to the documents the debtor characterizes as the "unnecessary Administrative Files."

To the extent the motion is granted, even in part, the Court should include in the Order granting the motion the same language it included in the order granting a similar motion brought in the Brobeck bankruptcy. That is, the Court's authorization to abandon or destroy documents "shall not constitute a finding as to the applicability of or compliance of the [debtor or the Committee] with any duty to preserve documents for discovery in any pending or future litigation in any court or tribunal." The Court also should include in its Order a requirement that the debtor and the Committee preserve all of the electronically stored information the debtor has collected and preserved to date, which Orrick understands the debtor's counsel has agreed to do.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On September 26, 2008, the partners of Heller Ehrman LLP, the debtor and debtor in possession in the above-captioned case ("Heller" or the "debtor"), approved a Plan of Dissolution effective as of that date, and began to formally cease business operations. On December 28, 2008, the debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

The debtor and the Committee have indicated that they intend to sue former Heller shareholders and successor firms. More than a year ago, the Court authorized the Committee to pursue certain claims on behalf of the debtor's estate, including "all claims of the Debtor under the partnership doctrines set forth in *Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984)." Docket Nos. 311 &

366 at 2, 3.[1] More recently, the Court authorized the Committee to serve as the representative of the debtor's estate "to commence, prosecute and settle" certain categories of claims. Docket No. 1018. Those enumerated claims include:

> *Unfinished Business and Business Opportunities*. Potential claims against successor firms and former shareholders (the "Shareholders") of the corporate general partners of the Debtor under various theories including but not limited to the state and federal fraudulent conveyance statutes and the doctrines set forth in *Jewel v. Boxer*, 156 Cal.App.3d 171 (1984). Docket No. 990 (Motion For (I) For Approval Of The Claims Prosecution Memorandum Of Understanding; And (II) To Designate The Official Committee Of Unsecured Creditors As The Representative Of The Bankruptcy Estate For Certain Litigation) ("Prosecution Motion") at 2.

The debtor has also explicitly excluded similar claims from recent settlements it has entered into with former clients. *See* Docket No. 1111 (Application For Order Approving Compromise Of Controversy With Aperto Networks, Instantservice.Com, Litel Instruments, Joseph Caracciolo, Llog Exploration And Targeted Growth By Default and supporting documents). The settlement agreements purported not to release certain claims, including claims under *Jewel v. Boxer* and state and federal fraudulent transfer claims. *See* Docket No. 1111-2 (Declaration Of Kyle Everett, Exs. A-F).[2] The agreements also generally state that the debtor and its creditors do not release any claims against former Heller shareholders and their new firms. *Id.*

Although Orrick believes such claims are meritless, and no adversary proceeding has yet been filed against Orrick, a number of partners at Orrick are former Heller shareholders, making Orrick a successor firm and a potential target of any such lawsuits. The record discloses the reason why the Committee has not yet initiated adversary proceedings against Orrick and/or other successor firms,

---

[1] Unless otherwise noted, the docket numbers cited in this brief refer to docket entries in the above-captioned bankruptcy case.

[2] The relevant portion of the agreements states:

> The parties acknowledge that under no circumstances do the claims released in this Agreement include any claims that Heller Ehrman or [the client's] current, former or future attorneys may have against each other under the 'unfinished business doctrine' or under a fraudulent transfer theory described in *Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984) and as interpreted by this Court in its Memorandum Decision Regarding *Jewel v. Boxer* Claims and Fraudulent Transfers, In re Brobeck Phleger & Harrison LLP, No. 03-32715 DM; Adversary Proceedings Nos. 08-3027 and 08-3028 (July 2, 2009). (*Id.*)

OPPOSITION TO DEBTOR'S MOTION TO ABANDON FILES

-3-

and it appears it is only a matter of timing. As part of their memorandum of understanding regarding claims prosecution, the debtor and the Committee agreed that the Committee "shall not actually initiate any additional actions on the claims assigned hereunder until after the entry of an order confirming a joint plan of reorganization proposed by the Debtor and the Committee where such order has become final and no longer subject to appeal—unless the Court orders otherwise after notice and a hearing for cause shown." Docket No. 990-3 (Declaration Of Peter Benvenutti, Ex. A). The debtor's plan of reorganization is on track to be confirmed this summer,[3] which means the Committee may initiate adversary proceeding as early as this Fall.

On June 4, 2010, the debtor filed the motion, along with a supporting memorandum of points and authorities ("MPA"). The debtor indicated that it intends to abandon or destroy certain Administrative Files, including "accounting records, human resources files, marketing materials, risk management, billing and collections, general correspondence and contracts relating to the day-to-day management of firm affairs." MPA at 3. The debtor additionally seeks to abandon or destroy client files (the "Client Files," as that term is defined in the motion) and approximately 50,000 boxes of unidentified records (the "50,000 Boxes," as defined in the motion), subject to a protocol for reviewing those boxes. *Id.* at 3-4.

## ARGUMENT

### A. The Interests Of The Estate And Its Creditors Do Not Trump The Debtor's Duty To Preserve Evidence.

The Court has previously addressed this issue in the bankruptcy of Brobeck, Phleger & Harrison. In response to a similar motion in that case, the Court ruled that its authorization to abandon or destroy documents "shall not constitute a finding as to the applicability of or compliance of the Trustee with any duty to preserve documents for discovery in any pending or future litigation in any court or tribunal." *In re Brobeck, Phleger & Harrison LLP*, Case No. 03-32715, Docket No. 1587 (Order Authorizing The Trustee To Abandon Administrative Files And Related Materials Of Brobeck, Phleger & Harrison LLP) at 3 (Bankr. N.D. Cal. Oct. 25, 2005). Section 554(a) of the

---

[3]The hearing on confirmation of the joint Chapter 11 plan of liquidation is scheduled for July 6, 2010. Docket No. 1154.

Bankruptcy Code permits the trustee, after notice and a hearing, to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. §554. But nothing in Section 554 releases the estate from the well-established duty to preserve evidence. That duty arises as soon as a potential claim is identified, *In re Cecconi*, 366 B.R. 83, 109 (Bankr. N.D. Cal. 2007), Section 554 notwithstanding. *See Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection (In re Quanta Resources)*, 474 U.S. 494, 502 (1986) ("Congress has repeatedly expressed its legislative determination that the trustee is not to have *carte blanche* to ignore nonbankruptcy law").

The debtor contends that the Administrative Files are unnecessary and irrelevant to the debtor's ongoing Chapter 11 winding-down process, and their retention imposes "a significant financial and administrative burden to the estate" without any corresponding benefit. MPA at 8. In particular, the debtor "believes that the Files that are the subject of the [m]otion are not relevant to any pending or potential litigation matters involving the Debtor's estate." MPA at 6.

At this point, Orrick cannot be certain that the debtor's conclusions about relevancy are correct. As discussed below, the Administrative Files could be directly relevant to claims set forth in the motion. Accordingly, they are not "of inconsequential value and benefit to the estate." *See* 11 U.S.C. §554. Moreover, even if the Administrative Files have no value to the estate, they must be preserved if they are relevant to potential litigation or are reasonably calculated to lead to the discovery of admissible evidence. *See Nat'l Assoc. of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556-57 (N.D. Cal. 1987). With the potential benefits of litigation come costs and burdens, including the cost of preserving evidence. The debtor and the Committee cannot attempt to reap the potential benefits of litigation without preserving documents that are directly relevant to their claims.

**B.    The Debtor Has A Current Duty To Preserve Evidence Because A Potential Claim Has Been Identified.**

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Cecconi*, 366 B.R. at 109 (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)).

Litigation need not be imminent to trigger the duty. *In re Napster*, 462 F. Supp. 2d at 1068. Rather, "[t]he duty to preserve documents attaches 'when a party should have known that the evidence may be relevant to future litigation.'" *Id.* (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)); *see also Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994) (even if the decision to sue has not yet been made, mere knowledge of a *potential* claim is sufficient to impose a duty to preserve evidence).

"[S]anctions may be imposed against a litigant who is on notice that documents and information in its possession that are relevant to litigation, *or potential litigation*, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information." *Nat'l Assoc. of Radiation Survivors*, 115 F.R.D. at 556-57 (quoting citation omitted) (emphasis added). The duty to preserve evidence prohibits even "the destruction of *potentially discoverable documents, regardless of whether they are specifically responsive to outstanding discovery requests . . . ." Id.* at 554 (emphasis added). Indeed, a court "may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation." *In re Cecconi*, 366 B.R. at 109.

Here, the record unequivocally establishes the debtor's knowledge of potential claims and an intention to pursue such claims. The debtor expressly assigned to the Committee claims against successor firms and former shareholders arising under *Jewel v. Boxer* and fraudulent transfer laws. *See* Prosecution Motion at 2. Together with the debtor's exclusion of such claims from recent settlement agreements, the Prosecution Motion demonstrates that such litigation is both probable and anticipated. It is worth emphasizing that the debtor and the Committee are the potential *plaintiffs* with respect to these claims, so they necessarily have actual knowledge of whether and when they plan to bring any such claims. Under these circumstances, there is no excuse for failing to preserve evidence. *Cf. In re Napster*, 462 F. Supp. 2d at 1069-70, 1077-78 (ordering evidentiary and monetary sanctions against the *defendant* for failing to preserve documents when it knew "there was a reasonable probability of litigation"). Where, as here, the claims already have been identified, the debtor and the Committee have an absolute duty to preserve any files that may be relevant to their *Jewel v. Boxer* and fraudulent transfer claims. *See In re Cecconi*, 366 B.R. at 109.

### C. The Administrative Files Are Relevant To The Anticipated Future Litigation.

The description of the Administrative Files provided by the motion appears to make them potentially relevant—and likely critical—to prosecuting and defending claims based on *Jewel v. Boxer* and state and federal fraudulent transfer laws. In meet-and-confer discussions, counsel for the debtor has assured Orrick's counsel that he believes all pertinent administrative records are being preserved. At this point, however, without knowing the exact claims that will be brought, Orrick is concerned that its rights could be prejudiced if the Administrative Files are destroyed.

The Administrative Files contain the types of documents that may be necessary to evaluate "unfinished business" claims under *Jewel v. Boxer*. In the absence of an agreement among the partners, "unfinished business" generally is defined as those matters pending at the date of dissolution. *Rothman v. Dolin*, 20 Cal. App. 4th 755, 757 (1993). It does not include matters for which the representation was terminated on or before dissolution, *Heywood v. Sooy*, 45 Cal. App. 2d 423, 426-27 (1941), or new matters opened after dissolution, even if those matters involve former clients of the dissolved firm. *Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d 200, 220 (1983), *overruled on other grounds*, *Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503 (1994). In the context of a large law firm, where there may be hundreds of partners responsible for thousands of client matters in offices throughout the world, an accounting under *Jewel v. Boxer* is no easy task. Administrative records, such as "accounting records, human resources files, . . . billing and collections, general correspondence and contracts relating to the day-to-day management of firm affairs," MPA at 3, are crucial to identify which matters, if any, constitute "unfinished business."

The Administrative Files also are critically important to prosecuting and defending fraudulent transfer claims. Insolvency (or other indicia of financial distress) is an essential element of such claims under both state and federal law. To prove a constructive fraudulent transfer under federal law, the plaintiff must demonstrate that the debtor received less than reasonably equivalent value and *either* (i) was insolvent at the time of the transfer or became insolvent as a result; (ii) was engaged in business or a transaction for which any property remaining with the debtor was an

unreasonably small capital; (iii) intended to incur debts beyond the debtor's ability to pay as such debts matured; *or* (iv) made such transfer for the benefit of an insider. 11 U.S.C. §548(a)(1)(B). Similarly, under California law, a constructive fraudulent transfer claim requires a showing of either insolvency, Civ. Code §3439.05, or that the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. *Id.* §3439.04(a)(2)(A)-(B). At this point, Orrick does not know all of the agreements, or the dates of the agreements, that may be relevant to the threatened claims. In light of that uncertainty, it remains the case that Administrative Files even before 2004 may be relevant to the threatened claims.

The "accounting records, . . . billing and collections, general correspondence and contracts relating to the day-to-day management of firm affairs" contained in the Administrative Files will be a key source—and possibly the only source—of information concerning the debtor's financial status at the time of any alleged transfer. To determine whether the debtor was insolvent, engaged in a transaction leaving it with unreasonably small capital, or knowingly incurring debts beyond its ability to pay, the parties must, at a minimum, have access to the debtor's financial records, contracts and other administrative records. *See* 11 U.S.C. §101(32)(B) (defining insolvency); Cal. Civ. Code §3439.02(b) (defining insolvency); 5 Collier on Bankruptcy ¶¶548.05[3]-548.05[5]; Alan A. Resnick & Henry J. Sommers, 4 Collier Bankruptcy Practice Guide ¶¶65.19[4]-65.19[6] (2010). These are precisely the types of documents contained in the Administrative files. *See* MPA at 3.

Thus, granting the relief sought by the debtor will permit the debtor to destroy documents that by all appearances are relevant to *known* potential claims. Destruction of these files would be a blatant violation of the duty to preserve evidence and could warrant dismissal of future claims. *See In re Cecconi*, 366 B.R. at 110 ("a party's 'failure to preserve evidence that they knew or reasonably should have known would be relevant to a potential action and might be sought in discovery' may warrant default or dismissal if its actions "eclipse entirely the possibility of a just result") (quoting *Napster*, 462 F. Supp. 2d at 1070-71).

### D. The Court Should Not Shift The Burden Of Preserving The Evidence To Orrick.

The duty to preserve evidence flows from the debtor's intention to sue former Heller shareholders and successors firms. Like any other litigant, the debtor and the Committee are responsible for the costs of preserving evidence—particularly where, as here, the debtor is the *plaintiff* and could choose not to bring the identified claims. It would be inappropriate to require potential defendants to fund any such lawsuits by bearing the costs of preservation of the plaintiff's evidence.

### E. Orrick Does Not Oppose The Protocol Heller Proposes With Respect to the "50,000 Boxes" Except That Administrative Files Should Be Scanned And Preserved.

Orrick does not oppose the protocol the debtor request to destroy the 50,000 Boxes (as that term is defined in the Motion), with one exception. The debtor proposes to perform a "cursory review" of the 50,000 Boxes. To the extent that it locates Administrative Files, the debtor should scan those documents and preserve a copy of the Administrative Files in electronic form.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion in part. The Court should (a) deny the motion as to the Administrative Files, (b) grant the motion as to the Unclaimed Client Files, subject to the limitation that the debtor and the Committee may not seek damages attributable to work for any client whose files were destroyed, (c) grant the motion as to the "50,000 Boxes" with the additional requirement that as the debtor locates Administrative Files, those documents should be scanned and retained in electronic form, (d) require the debtor to preserve all electronically stored information its counsel has collected to date, and (e) provide that its authorization to abandon or destroy documents shall not constitute a finding as to the applicability of or compliance of the

debtor or the Committee with any duty to preserve documents for discovery in any pending or future litigation in any court or tribunal.

DATED: June 25, 2010.              Respectfully,

PAMELA PHILLIPS
JONATHAN W. HUGHES
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation


By: _____/s/ Jonathan W. Hughes_____
         JONATHAN W. HUGHES

Attorneys for party in interest ORRICK HERRINGTON & SUTCLIFFE LLP

OPPOSITION TO DEBTOR'S MOTION TO ABANDON FILES