# EXHIBIT A

# HellerEhrman LLP

# Heller (Europe) LLP
# Members' Agreement
# (and Deed of Trust)

Struan Penwarden

---

# HELLER EHRMAN (EUROPE) LLP
## MEMBERS' AGREEMENT

This Members' Agreement (the "Agreement") is made as of February 26, 2007 between Heller Ehrman (Europe) LLP a limited liability partnership incorporated in England and Wales under number OC325548 (the "LLP") and the persons named in Parts 1 and 2 of Schedule A to this Agreement as the current members of the LLP.

**WHEREAS**

(A) The LLP is a UK limited liability partnership whose members from time to time will comprise solicitors and registered foreign lawyers, with or without registered European lawyers.

(B) The Partners are the only members of the LLP.

(C) The LLP and the Partners are entering into this Agreement to set out the basis on which the LLP is to be organised and the rights and obligations of the LLP and of the Partners.

**IT IS AGREED** as follows:

1. **INTERPRETATION**

1.1. In this Agreement:

the "Act"  means the Limited Liability Partnerships Act 2000;

"Affirmative Vote"  means (1) a resolution approved by a majority of the Executive Partners present at a meeting of the Executive Committee duly held at which a Quorum is present, or (2) a resolution adopted by the unanimous written consent of all then current members of the Executive Committee;

"Continuing Partners"  means the Partners who continue to be Partners of the LLP after a Succession Date;

"Executive Committee"  means a committee comprised solely of all then current Executive Partners and which shall act as the governing body of the LLP as to all matters;

"Executive Partners"  means the persons named in Part 1 of Schedule A as the same may be amended from time to time;

"Heller Ehrman LLP"  means the limited liability partnership qualified as such under that name under the laws of the State of California, USA;

Case: 08-32514   Doc# 1341-3   Filed: 07/19/10   Entered: 07/19/10 17:09:59   Page 2 of 11

| | | |
|---|---|---|
| | "Members" | means, collectively, all of the Executive Partners and Ordinary Partners at any point in time; |
| | "Ordinary Partners" | means the persons named in Part 2 of Schedule A as the same may be amended from time to time; |
| | "Outgoing Partner" | means a person who ceases to be a Partner of the LLP for any reason; |
| | "Partners" | means, collectively, all of the Executive Partners and Ordinary Partners at any point in time; |
| | "Quorum" | means a majority in number of all then current Executive Partners; |
| | the "Regulations" | means the Limited Liability Partnerships Regulations 2001, SI 1090 of 2001; and |
| | "Succession Date" | means the date on which an Outgoing Partner ceases, or is deemed under this Agreement to cease, to be a member of the LLP. |

1.2. Reference in this Agreement to a provision in an Act of Parliament or Statutory Instrument includes reference to that provision as amended, extended or re-enacted from time to time.

1.3. References in this Agreement to a Partner or former Partner include (where the context permits) reference to the personal representatives, estate, receiver or trustee in bankruptcy of such Partner or former Partner.

1.4. In this Agreement, words denoting the singular number include the plural and vice versa.

1.5. In this Agreement, words denoting the masculine include the feminine.

2. **EFFECT OF THIS AGREEMENT AND DEFAULT PROVISIONS UNDER THE ACT OR THE REGULATIONS**

2.1. This Agreement shall be binding on and between the LLP and each of the Partners and shall also bind any Outgoing Partner of the LLP in relation to any matter arising during the period in which he was a Partner and in relation to his rights and obligations arising upon his ceasing to be a Partner.

2.2. None of the default provisions set out in regulations 7 and 8 of the Regulations (or any other such provision as is mentioned in section 5(1)(b) of the Act) shall apply to the LLP save for those provisions set out in paragraphs (9) and (10) of regulation 7 of the Regulations.

2.3. The Partners are associated together only as members of the LLP and it is understood between them that no relationship shall subsist between them under this Agreement which would be regarded as a partnership within the meaning of the Partnership Act 1890. No Partner shall make any representation to any third party that there is any relationship between the Partners which would be regarded as such a partnership.

2.4. The rights conferred by section 459(1) Companies Act 1985, as applied to limited liability partnerships under the Act, are excluded in relation to each Partner and former Partner of the LLP.

2.5. The provisions of this Agreement may be altered as set out in clauses 15 and 28.

3. **BUSINESS OF THE LLP AND PARTNERS**

3.1. Name

The name of the LLP shall be "Heller Ehrman (Europe) LLP", or such other name as the Executive Committee may from time to time decide.

3.2. Registered Office

The registered office and principal place of business of the LLP shall be at such address in England as may be determined from time to time by the Executive Committee.

3.3. Business

The LLP shall carry on business in its own name, with a view to profit, and shall:

3.3.1. be registered by the Law Society of England and Wales as a recognised body conducting a multi-national legal practice involving English solicitors and Registered Foreign Lawyers and/or Registered European Lawyers ; and

3.3.2. be engaged in the practice of law, and shall maintain offices, own property and transact all business incidental thereto.

3.4. Designated Members

No fewer than two members of the Executive Committee, as selected from time to time by the Executive Committee, shall be designated members of the LLP for the purposes of section 8 of the Act and they shall have the powers and duties specified in the Act save that they shall not exercise any power to appoint or remove the auditors or to fix their remuneration without prior approval of the Executive Committee.

3.5. Partners

The LLP shall have two classes of Partners, designated as Executive and Ordinary Partners respectively. The two classes shall have differing rights and obligations (as and to the extent specifically set out in this Agreement).

3.6. Each Partner shall take all such steps as are necessary to ensure that he is at all times a Solicitor, a Registered Foreign Lawyer or a Registered European Lawyer as appropriate.

3.7. The Executive Committee may confer on employees of the LLP from time to time the right to use the title of "partner" but such persons shall remain salaried employees of the LLP and shall not be members of the LLP or Partners. No person shall become a Partner unless he shall be admitted as such in accordance with the provisions of clause 11.

Case: 08-32514    Doc# 1341-3    Filed: 07/19/10    Entered: 07/19/10 17:09:59    Page 3 of 11

## 4. MANAGEMENT OF THE LLP

4.1. Subject to any contrary requirement of law and subject as provided in this Agreement, the Executive Committee shall have the exclusive power to manage the business and operations of the LLP. All decisions of the Executive Committee shall be made by Affirmative Vote, and references in this Agreement to decisions, determinations, resolutions or approvals (or the like) of the Executive Committee shall be interpreted as matters to be determined by Affirmative Vote.

4.2. Except to the extent specifically approved by the Executive Committee, a Partner's individual involvement in any other business or undertaking shall be solely in an individual capacity and shall not constitute an activity of the LLP or of an individual Partner in his capacity as member of the LLP.

4.3. Upon his admission as an Executive Partner, such Executive Partner shall automatically become a member of the Executive Committee and one of the Executive Partners, nominated from time to time by Affirmative Vote, shall be appointed chairman of the Executive Committee.

4.4. The Executive Committee may, at its discretion and by Affirmative Vote, delegate any of its powers to committees consisting of Partners or other persons employed by the LLP.

4.5. The Executive Committee shall have authority to determine the procedures for the calling and holding of its meetings and for the taking of votes thereat save that not less than 24 hours' written notice shall be given of a meeting of the Executive Committee to all members thereof.

4.6. An Executive Partner present (whether in person or as contemplated by clause 4.7) at a meeting of the Executive Committee shall be deemed to have received due notice of that meeting.

4.7. A meeting of the Executive Committee may be held via teleconference, videoconference or similar communications equipment by means of which all the persons participating in the meeting can hear each other at the same time. Participation in a meeting in this manner is treated as presence in person at the meeting.

4.8. Each Executive Partner shall have one vote as to any matters brought before the Executive Committee.

## 5. LLP PROPERTY AND OBLIGATIONS

5.1. Ownership

All the assets held for the purposes of the business of the LLP shall be owned by the LLP absolutely. The Partners shall have no individual rights of ownership in such property, and their only entitlement shall be to such distributions as may be due to them under the provisions of this Agreement or such distributions as may be due to them following the liquidation of the LLP.

5.2. Proper Documentation

If it is necessary for an asset used for purposes of the business of the LLP to be held on behalf of the LLP by one or more Partners, the interest of the LLP in that asset shall be properly documented by the execution by the Partner(s) concerned of a declaration of trust or similar acknowledgement.

5.3. Indemnity

The LLP hereby agrees to waive all rights it may have to claim any payment, indemnity or contribution from any Partner in respect of loss, damages or costs suffered or incurred by the LLP by reason of any negligent act or omission (but not, for the avoidance of doubt, by reason of any fraud, dishonesty or wilful default) on the part of such Partner (including, without limitation, a negligent act or omission in the performance of his duties as a designated member of the LLP) and shall indemnify, and keep indemnified, each Partner in respect of payments made and personal liabilities incurred by him:

5.3.1. in the ordinary and proper conduct of the business of the LLP; or

5.3.2. in or about anything necessarily done for the preservation of the business or property of the LLP; or

5.3.3. as a result of his own negligent act or omission (but not, for the avoidance of doubt, as a result of his own fraud, dishonesty or wilful default) in the course of acting for a client of the LLP; or

5.3.4. by way of costs of defending himself successfully against any charge that he has breached any of his duties as a designated member of the LLP.

## 6. CAPITAL

6.1. Capital Contributions

The Partners shall be required to make capital contributions to the LLP at such times and in such amounts as may be determined from time to time by the Executive Committee. Notwithstanding the foregoing and subject only to clause 14.2, the Executive Committee shall not require any Partner to contribute any further capital once a decision has been made or proceedings have been commenced for the winding up of the LLP.

6.2. Withdrawal

The terms and conditions for the withdrawal or return of capital shall be as determined by the Executive Committee from time to time.

## 7. PROFITS AND LOSSES

7.1. Income

The profits of the LLP from time to time shall upon being ascertained be divided and allocated to the Partners in such manner and at such times as the Executive Committee may from time to time in its absolute discretion determine. Save for losses allocated to the Partners by determination of the Executive Committee, no losses of the LLP shall be allocated to any Partner but they shall be retained in the LLP.

7.2. Annual Audit

The LLP shall maintain proper and complete books of account, open to inspection at any time by any Partner who has not given or received notice to cease to be a Partner. It shall have an accounting year commencing January 1 and ending December 31 of each year. Its books shall be closed annually on December 31. It shall prepare, and appoint an independent chartered accountant to audit, annual statements, and shall prepare (but not necessarily audit) such statements as

Case: 08-32514    Doc# 1341-3    Filed: 07/19/10    Entered: 07/19/10 17:09:59    Page 4 of 11

otherwise are required by this Agreement. It also shall employ an independent chartered accountant to prepare LLP tax returns. The said accountant shall be selected by the Executive Committee. The certificate of such independent chartered accountant as to an Outgoing Partner's entitlement under the provisions of this Agreement shall be binding on the LLP and the Outgoing Partner, his personal representatives and trustee in bankruptcy.

7.3. **Personal Expenses**

Although it is expected that Partners will incur expenses that are attributable to the business of the LLP, no Partner shall be reimbursed by the LLP for any such expenses, other than in accordance with the policies and procedures of the LLP as determined from time to time by the Executive Committee and no Partner shall be reimbursed for personal expenses.

8. **LLP BANK**

8.1. All money belonging to the LLP shall be paid into such bank account as may be determined by the Executive Committee from time to time.

8.2. Persons with authority to withdraw funds from any bank account of the LLP shall be as determined by the Executive Committee from time to time.

9. **PARTNER OBLIGATIONS**

9.1. No Partner may, without the express approval of the Executive Committee:

9.1.1. borrow money on behalf or in the name of the LLP or utilize collateral owned by the LLP as security for such loans; or

9.1.2. assign, transfer, pledge, compromise, or release any of the claims of or debts due to the LLP except upon payment in full; or

9.1.3. pledge or hypothecate or in any manner transfer such Partner's interest in the LLP; or

9.1.4. obligate the LLP as a surety, guarantor, or accommodation party to any obligation.

9.2. Each Partner covenants with the LLP that he shall:

9.2.1. devote his or her full time and attention to the LLP business except to the extent that the Executive Committee has approved a proposal by such Partner to devote less than full time and attention to the LLP. All income received by a Partner for the provision of services of any type related to the Partner's profession or to the LLP's clients, or received from one of the LLP's clients, shall be the property of the LLP, except as may otherwise be determined by the Executive Committee;

9.2.2. give, whenever required, a true account of all business transactions arising out of or connected with the business of the LLP, and none of the Partners shall engage in any practice of law save that of the LLP without the consent of the Executive Committee, or employ either the capital or credit of the LLP in any other business whatsoever. No Partner shall engage in any transaction in or relating to the securities of any entity without complying with the LLP's Policy on Insider Trading;

9.2.3. ensure that in all matters relating to the practice of law he or she will maintain, and will require that the employees of the LLP maintain, a standard of professional conduct which shall in all respects conform with the standards of the Law Society of England and Wales and similar rules applicable to them in jurisdictions in which they are admitted to practice or in which their practice is conducted;

9.2.4. ensure that the business of the LLP is conducted in conformity with all applicable rules of the Law Society of England and Wales; and

9.2.5. at all times show utmost good faith to the LLP in all matters relating to the Partners and/or the LLP.

10. **MEETINGS AND VOTING**

10.1. **Partners' Meeting**

The LLP shall hold meetings of the Partners or any class thereof at such times at the Executive Committee shall determine. Reasonable prior notice shall be given of all such meetings. The Executive Committee shall have sole authority to determine the procedures for the calling and holding of meetings of the Partners.

10.2. **Voting Rights**

All decisions as to the operations, management, composition and liquidation of the LLP shall be determined by the Executive Committee. No matter shall be put to a vote at any meeting of the Partners and, except as provided in clause 11.1, Ordinary Partners shall have no voting rights whatsoever.

11. **ADMISSION OF NEW PARTNERS**

11.1. Only the Executive Committee may admit any person or persons to be Partners (whether Executive or Ordinary) provided that, if any time there shall be no Executive Partners, one or more persons may be appointed as Executive Partners by written resolution signed by a majority in number of the then current Ordinary Partners.

11.2. No person shall become a Partner of the LLP unless and until:

11.2.1. their admission has been approved by the Executive Committee; and

11.2.2. that person has been admitted as a solicitor of the Supreme Court of England and Wales or is a foreign lawyer registered under section 89 of the Courts and Legal Services Act 1990 or a foreign or European lawyer registered by the Law Society of England and Wales; and

11.2.3. that person has signed a consent in the requisite form to become a member of the LLP; and

11.2.4. that person has executed a signature page to this Agreement in the form attached as Schedule B hereto.

11.3. Schedule A to this Agreement shall be amended by the chairman of the Executive Committee to include any new Partner and to indicate what category of Partner that new Partner is as soon as practicable following his admission as a member of the LLP.

Case: 08-32514   Doc# 1341-3   Filed: 07/19/10   Entered: 07/19/10 17:09:59   Page 5 of 11

## 12. CESSATION OF LLP

### 12.1. Death

Any Partner who dies shall automatically cease to be a Partner on the date of death.

### 12.2. Permanent Disability

A Partner shall be deemed to be permanently disabled when the Executive Committee so determines and, upon such determination, that Partner shall (subject to clause 12.6) be deemed to have withdrawn as a Partner with immediate effect. The decision by the Executive Committee as to the permanent disability of any Partner may be based on the opinion of the personal physician of such Partner or any other medical practitioner; but such opinion shall not be binding upon the Executive Committee or the LLP.

### 12.3. Ceasing to be a "Shareholder" of Heller Ehrman LLP

Any Partner who ceases for any reason to be a "Shareholder" of Heller Ehrman LLP (as that term is used by Heller Ehrman LLP) shall automatically and on the same date and without further action by the Executive Committee cease to be a Partner hereunder for all purposes.

### 12.4. Expulsion

12.4.1. The Executive Committee may expel any Partner from the LLP when, in the judgment of the Executive Committee, any of the following reasons for such Partner's expulsion shall exist:

12.4.1.1. disbarment, suspension or other major disciplinary action of any duly constituted authority; or

12.4.1.2. professional misconduct or violation of any applicable standard of professional conduct; or

12.4.1.3. action that injures the professional standing of the LLP; or

12.4.1.4. insolvency or bankruptcy or assignment of assets for the benefit of creditors; or

12.4.1.5. material breach of any provision of this Agreement as then in effect; or

12.4.1.6. any other reason which the Executive Committee, in its discretion, shall deem to warrant expulsion.

12.4.2. Any Partner whose expulsion shall be proposed by the Executive Committee shall cease to be a Partner upon the passing of a resolution for expulsion by the Executive Committee.

12.5. The Executive Committee may, at any time whilst it is considering whether or not an act has been committed or circumstances have arisen entitling the Executive Committee to expel any Partner under this clause, and if so whether or not such expulsion should be effected, regulate the conduct of that Partner for a period not exceeding 3 months as if he or she were a "Partner Under Notice" as described in clause 16. At the end of any such period, unless the Partner concerned has been

expelled, any such regulation shall terminate and the Partner concerned shall be entitled and required to resume his or her duties in full.

12.6. The Executive Committee may in order to preserve the entitlements of the LLP and/or a Partner under any life or health policy or arrangement, serve a notice on that Partner under this clause (which shall be binding on him or her and which shall cease to apply only upon that Partner ceasing to be a Partner as a result of his or her death or as a result of expulsion) to the effect that:

12.6.1. he or she shall remain a Partner in the LLP for so long as is necessary to preserve such entitlements; and

12.6.2. during any such period he or she shall not bind or pledge the credit of the LLP or undertake or seek to undertake any business of the LLP except at the express request of the Executive Committee.

### 12.7. Permanent Withdrawal

Any Partner shall have the right to withdraw from the LLP at any time upon not less than six months' notice to the LLP; and such Partner's withdrawal shall be effective from and after the expiration of such period or upon such earlier date as the Executive Committee may determine.

12.7 Schedule A to this Agreement shall be amended by the chairman of the Executive Committee to remove the name of any person who has ceased to be a Partner as soon as practicable following his ceasing to be a Partner.

## 13. RIGHTS AND OBLIGATIONS OF OUTGOING PARTNER

### 13.1. Clients

The clients to whom a Partner has provided services while a Partner shall be deemed to be the clients of the LLP.

### 13.2. Recovery of Assets

Any Outgoing Partner shall sign and execute all such documents and perform all such acts as the LLP reasonably requires for the purpose of enabling the LLP to recover any outstanding assets of the LLP or for the purpose of transferring to the LLP or as it may direct any property of the LLP which on the Succession Date is held by the Outgoing Partner on behalf of the LLP.

### 13.3. Outgoing Partner's Interest

An Outgoing Partner shall have no further right or interest in the LLP or any of its assets, accounts, reserves (other than any amount reserved by the LLP on account of his or her liability to tax), clientele, files or records or affairs and any such rights or interests shall automatically determine without payment immediately prior to such Partner becoming an Outgoing Partner. Except as may be required by any applicable rules of professional conduct, an Outgoing Partner shall have no further professional duties to serve the LLP or its clients; and such Outgoing Partner shall remove his or her personal effects from the offices of the LLP as the Executive Committee shall determine.

## 14. LIQUIDATION

### 14.1. Dissolution

Case: 08-32514    Doc# 1341-3    Filed: 07/19/10    Entered: 07/19/10 17:09:59    Page 6 of 11

The LLP shall be liquidated if so determined by the Executive Committee. Upon any such determination, the business of the LLP shall be liquidated forthwith. The assets of the LLP shall be used to pay or provide for all debts and obligations of the LLP and the expenses of winding up the LLP. Thereafter, all remaining assets shall be applied to the repayment of capital and current accounts of the Partners.

14.2. Contribution to Assets

For the purposes of section 74 of the Insolvency Act 1986 as it is applied to limited liability partnerships under the Act, no Partner is liable to contribute any amount to the assets of the LLP on liquidation to cover any of the matters set out in that section save for the Executive Partners each of whom shall be liable to contribute £100 to such assets on liquidation.

15. AMENDMENTS

This Agreement (other than those provisions relating to the amendment of Schedule A hereto in connection with the admission or withdrawal of Partners) may be amended at any time by the Executive Committee save that no such amendment as is prejudicial to a Partner shall bind him without his prior written consent unless it affects all Partners similarly.

16. PARTNERS UNDER NOTICE

Where a Partner has given or received notice whereby he or she will cease to be a Partner (a "Partner Under Notice"), the Executive Committee (other than that Partner if himself a member of the Executive Committee) may regulate the conduct of the Partner Under Notice as a Partner in the LLP and (without prejudice to the generality of the foregoing) may from time to time require the Partner Under Notice to attend or not to attend the premises of the LLP, to undertake or not to undertake business or particular business of the LLP (including such special projects whether fee-earning or not, consistent with his or her status, as may be determined by the Executive Committee), to communicate or not to communicate with clients or particular clients of the LLP (actual or prospective) or their officers or employees, to deliver up or otherwise to deal with any document or other property belonging to or touching the business or prospective business of the LLP or of any such client (actual or prospective), and to produce evidence considered by the Executive Committee to be satisfactory of the compliance of the Partner Under Notice with such requirements.

17. TAXATION

17.1. Tax Returns

The LLP or its duly authorised agents shall:

17.1.1. prepare and submit any tax returns of the LLP and for the purposes of this Agreement "returns" means any returns or amended returns required to be made to any tax authority or of any other information relevant for the purposes of tax; and

17.1.2. deal with all matters relating to tax which concern or affect the LLP including the conduct of negotiations and correspondence and the reaching of all agreements relating thereto or to any tax documents.

17.2. Tax Records

Each Partner agrees to co-operate to such extent as may be reasonably requested in connection with the matters referred to in clause 17.1 including without limitation at all times maintaining and making available to the LLP records which are in all material respects accurate and up to date and in a form enabling proper tax returns to be conveniently made in a timely manner.

18. ENTIRE AGREEMENT

18.1. This Agreement constitutes the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior understandings.

18.2. If any provision of this Agreement is found by a court or other authority of competent jurisdiction to be void or unenforceable, such provision shall be deemed to be deleted from this Agreement and the remaining provisions of this Agreement shall continue in full force and effect and the parties hereto shall use their reasonable endeavours to procure that any such provision is replaced by a provision which is valid and enforceable and which gives effect to the spirit of this Agreement.

19. WAIVER

19.1. No waiver of any breach of or default under this Agreement shall be effective unless such waiver is in writing and has been signed by the party against which it is asserted.

19.2. The waiver by any of the parties hereto of any breach of any of the provisions of this Agreement shall not prevent the subsequent enforcement of that provision and shall not be deemed a waiver of any subsequent breach.

19.3. The rights of any of the parties hereto shall not be prejudiced or restricted by any time, indulgence or forbearance extended to any other or others of them.

20. FURTHER ASSURANCES

Each of the parties hereto shall do all such acts and things and shall execute all such deeds and documents as may be necessary to give full effect to the provisions of this Agreement.

21. CONFIDENTIALITY

21.1. Except as required by law or by any regulatory authority, none of the parties hereto shall divulge or communicate to any other person (other than to his or her immediate family, financiers, bankers, solicitors, auditors and other professional advisers (each a "Permitted Disclosee")), in each case on a confidential basis and on the basis that such party hereto shall be responsible for any breach of confidence on the part of his or her Permitted Disclosee) or use or exploit for any purpose whatsoever (other than for the purpose of implementing the provisions of this Agreement) any financial, trading or other information relating to any other party or parties hereto or the LLP, the LLP's business or the terms of this Agreement.

21.2. The restrictions contained in clause 21.1 shall continue to apply after the termination of this Agreement without limit in point in time but shall not apply to information in the possession of a party hereto and which:

21.2.1. at the time of disclosure to the relevant party hereto is in the public domain;

21.2.2. after disclosure to the relevant party hereto comes into the public domain (other than by reason of any breach of a provision of this Agreement); or

21.2.3. has been lawfully disclosed to a party hereto by a third party who did not impose on such party hereto any restriction on disclosure and who was not itself under an obligation or restriction on disclosure.

## 22. ASSIGNMENT

No Partner may assign or otherwise transfer his interest in the LLP. The benefit of this Agreement may not be sold, held on trust for any person, assigned, transferred or otherwise disposed of in whole or in part by any party, in each case without the prior consent of the Executive Committee.

## 23. COUNTERPARTS

23.1. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and which together shall constitute one and the same Agreement.

23.2. Following its execution, the original of this Agreement shall be delivered to the Executive Committee for safekeeping with the records of the LLP. The Executive Committee shall provide a counterpart copy of this Agreement and of any amendment thereto to each of the Partners for his or her personal records.

## 24. CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 1999

A person who is not a party to this Agreement shall have no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of this Agreement, but this shall not affect any right or remedy of a third party which exists or is available apart from that Act.

## 25. NOTICES

Any notice required to be given under this Agreement shall be in writing, signed by the person giving it, and shall be duly given if it is delivered personally to the person to whom it is intended to be given or left for that person at, or sent to that person by recorded delivery post to, his usual or last known address. Any notices may be given to the LLP by delivering them to its registered office, marked for the attention of the chairman of the Executive Committee.

## 26. GOVERNING LAW

This Agreement and any dispute which may arise in connection with it shall be governed by English law.

## 27. ARBITRATION

Any dispute or question in connection with this Agreement or with the affairs of the LLP shall be referred to a single arbitrator to be appointed at the request of any party to such dispute or interested in such question by the President for the time being of the Law Society of England and Wales under the provisions of the Arbitration Act 1996. Any such arbitration shall be conducted in London.

## 28. POWER OF ATTORNEY

Each Partner does hereby appoint the chairman of the Executive Committee as such Partner's true and lawful attorney-in-fact, in such Partner's name and behalf, to

execute amendments to this Agreement when authorised to do so as provided herein, including, without limitation, amendments to Schedule A hereto to reflect the addition or removal of Partners.

IN WITNESS WHEREOF the parties hereto have executed this Agreement as a deed as of the date first written above.

Case: 08-32514    Doc# 1341-3    Filed: 07/19/10    Entered: 07/19/10 17:09:59    Page 8 of 11

## SCHEDULE B

### SUPPLEMENTAL SIGNATURE PAGE

The undersigned acknowledges receipt of a copy of the Members' Agreement of Heller Ehrman (Europe) LLP, a limited liability partnership incorporated in England and Wales (the "LLP") dated February 26, 2007 (the "Agreement"), and the undersigned, by executing this Signature Page, agrees to become an [Executive] [Ordinary] Partner in the LLP pursuant to the provisions of such Agreement. The execution of this Signature Page by the undersigned shall constitute the execution of the Agreement as a deed by the undersigned as a party thereto, in the said capacity.

SIGNED AS A DEED AND DELIVERED BY

_____
(Print Name)

IN THE PRESENCE OF:

_____
(Print Name)

_____
(Print Address)

_____
(Signature of Member)

_____
(Date)

---

## SCHEDULE A

### LIST OF PARTNERS

**Part 1 – Executive Partners**

Richard Eaton
George Greer
Rob Hubbell
David Jargiello
Lawrence W. Keeshan
Barry Levin
Mark Medearis
Brian Smith

**Part 2 – Ordinary Partners**

Ken Chernof
Steve Davis
Paul Downs
Ginger Dreger
Stephen Ferruolo
Marie Fiala
Rob Fram
Christopher Grew
Ted Henneberry
Steve Koppel
Matt Larrabee
Joe McLaughlin
Judy Miles
Michael Phillips
Mark Weeks
Struan Penwarden

Case: 08-32514    Doc# 1341-3    Filed: 07/19/10    Entered: 07/19/10 17:09:59    Page 9 of 11

SIGNED as a DEED and
DELIVERED by HELLER EHRMAN
(EUROPE) LLP acting by
BRIAN SMITH and DAVID JARGIELLO

)
)
)
)

Member [signature] BRIAN SMITH

Member [signature] DAVID JARGIELLO

---

SIGNED as a DEED and DELIVERED by
GEORGE GREFF in the presence of: [signature]

)
)
)

[signature]
4305 43rd Ave NE
Seattle, WA 98105
U.S.A.
Attorney

Signature of witness:
Residential address:

Occupation:

---

SIGNED as a DEED and DELIVERED by
ROB HUBBELL in the presence of:

)
)
)

Signature of witness:
Residential address:

Occupation:

---

SIGNED as a DEED and DELIVERED by
DAVID JARGIELLO in the presence of: [signature]

)
)
)

[signature]
406 Throckmorton Glen Way
Mill Valley, CA 94941
USA
EXECUTIVE DIRECTOR

Signature of witness:
Residential address:

Occupation:

SIGNED as a DEED and DELIVERED by
LAWRENCE W. KEESHAN in the presence of: /s/

Signature of witness: /s/
Residential address: HOWARD J. CAMEO
3701 CLAY STREET
SAN FRANCISCO
CALIFORNIA 94118
Occupation: ATTORNEY

SIGNED as a DEED and DELIVERED by
BARRY LEVIN in the presence of:

Signature of witness:
Residential address:

Occupation:

SIGNED as a DEED and DELIVERED by
MARK MEDEARIS in the presence of:

Signature of witness:
Residential address:

Occupation:

SIGNED as a DEED and DELIVERED by
GEORGE GREER in the presence of:

Signature of witness:
Residential address:

Occupation:

SIGNED as a DEED and DELIVERED by
ROB HUBBELL in the presence of: /s/

Signature of witness: /s/
Residential address: 1669 Fallen Leaf Lane
Los Altos, CA 94024, USA
Occupation: Attorney

SIGNED as a DEED and DELIVERED by
DAVID JARGIELLO in the presence of:

Signature of witness:
Residential address:

Occupation: